# Finding of No Significant Impact

## Proposed Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians Gaming and Entertainment Facility In Wayland Township, Allegan County, Michigan

Based on the December 2003 Environmental Assessment (EA) for the Proposed Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians (Tribe) Gaming and Entertainment Facility located in Wayland Township, Allegan County, Michigan and corresponding mitigation measures, I have determined that implementation of the proposed fee-to-trust acquisition, a federal action by the Bureau of Indian Affairs, will have no significant impact on the quality of the human environment. Therefore, in accordance with Section 102(2)(c) of the National Environmental Policy Act of 1969, as amended, an Environmental Impact Statement will not be required.

This determination is supported by the following findings:

1. Federal and state agencies and the public were involved in identifying environmental issues related to the proposed action. *See* EA Appendices A, C, F, G, I, K, L, N and P. The EA contains a list of agencies, tribal governments and individuals that were contacted. *See* EA Chapter 6, Consultation and Coordination. The EA also contains responses to specific comments and describes revisions to the EA in response to comments. *See* EA Appendix Q.

2. Alternative courses of action were developed in response to environmental concerns and issues related to the proposed action. *See* Chapter 2, Alternatives. The EA discloses the environmental consequences of the proposed action and the no-action alternative. *See* EA Chapter 4, Environmental Consequences. The EA assesses compliance of the alternatives with applicable environmental mandates, and includes information that supports a finding of no significant impact.

3. The EA describes protective mitigation measures that will be levied to protect the human environment, particularly public safety and water quality. *See* EA Chapter 5, Mitigation Measures. The EA describes permitting processes and other enforceable mechanisms that are in place to ensure that the Tribe completes mitigation measures to protect key resources. *See* Chapters 4 and 5, and EA Section 1.1.1.

4. The EA finds that the proposed action will not jeopardize federal or state-listed threatened and endangered species because such species do not occur on the proposed site. *See* EA Section 4.3.3 and EA Appendix C. The U.S. Fish and Wildlife Service and the Michigan Department of Natural Resources concur with this finding. *See* EA Appendix I. The proposed action is in compliance with the Farmland Protection Policy Act, and will not result in the conversion of federally designated Prime and Unique Farmland. *See* EA Section 4.6.4 and EA Appendix G.

5. The EA finds that the proposed action is in compliance with the National Historic Preservation Act, and that no historic properties will be affected under the proposed action. *See* EA

Section 4.4. The State Historic Preservation Officer concurs with this finding. *See* EA Appendix L. Should undiscovered archeological remains be encountered during project ground-disturbing activities, work shall be halted in the area of discovery and the artifact shall be professionally evaluated. *See* EA Section 5.4.

6.   The EA finds that impacts to public health and safety will not be significant. *See* EA Sections 4.5, 4.6, and 4.7. The EA contains agreements that commit the Tribe to pay for law enforcement and fire protection services that would be required under the proposed action. *See* EA Appendix A. Further, the Tribal-State Gaming Compact contains revenue sharing provisions that will be used as mitigation to help fund governmental infrastructure and services that would be impacted by the proposed action. *See* EA Appendix P (Comment Letter NN). The EA describes enforceable mitigation that will sufficiently reduce traffic impacts to a minimum. *See* EA Sections 4.6.1, 5.6.1 and EA Appendix D. The EA also finds that the proposed action is in compliance with the Clean Air Act and the National Ambient Air Quality Standards (NAAQS). *See* EA Section 4.6.2. Because the proposed action would be located in an attainment area for all of EPA's current priority pollutants, a general conformity determination is not required. The EA also describes mitigation of water quality impacts made enforceable through the EPA permitting process. *See* EA Sections 4.2 and 5.2.2.

7.   The EA finds that the proposed action will not be located in a floodplain, and will not intensify downstream flooding risk in compliance with Exec. Order No. 11988 (Floodplain Management). *See* EA Section 4.2.2. The EA also finds that the proposed action will not adversely impact wetlands, and that the proposed action will be in compliance with Exec. Order No. 11990 (Protection of Wetlands) and Section 404 of the Clean Water Act. *See* EA Section 4.3.1. A Part 303 permit from the Michigan Department of Environmental Quality will ensure that impacts to wetlands located adjacent to the proposed trust acquisition site along 129th Avenue are minimized and are in compliance with state wetlands statutes. *See* EA Section 5.3. Discharge limitations contained in a National Pollutant Discharge Elimination System permit will ensure that wastewater impacts to water quality from the on-site wastewater management system will not be significant. *See* EA Sections 4.2.3 and 5.2.2.

8.   The EA analyzes the cumulative impacts of the proposed action and finds that they will not be significant. *See* EA Section 4.8. The EA categorizes three geographic areas where indirect growth is reasonably foreseeable, and finds that induced growth will occur, but that its effects will not be significant. *See* EA Section 4.9.

9.   The EA finds that the proposed action would improve the economic and social conditions of the Tribe by meeting the purpose and need for the action identified in EA Section 1.3. *See* EA Section 4.5. The EA also finds that the proposed action will benefit the local economy by creating jobs and increasing local spending. *See* EA Section 4.5.1 and EA Appendix H. The EA finds that the proposed action is in compliance with Exec. Order No. 12898 (Federal Actions to Address

Environmental Justice in Minority Populations and Low Income Populations) because the proposed action will cause no disproportionately high adverse impacts specific to minority or low-income populations. *See* EA Section 4.5.5.

_____      2/27/04
Aurene M. Martin                                       Date
Principal Deputy Assistant Secretary - Indian Affairs

# United States Department of the Interior

**BUREAU OF INDIAN AFFAIRS**

MIDWEST REGIONAL OFFICE
WHIPPLE FEDERAL BUILDING, ONE FEDERAL DRIVE, ROOM 550
FT. SNELLING, MINNESOTA 55111-4007

IN REPLY REFER TO:
Environmental Services

## NOTICE OF AVAILABILITY

**Final Environmental Assessment and FONSI:** On February 27, 2004, the Office of the Assistant Secretary for Indian Affairs issued a Finding of No Significant Impact (FONSI), based on the Environmental Assessment (EA), dated December 2003, for a proposed fee-to-trust acquisition of lands and approval of a proposed class III gaming operation in Wayland Township, Allegan County, Michigan by the Bureau of Indian Affairs for the Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians (Gun Lake Band). Copies of the Supplement and FONSI may be obtained by written request to:

Terry Virden, Regional Director
BIA, Midwest Region
Whipple Federal Building
One Federal Drive, Room 550
Ft. Snelling, MN 55111-4007

_____           3-2-04
Terry Virden, Regional Director     Date
Midwest Region, Bureau of Indian Affairs
U.S. Department of the Interior