**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHIGAN GAMBLING ) <br> OPPOSITION ("MichGO"), a ) <br> Michigan non-profit corporation, ) <br> ) <br>       Plaintiff, ) <br> ) <br>     vs. ) <br> ) <br> GALE NORTON, in her official ) <br> Capacity as SECRETARY OF THE ) <br> UNITED STATES DEPARTMENT ) <br> OF THE INTERIOR, ) <br> ) <br> and ) <br> ) <br> NEAL A. McCALEB, in his official ) <br> capacity as ASSISTANT ) <br> SECRETARY OF THE UNITED ) <br> STATES DEPARTMENT OF THE ) <br> INTERIOR, BUREAU OF ) <br> INDIAN AFFAIRS, ) <br> ) <br>       Defendants. ) <br> _____) <br> ) <br> MATCH-E-BE-NASH-SHE-WISH ) <br> BAND OF POTTAWATOMI ) <br> INDIANS, a federally recognized ) <br> Indian Tribe, c/o Hon. D.K. Sprague, ) <br> Chairman, Tribal Headquarters, P.O. ) <br> Box 218, Dorr, MI 49323, ) <br> ) <br>       Intervenor. ) <br> _____) | Case No. 05-CV-01181-JGP <br><br><br> **ORAL** <br> **ARGUMENT** <br> **REQUESTED** <br><br><br><br><br> **MOTION TO INTERVENE** |

The Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians ("Tribe"), pursuant to

Fed. R. Civ. P. 24 and LCvR 7, respectfully moves to intervene in this action to defend against

the allegations that the Plaintiff has raised in its Complaint.[1]  Attached hereto are the Tribe's Statement of Points and Authorities, a Proposed Order, and a Proposed Answer on behalf of the Tribe, as required by Fed. R. Civ. P. 24(c).  For the reasons set forth in the Tribe's Statement of Points and Authorities, and below, the Tribe respectfully requests that the Court grant its Motion to Intervene in this matter, as follows:

1.     The Tribe is a federally-recognized Indian tribe, whose aboriginal territory and historic reservation are located in what is presently the western portion of the State of Michigan. Because the Tribe has no reservation or federally-protected lands, the Tribe has sought to establish a land base to reaffirm its self-sufficiency and to foster tribal economic development. Since 2001, the Tribe has sought to have the Secretary of the Interior (together with her subordinates and delegates, the "Secretary") take into trust for the Tribe a 147-acre parcel of land located in Allegan County, Michigan, in the Tribe's aboriginal territory.  The land must be taken into trust before the Tribe can use it to operate a gaming and entertainment facility as a means of pursuing its economic and self-sufficiency goals, as contemplated by the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701, et seq.

2.     On May 13, 2005, the Secretary issued a Notice of Intent to accept the identified parcel into trust for the Tribe.  70 Fed. Reg. 25,596-597 (May 13, 2005).  The Plaintiff has brought this action challenging that decision.

---

[1] In accordance with LCvR 7(m), the undersigned discussed this Motion with counsel for the United States, Patricia Miller, via telephone, who stated that she does not oppose permissive intervention, but does not consent to intervention as of right.  The undersigned also contacted Plaintiff MichGO's legal counsel Robert J. Jonker and Daniel P. Ettinger via telephone to discuss the Motion to Intervene and determine whether the Plaintiff would oppose this Motion.  The undersigned spoke with Mr. Ettinger, who was unable to provide consent for the Motion to Intervene at this time.

3.    The Tribe seeks to intervene in this action pursuant to Fed. R. Civ. P. 24(a)(2) or, alternatively, Fed. R. Civ. P. 24(b) to defend the Secretary's determination to accept this parcel of land into trust.

4.    Federal Rule of Civil Procedure 24(a)(2) provides for intervention as a matter of right, as follows:

> [W]hen the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2).

5.    Alternatively, the Tribe seeks the Court's permission to intervene pursuant to Fed. R. Civ. P. 24(b)(2).  Rule 24(b)(2) provides that, upon timely application, an applicant may be permitted to intervene "when an applicant's claim or defense and the main action have a question of law or fact in common."  Fed. R. Civ. P. 24(b)(2).  When determining whether intervention is proper under Rule 24(b)(2), "the court shall consider whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  Id.

6.    The Tribe has a concrete and immediate stake in the outcome of this litigation, which involves a challenge to the Secretary's decision to take land into trust at the request of and for the benefit of the Tribe.  The Tribe has a compelling interest in defending the Secretary's action and in opposing any further delay in acquiring land over which the Tribe can exercise governmental jurisdiction, which is necessary for the Tribe's economic development, self-determination, and self-sufficiency.  Having land taken into trust is also a prerequisite to the Tribe's qualification for numerous other rights and benefits under federal law.  The real property at issue will become the Tribe's initial reservation pursuant to 25 U.S.C. § 2719, and, upon

acquisition in trust, it will be the only land over which the Tribe will exercise geographic jurisdiction as a federally-recognized Indian tribe.  Further economic development of that land will provide employment opportunities for tribal members.  While the Tribe is concerned about the economic development of this land, the Tribe is also concerned about the environment surrounding the property, as are other local residents, and any effects the gaming facility would have on the surrounding community because the vast majority of the Tribe's members live within thirty miles of the land at issue.  Accordingly, the Tribe has a substantial stake in every aspect of this proceeding.

7.    The Tribe's direct and unique interests in this case cannot be fully represented by the existing parties.  The Tribe is, in the nature of things, the party both most familiar with the underlying facts of this case and most keenly interested in its speedy resolution.  Intervention will not delay adjudication of this matter or prejudice the other parties in any way.  Accordingly, the requirements for intervention as of right under Rule 24(a)(2) are satisfied.

8.    For the same reasons, the requirements of Rule 24(b)(2) for permissive intervention are also satisfied.  Also, the Secretary has consented to the Tribe intervening permissively.

9.    By filing the Proposed Answer, as it is required to do pursuant to Fed. R. Civ. P. 7(a), made applicable by Fed. R. Civ. P. 24(c), the Tribe in no way intends to relinquish the opportunity to file a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) in this case.

Respectfully submitted this 27th day of July 2005.

Match-E-Be-Nash-She-Wish Band of
Pottawatomi Indians, Intervenor-Defendant,

By    s/Conly J. Schulte

|  |  |
|---|---|
| Nicholas C. Yost, CA Bar 35297 | Conly J. Schulte, NE Bar 20158 |
| Paula M. Yost, CA Bar 156843 | Shilee T. Mullin, NE Bar 22286 |
| Sonnenschein Nath & Rosenthal LLP | Monteau & Peebles, LLP |
| 685 Market Street, Sixth Floor | 12100 W. Center Road, Suite 202 |
| San Francisco, CA  94105 | Omaha, NE  68144 |
| Telephone (415) 882-5000 | Telephone (402) 333-4053 |
| Fax (415) 543-5472 | Fax (402) 333-4761 |
|  |  |
| Seth P. Waxman, DC Bar 257337 | Michael J. Anderson, DC Bar 417887 |
| Edward C. DuMont, DC Bar 471443 | Monteau & Peebles, LLP |
| Wilmer Cutler Pickering Hale and Dorr LLP | 300 Independence Ave. SE |
| 2445 M Street, NW | Washington, DC  20003 |
| Washington, DC 20037 | Telephone (202) 543-5000 |
| Telephone (202) 663-6000 | Fax (202) 543-7716 |
| Fax (202) 663-6363 |  |

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 27, 2005, I electronically filed the above document via the Clerk of

the Court's Generic Email Box, which will send notice of electronic filing to the following:

Rebecaa A. Womeldorf
Spriggs & Hollingsworth
1350 I Street, N.W., Suite 900
Washington, DC  20005

William C. Fulkerson
Robert J. Jonker
Daniel P. Ettinger
Joseph A. Kuiper
Warner Norcross & Judd, LLP
900 Fifth Third Center
111 Lyon Street, N.W.
Grand Rapids, MI  49503

Patricia Miller
U.S. Department of Justice
601 "D" St., N.W.
Washington, DC

s/Carol Thompson

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MICHIGAN GAMBLING OPPOSITION ("MichGO"), a Michigan non-profit corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No.  05-CV-01181-JGP |
| GALE NORTON, in her official Capacity as SECRETARY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR, | ) ) ) ) ) | **ORAL ARGUMENT REQUESTED** |
| and | ) ) | |
| NEAL A. McCALEB, in his official capacity as ASSISTANT SECRETARY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR, BUREAU OF INDIAN AFFAIRS, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | **STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE** |
| _____ | ) | |
| MATCH-E-BE-NASH-SHE-WISH BAND OF POTTAWATOMI INDIANS, a federally-recognized Indian Tribe, c/o Hon. D.K. Sprague, Chairman, Tribal Headquarters, P.O. Box 218, Dorr, MI 49323 | ) ) ) ) ) ) | |
| Intervenor. | ) ) | |
| _____ | ) | |

        The Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians (hereinafter "Tribe" or

"Gun Lake Tribe"), pursuant to Fed. R. Civ. P. 7(b) and 24 and LCvR 7(a), files this Statement

of Points and Authorities in Support of its Motion to Intervene in the above-captioned case.  The

Tribe seeks to intervene in this action as a matter of right pursuant to Fed. R. Civ. P. 24(a)(2) or, alternatively, by permission pursuant to Fed. R. Civ. P. 24(b).[2]  For the reasons set forth below, the Tribe respectfully requests that the Court grant the Tribe's Motion.

### INTRODUCTION

The Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians, more commonly known as "the Gun Lake Tribe," is a federally-recognized Indian tribe that has no reservation or federally-protected lands, and whose aboriginal territory is in what is now the southwestern portion of the State of Michigan.  Although the Tribe has maintained its identity throughout recorded history, for well over a century, it was denied both federal recognition and reservation lands on which it could pursue communal self-determination and self-sufficiency.  On August 23, 1999, after a four-year administrative process, the Secretary addressed the first injustice by formally recognizing the Tribe under federal law.  See 25 C.F.R. Part 83; Notice of Final Determination, 63 Fed. Reg. 56,936 (Oct. 23, 1998).  Federal recognition means that the "Tribe shall be considered a historic tribe and shall be entitled to the privileges and immunities available to other federally-recognized historic tribes by virtue of their government-to-government relationship with the United States."  25 C.F.R. § 83.12.

On May 13, 2005, after another four-year administrative process, the Secretary announced her decision to address the Tribe's lack of a reservation by taking into trust a 147-acre parcel of partially-developed land located in Allegan County, Michigan (hereinafter "the Bradley Tract").  70 Fed Reg. 25,596-597 (May 13, 2005).  The Tribe has proposed to develop a gaming facility on the Bradley Tract, and intends to convert existing manufacturing and warehouse

---

[2] The undersigned has contacted counsel for the Defendant United States, who stated that the United States would not oppose permissive intervention, but does not consent to intervention as of right.

buildings on the land, which have been vacant for several years, to house the gaming facility. See id. The Secretary's May 13, 2005 decision comes after extensive consideration and review, including public comment and careful environmental planning—a matter which is of considerable importance to the Tribe itself, as the Bradley Tract lies within a geographical area of great historical significance to the Tribe and a majority of the Tribe's members reside near the Bradley Tract. (Sprague Decl. ¶¶ 6-15, 21 (attached hereto)) The Tribe and its consultants participated directly in all aspects of the environmental assessment the Plaintiff challenges in this case, including, for example, the consideration of project alternatives and possible environmental impacts. (Sprague Decl. ¶¶ 15-19, 22, 24) The Tribe is accordingly uniquely well-positioned to assist the Court in evaluating Plaintiff's mischaracterizations and distortions of record. (Compare, e.g., Complaint ¶¶ 42-99, with Sprague Decl. ¶¶ 14-24, 35-44)

Plaintiff filed this action on June 13, 2005, challenging the Secretary's decision to take the Bradley Tract into trust. Plaintiff challenges the Secretary's decision on various grounds including: the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321, et seq.; the nondelegation doctrine, U.S. Const. art. I; and the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701, et seq. By letter dated June 24, 2005, the Department of Justice has indicated that while this matter is pending before this Court, the United States will not implement the Secretary's decision to accept the Bradley Tract into trust without first giving Plaintiff and the Court thirty days' notice of its intention to do so. (Sprague Decl. ¶ 28) The Tribe seeks to intervene promptly in this litigation in order to protect its interests by defending the legality of the Secretary's decision, promoting the swift resolution of this meritless lawsuit, and vigorously opposing any further delay in the legal steps necessary to enable the Tribe to move forward with its plans for self-sufficiency and self-determination.

## **BACKGROUND**

The Gun Lake Tribe has long and established ties to what is now the western portion of the State of Michigan. The Tribe descends primarily from a Band of Pottawatomi Indians led by Chief Match-E-Be-Nash-She-Wish. (Sprague Decl. ¶ 7) In the late 1700s, the Tribe lived in a village where the present day City of Kalamazoo, Michigan is located. (Id.)

In 1821, the Indian tribes located in Michigan ceded all Michigan lands located south of the Grand River to the United States in the Treaty of Chicago (7 Stat. 288). Chief Match-E-Be-Nash-She-Wish signed that treaty on behalf of the Gun Lake Tribe and secured three square miles of land at Kalamazoo for the Tribe. (Treaty of Chicago of August 29, 1821 (7 Stat. 288)) In the ensuing years, the Tribe moved north of the Kalamazoo River. (Sprague Decl. at Ex. 1 at 3) In 1839, the Tribe placed itself under the protection of an Episcopalian Mission and occupied lands known as the "Griswold Colony" or the "Bradley Property/Settlement," located in Bradley, Michigan. (See generally 6 Ind. Cl. Comm. 414-63 (1963), on remand, 27 Ind. Cl. Comm. 187-194, 250-251A, 280, 323-24 (1972)) Most of this land was lost through tax foreclosures in the late 1800s, but a majority of the Tribe's approximately 300 members have remained in the immediate vicinity of the Griswold Colony, which lies less than three miles from the Bradley Tract—the subject of this litigation. (Id. at 40-43; Sprague Decl. ¶¶ 11-13, 21)

Although the Tribe never lost its own communal identity, for many years it was denied formal federal recognition. The Tribe finally received that recognition as of August 23, 1999, after a four-year administrative process. See Notice of Final Determination, 63 Fed. Reg. 56,936 (Oct. 23, 1998); 25 C.F.R. Part 83. After being restored to formal federal recognition, the Tribe sought to locate land that it could use for purposes of sorely-needed economic development, as

contemplated by the Secretary's regulations, 25 C.F.R. Part 151, and congressional policy articulated in the Indian Gaming Regulatory Act, 25 U.S.C. § 2702(1). After thoroughly examining other sites, in 2001, the Tribe identified the Bradley Tract as land that could be used for development, and requested that the Secretary of the Interior accept it into trust for the Tribe's benefit as part of the Tribe's restoration to recognized status and as part of the Tribe's initial reservation. See 25 U.S.C. § 467; 25 U.S.C. § 2719; (Sprague Decl. ¶¶ 15-20 ).

During its consideration of the Tribe's application, the Bureau of Indian Affairs ("BIA") developed, in accordance with NEPA, an extensive Environmental Assessment ("EA") of the proposed acquisition and project. The Tribe and its consultants worked closely with the BIA during that process, and are directly familiar with the thoroughness and care with which the assessment was performed. (Sprague Decl. ¶ 24) A draft of the EA was released for public comment for an unusually long, seventy-five day period. (See Compl. ¶ 28) After intensive review, the BIA, pursuant to NEPA, 42 U.S.C. §§ 4321-4345, concluded that the Tribe's project as detailed in the EA (including various measures designed to minimize any environmental effects) would cause "no significant impact" to the environment. (Compl. at ¶ 3 at Ex. B)

On April 18, 2005, the Secretary made the formal decision to take the land into trust. That decision was published in the Federal Register on May 13, 2005. 70 Fed. Reg. 25,596-597 (May 13, 2005). Publication, in turn, triggered a thirty-day regulatory waiting period before the Secretary's decision could actually be effectuated. See 25 U.S.C. § 151.12. On the day after the time period expired, Plaintiff filed the present lawsuit. As noted above, counsel for the United States has agreed to "self-stay" implementation of the Secretary's decision indefinitely while this matter remains pending before this Court.

The Tribe now moves the Court for an order allowing it to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2) or, alternatively, by permission under Fed. R. Civ. P. 24(b). As set forth more fully below, the Tribe's participation in this suit is essential to the Tribe's ability to protect its vital interests. While the Tribe expects that the United States will vigorously defend against Plaintiff's claims, the Tribe possesses immediate and compelling needs that are different in nature and priority from the interests of the United States. The Tribe also possesses a uniquely keen interest in avoiding further delay in its long-overdue acquisition of a land base. Without this acquisition, the Tribe cannot fully attain its restoration to a federally-recognized Indian tribe, and cannot achieve Tribal self-determination, self-sufficiency, and economic development, which are all expressed congressional goals. 25 U.S.C. §2702(1). For these reasons, the Tribe respectfully asks this Court to allow it to intervene as a matter or right or, alternatively, to intervene by permission. The Tribe also requests oral argument on this matter.

## ARGUMENT

### I.    The Tribe is Entitled to Intervene as a Matter of Right

Under Fed. R. Civ. P. 24(a), an applicant is entitled to intervene as of right if: (1) it files a timely application to intervene; (2) it has an interest relating to the property or transaction at issue in the action; (3) disposition of the action may impair or impede its ability to protect that interest; and (4) the existing parties may not adequately represent the intervenor's interest. Fed. R. Civ. P. 24(a)(2); Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1074 (D.C. Cir. 1998). As set forth below, these factors are satisfied in this case.

### A.    The Tribe's Application for Intervention is Timely

In determining the timeliness of an application for intervention, courts consider all the circumstances of a case. See NAACP v. New York, 413 U.S. 345, 365-66 (1973). Here, the

Motion to Intervene has been filed less than two months after the filing of the Complaint, and before the filing of the administrative record.  There is no question of timeliness.

**B.    The Tribe's Interests**

The second factor for intervention is also easily established in this case.  Plaintiff challenges the Secretary's decision to grant the Tribe's application to take the Bradley Tract into trust for the Tribe's benefit.  The Tribe seeks to have this Tract placed into trust so that the Tribe may realize the benefits that are afforded only to federally-recognized Indian tribes with reservation or trust lands.  Also, the Tribe sought to place the Bradley Tract into trust so that the Tribe could exercise geographical jurisdiction and fulfill the promise of a "government-to-government relationship with the United States."   See 25 C.F.R. § 83.12.   Affirming the Secretary's decision to accept the Bradley Tract into trust is imperative for the Tribe's self-determination and economic development.  As set forth above, the Tribe has been federally-recognized since 1999, but has no reservation or lands held in trust.  Without lands held in trust, the Tribe will continue to be denied economic incentives and programs that simply are not available if the Tribe merely owns land in fee simple.  See 26 U.S.C. § 168(j); 26 U.S.C. § 45A; 26 U.S.C. § 7871(c)(3); 25 U.S.C. §§ 1521, et seq.

Also, acquiring trust land will enable the Tribe to realize the congressionally-sanctioned opportunity to operate and regulate gaming on the Bradley Tract.  Unless the Secretary's decision is affirmed and title to the Bradley Tract is accepted into trust, the Tribe cannot operate or regulate gaming on the Tract under IGRA.  Under IGRA, Indian tribes may engage in gaming, but only if, inter alia, it is conducted on "Indian lands."  25 U.S.C. § 2710(a).  IGRA defines "Indian lands" as "all lands within the limits of any Indian reservation," and "lands title to which is either held in trust by the United States . . . [or] subject to restriction by the United States

against alienation and over which an Indian tribe exercises governmental power." 25 U.S.C. § 2703(4). Here, the Tribe has no reservation or lands that are held in trust by the United States. Accordingly, unless the Bradley Tract is taken into trust, the Tribe cannot operate a gaming facility or achieve the express tripartite goals of IGRA—that Indian tribes be allowed to use gaming as a means to promote, "tribal economic development, self-sufficiency, and strong tribal governments."[3] 25 U.S.C. § 2702(1).

The Tribe's planned gaming facility is the key to its economic self-sufficiency, and will also provide important benefits to the local, non-Indian community. The gaming facility is expected to bring a large number of jobs and income to the Tribe and its 300 members. (Sprague Decl. ¶ 38) These jobs and income are vital to the Tribe and its members. (Sprague Decl. ¶¶ 31-34, 38-40) If the Secretary is prevented from accepting the Bradley Tract into trust, the Tribe has no means to acquire an economic base so that it can provide essential governmental services, employment and housing for its members. (Id.) This economic base is imperative to the Tribe, as demonstrated by the following disparities. As of April 2005, the Tribe's unemployment rate was approximately 27%, which is six times higher than that of non-Tribal members in the surrounding area for this time period. (Sprague Decl. ¶ 31) Only 26% of Tribal members own their own residence, which is well below the home ownership rate of 83% for the surrounding areas. (Id.) The gaming facility also will assist the Tribe by providing it with the financial resources needed to support Tribal programs that are essential to fostering and preserving the

---

[3] Under IGRA, tribal gaming revenues are used: "(i) to fund tribal government operations or programs; (ii) to provide for the general welfare of the Indian tribe and its members; (iii) to promote tribal economic development; (iv) to donate to charitable organizations; or (v) to help dun operations of local government agencies." 25 U.S.C. § 2710(b)(2)(B).

health and well-being of its members.  (Sprague Decl. ¶ 33)  It is impossible to deny the Tribe's

keen interest in securing the trust lands at issue in this litigation.

Finally, the Tribe and its members have environmental interests at stake in this litigation.

Most of the Tribe's members live in the vicinity of the Bradley Tract and, as such, they have an

interest in how it is developed—either by the Tribe or others.  (Sprague Decl. ¶¶ 11-13, 21)  The

Tribe has participated actively in the Secretary's NEPA process, and has every interest in

defending it.  See Kleissler v. U.S. Forest Serv., 157 F.3d 964, 969-73 (3d Cir. 1988) (stating that

local governments and private interests that benefited directly from Forest Service decision had

right to intervene to support decision against a NEPA challenge); The Wilderness Society v.

Babbitt, 104 F.Supp.2d 10, 12 n.12, 18 (D.D.C. 2000) (holding that local corporation whose

members' "cash economy is based almost exclusively on oil and gas" was entitled to intervene to

support oil and gas development plan against NEPA challenge).  Indeed, because the Tribe and

its consultants participated directly in all aspects of the environmental assessment the Plaintiff

challenges in this case—including, for example, the consideration of project alternatives and all

possible environmental impacts—the Tribe is uniquely well-positioned to assist the Court in

evaluating Plaintiff's mischaracterizations and distortions of the record.   (Compare, e.g.,

Complaint ¶¶ 42-99, with Sprague Decl. ¶¶14-24, 35-44)

Accordingly, the Tribe easily satisfies the second factor necessary for intervention as a

matter of right.

### C.    Disposition of the Action Could Impair the Tribe's Ability to Protect Its Interests

For many of the same reasons, it is clear that "disposition of th[is] action may as a

practical matter impair or impede [the Tribe's] ability to protect [its] interest[s] . . . ."  Fed R. Civ

P. 24(a)(2).  The Tribe is the immediate beneficiary of the Secretary's decision to take the Bradley Tract into trust—and the Tribe's plan for self-sufficiency cannot move forward until that decision is implemented.  (Sprague Decl. ¶¶ 20, 31-32)  Plaintiff here seeks to prevent—or at least to delay—implementation of the Secretary's decision.  Any judgment vacating the Secretary's decision—and any litigation that delays its implementation—will directly harm the Tribe and its members.  The Tribe has spent years fighting to restore its government-to-government relationship with the United States, and to regain a portion of its aboriginal lands that it had lost in the preceding 170 years.  The Tribe has spent eight years complying with the Secretary's substantive and procedural requirements for tribal restoration and acquiring the Bradley Tract into trust.  Further delays will impose additional and unjustifiable economic and social burdens on the Tribe and its members, who have already waited long enough.  It is only through participation in this lawsuit as a party that the Tribe will be able to protect its own rights and interests.

### D.    The United States Cannot Fully Represent the Tribe's Interests

To secure intervention, the Tribe also must establish that its interest is not "adequately represented by existing parties."  Fed. R. Civ. P. 24(a)(2).  This test is satisfied "if the applicant demonstrates that representation of his interest 'may be' inadequate; and the burden of making that showing should be minimal."  Fund for Animals, Inc. v. Norton, 322 F.3d 728, 735-36 (D.C. Cir. 2003) (quoting Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972)); see also Foster v. Gueory, 655 F.2d 1319, 1325 (D.C. Cir 1981) (burden is "not onerous").  The Tribe meets this "inadequacy" test here if, for example:  (1) the United States *may* make arguments different from those of the Tribe; (2) the Tribe's stake in the litigation differs from that of the United States; (3) the United States might choose not to appeal an adverse judgment; or (4) the

Tribe will offer necessary elements to the proceedings that the United States might neglect.  See e.g., Diamond v. District of Columbia, 792 F.2d 179, 192-93 (D.C. Cir. 1986); Kleissler v. United States Forest Service, 157 F.3d 964, 973 (3d Cir. 1998); California v. Tahoe Regional Planning Agency, 792 F.2d 775, 778 (9th Cir 1986).

While the Defendants have proficient legal counsel and will no doubt be mindful of the Tribe's interests, the nature of this action is such that the federal government cannot fully represent the Tribe's sovereign interests any more than the Tribe could fully represent those of the United States.  The Court will recall that this case arises in the context of a 170-year battle that the Tribe has fought to maintain its self-sufficiency and independent cultural heritage.  In that battle, the United States has not always been the ally it is today.  Also, the United States and the Tribe's interests have already diverged in this litigation.  Over the Tribe's objection, the United States has agreed to delay implementing the Secretary's decision to place the Bradley Tract into trust indefinitely while this matter remains pending before this Court.  This indefinite "self-stay" is quite disturbing to the Tribe, which is the entity that has thus indefinitely lost the benefits that come with a reservation.

Should the United States at some point lift its self-stay, and should the Plaintiff then ask this Court to enter an order barring the Secretary from acting while the litigation is pending, Plaintiff will be required to demonstrate not only a likelihood of success on the merits, but that the balance of harms and the public interest weigh in favor of still further delay in making the Secretary's decision effective.  Serono Lab., Inc. v. Shalala, 158 F.3d 1318-17 (C.A.D.C. 1998). Only the Tribe is in a position to represent its own interest in refuting any attempt to make those showings.  Only the Tribe is in a position to adequately articulate the hardships imposed by the continued delay of its trust land acquisition, including the frustration of its economic

development plans and its ability to provide adequate governmental services to its 300 members. Accordingly, the Tribe brings to this matter an independent and unique perspective, including the most acute understanding of the struggles that it has endured by being denied a reservation.

Moreover, for the reasons explained above, the acquisition of trust lands at issue here constitutes the very highest governmental priority for the Gun Lake Tribe. While the United States no doubt views its interest in vindicating the legality of the Secretary's action as important, there is no comparison in the relative importance of this case to the two sovereigns. Whether or not the Bradley Tract is placed into trust will not, for example, ultimately affect the United States' ability to flourish as a self-governing, economically self-sufficient community. From this perspective, the Tribe's arguments may diverge from those of the United States, and the Tribe's direct stake in this matter is unquestionably greater. In addition, the Tribe has a special interest in the acquisition of this particular tract of land, which is located in the heart of the Tribe's aboriginal homelands, where the Tribe has strong historical, spiritual and emotional ties—something that is not, of course, true of the United States. For all these reasons, the Tribe's interests "cannot be subsumed in the shared interests of the citizens of the United States." Diamond, 792 F.2d at 193.

## II.     Alternatively, the Tribe is Entitled to Intervene Permissively

In the alternative, the Tribe asks that the Court exercise its discretion to allow it to intervene permissively. Rule 24(b)(2) authorizes permissive intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2); Appleton v. FDA, 310 F.Supp.2d 194, 196 (D.D.C. 2004). Permissive intervention is "an inherently discretionary enterprise." EEOC v. Nat'l Children's Ctr., Inc., 146 F.3d 1042, 1046 (D.C. Cir. 1998)). In exercising its discretion, a court must "consider whether the

intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b).

The Tribe easily satisfies Rule 24(b)(2). Because the Tribe seeks to defend every challenge the Plaintiff brings, without injecting any new issues into the case, the matters of law and fact that the Tribe will address are identical to those already before the Court. Permitting intervention will not delay the proceedings or prejudice the parties, as the Tribe seeks to intervene at the outset of the case and raises no additional claims. To the contrary, as the Tribe has stressed, the Tribe has the strongest possible interest in expeditious resolution of this case and the prompt implementation of the Secretary's decision to take the Bradley Tract into trust. The Tribe seeks only to protect its interests and, in doing so, to assist the Court in reaching a just and swift result.

Indian tribes are routinely allowed to intervene in cases where a plaintiff challenges the Secretary's decision to accept a parcel of land into trust under 25 U.S.C. § 465. Florida Dep't of Bus. Regulation v. U.S. Dep't of Interior, 768 F.2d 1248, 1250 (11th Cir. 1985); Roseville v. Norton, 219 F.Supp.2d 130, 137 (D.D.C. 2002); City of Sault Ste. Marie, Michigan v. Andrus, 532 F.Supp. 157, 159-60 (D.D.C. 1980). There is no reason for a different result here.

## CONCLUSION

For the foregoing reasons, the Court should grant the Tribe's Motion to Intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a)(2). Alternatively, the Tribe asks that the Court grant it permission to intervene in accordance with Fed. R. Civ. P. 24(b)(2).

Respectfully submitted this 27th day of July 2005.

                                        Match-E-Be-Nash-She-Wish Band of
                                        Pottawatomi Indians, Intervenor-Defendant,


                                        By ___s/Conly J. Schulte_____

Nicholas C. Yost, CA Bar 35297              Conly J. Schulte, NE Bar 20158
Paula M. Yost, CA Bar 156843                Shilee T. Mullin, NE Bar 22286
Sonnenschein, Nath & Rosenthal LLP          Monteau & Peebles, LLP
685 Market Street, Sixth Floor              12100 W. Center Road, Suite 202
San Francisco, CA  94105                    Omaha, NE  68144
Telephone (415) 882-5000                    Telephone (402) 333-4053
Fax (415) 543-5472                          Fax (402) 333-4761


Seth P. Waxman, DC Bar 257337               Michael J. Anderson, DC Bar 417887
Edward C. DuMont, DC Bar 471443             Monteau & Peebles, LLP
Wilmer Cutler Pickering Hale and Dorr LLP   300 Independence Ave, SE
2445 M Street, NW                           Washington, DC  20003
Washington, DC 20037                        Telephone (202) 543-5000
Telephone (202) 663-6000                    Fax (202) 543-7716
Fax (202) 663-6363

**CERTIFICATE OF SERVICE**

I certify that on July 27, 2005, I filed the above document via the Clerk of the Court's

Generic Email Box, which will send notice of electronic filing to the following:

Rebecaa A. Womeldorf
Spriggs & Hollingsworth
1350 I Street, N.W., Suite 900
Washington, DC  20005

William C. Fulkerson
Robert J. Jonker
Daniel P. Ettinger
Joseph A. Kuiper
Warner Norcross & Judd, LLP
900 Fifth Third Center
111 Lyon Street, N.W.
Grand Rapids, MI  49503

Patricia Miller
U.S. Department of Justice
601 "D" St., N.W.
Washington, DC

_____
s/Carol Thompson