# National Indian Gaming Commission

About Us   Regional Offices   Tribal Data   Laws & Regulations   Resources   FOIA   Contact Us

## Memorandum                                                     December 13, 2000

To:         Regional Director, Midwest Regional Office, Bureau of Indian Affairs

From:       Acting Associate Solicitor, Division of Indian Affairs

Subject:    Trust Acquisition for the Huron Potawatomi, Inc.

Pursuant to a request from your office, the Solicitor's office has reviewed the file you submitted regarding the trust application by the Nottawaseppi Huron Potawatomi Band, a.k.a., the Huron Potawatomi, Inc. (hereinafter, the Band). You have asked whether an exception contained in Section 20 of the Indian Gaming Regulatory Act (IGRA) would allow gaming on one of the parcels contained in the Band's trust application request.

### I.    Background

The United States acknowledged the Band through the federal acknowledgment process (25 C.F.R. § 83), and the notice of final determination acknowledging the Band was published in the Federal Register on December 21, 1995.[1] The Final Determination for Federal Acknowledgment for the Band was effective on March 21, 1996. The Band has no trust land at this time, but the application submitted to the Midwest Regional Office contains the request to acquire four land areas, six separate parcels, in trust for the Band.

The properties proposed for acquisition include the Pine Creek Indian Reservation, which is the site of the current state reservation, the Fuller Farm, the Sackrider property and the Bradley property. Except for the Bradley property, which is in Allegan County, all of the parcels are in Calhoun County, Michigan. The tribal headquarters for the Band is also in Calhoun County in the community of Fulton, Michigan.

### II.   Analysis

The threshold issue is whether the secretary can acquire these lands in trust for the Band. The regulations governing the Bureau land acquisition policy at 25 C.F.R. § 151.3(a)(3) provide that:

    (a)    Subject to the provisions contained in the acts of Congress which authorize land acquisitions, land may be acquired for a tribe in trust status:

                                    * * *

            (3) When the Secretary determines that the acquisition of the land is necessary to facilitate tribal self-determination, economic development, or Indian housing.

The Pine Creek Indian Reservation (state reservation) has been the site of the "social core" of the Band and represents the historical and cultural center of the Band. The trust acquisition of the current state reservation for the Band comes within the broad requirement of facilitating tribal self-determination, and can therefore be acquired.

The Band hopes to establish a gaming facility on the Sackrider property, and they have signed a Tribal-State Compact with State of Michigan. The use of the property


EXHIBIT

for a gaming facility, comports with the requirement that property be acquired for economic development, as it will provide income and employment for a community in need of both. (See description of the economic status of the tribe in letter from Reid P. Chambers, attorney for the Band, to Anne Bolton, BIA, of 12/11/99, at 3).

The Fuller Farm property, which has already been purchased by the Band, would be used for needed housing, and the Secretary may therefore acquire it. The Bradley property, some distance from the other parcels, is located next to a Huron Potawatomi cemetery. Placement of that property into trust would provide access and some protection from encroachment for the cemetery. The 12-acre tract will also provide housing sites, and thus may be acquired both to further tribal self-determination and to accommodate housing needs. The Bradley site is within the seven county service area proposed by the Band. We agree with your analysis that these parcels come within the Secretary's discretionary authority to acquire land for the "purpose of providing land for Indians," 25 U.S.C. § 465, and within the requirements contained in 25 C.F.R. § 151.3(a)(3).

The question raised by your referral to this office are: (1) could the Sackrider property, if taken into trust and declared part of the Band's initial reservation, come within one of the exceptions contained in Section 20 of IGRA? and (2) what is the impact of acquiring other parcels (non-gaming) in trust prior to acquiring or processing the Sackrider (gaming) parcels in trust?

The answer to the first question involves both IGRA and 25 U.S.C. § 467 which allows the Secretary "to proclaim new Indian reservations on lands acquired pursuant to any authority conferred by sections . . . 465 . . . ." The lands proposed for the initial reservation are noncontiguous, but this poses no difficulties, as there is no prohibition against acquisition of noncontiguous parcels, and such acquisition is specifically contemplated by the regulations. 25 C.F.R. § 151.11.

IGRA prohibits gaming on trust land acquired by Indian tribes after October 17, 1988. The exceptions to this general prohibition are contained in 25 U.S.C. § 2719(b). The specific provision which is applicable to the application submitted by the Band is 25 U.S.C. § 2719(b)(1)(B)(ii). That provision provides that the general prohibition on gaming on land acquired after October 17, 1988 will not apply when lands are taken into trust as part of the initial reservation of an Indian tribe acknowledged by the Secretary under the Federal acknowledgment process. Id.

The Sackrider property is located in Calhoun County. As noted in the referral from your office, the Tribal-State Compact between the state of Michigan and the Band allows for gaming in Calhoun County.[2] The Pine Creek Indian Reservation, also in Calhoun County, is the "geographical residential focus" identified in the Notice of Final Determination. The Band further notes, "All of the land which we now request to be taken into trust by the United States is within our aboriginal territory which was ceded to the United States by the Treaty of August 29, 1821 (Royce Map 117)." All of the above are indicia that this tract is within the geographical region anticipated as part of the Band's land base. Therefore, the Sackrider property may be included as part of the Band's initial reservation. If the Sackrider property is included in the initial proclamation of reservation, it would be within the "initial reservation" exception to the prohibition against gaming on trust land acquired after October 17, 1988.

This is consistent with earlier Solicitor opinions interpreting the exceptions to the ban on gaming on land acquired after October 17, 1988. We have interpreted the intent of the exceptions as being to "grandfather" certain lands acquired after IGRA by treating them similarly to lands held by tribes already recognized at the time IGRA was adopted. Letter of Solicitor to Rep. Fazio, 8/3/98, at 2 (Mechoopda Tribe letter); letter from Derril B. Jordan, Associate Solicitor, DIA, to Hilda A. Manuel, Deputy Comm'r for Indian Affairs of 11/19/97, M-36991 at 4 (Little Traverse Bay Opinion); Memorandum from Solicitor to Secretary on Pokagon Band of Potowatomi Indians, (9/19/97), at 3. We have argued that the intent was to permit restored tribes the same opportunity to game on its "Indian lands" that tribes with such lands at the time of IGRA enactment enjoy.

The second question raised is: "What is the impact of acquiring other parcels in trust prior to acquiring gaming parcel in trust?" The Band may request that a new reservation be declared. 25 U.S.C. 467. The first time a reservation is proclaimed for the Band, it constitutes the "initial reservation" under 25 U.S.C. § 2719(b)(1)(B), and the Band may avoid the ban on gaming on newly acquired land for any lands taken into trust as part of the initial reservation – those placed in trust before or at the time of the initial proclamation. Land acquired after the initial proclamation of the reservation will not fall within the exception. If the Bands, wishes, just the Sackrider parcel may be acquired in trust before the proclamation, but the Band may only request an "initial reservation" once. Therefore, the property which would fall within the IGRA exception would be limited to whatever parcel or parcels are contained in the initial proclamation of reservation status. This puts newly recognized tribes in a similar position to tribes having land in trust before October 17, 1988, in that they are afforded an initial opportunity, but lands acquired after the initial reservation are subject to the ban in the same way that lands of other tribes acquired after October 17, 1988 are.

### III.  Conclusion

If the Band wants the Secretary to take the other parcels into trust and then proclaim a reservation including all trust land acquired, including the Pine Creek Reservation and the three other parcels, the Secretary may do so. The proclamation process is independent of the trust application process. A copy of the Checklist for Contents of Proclamation Request and a standard Notice Letter to States and Local Governments for the proclamation is attached for your information. You may want to check with Realty and/or the Central office to determine if this checklist and form have been updated.) The standard letter appears to have been drafted to accommodate the proclamation for more than one parcel ("these trust lands").

Any of the parcels listed in the Band's application may be included within the initial proclamation of reservation status and would then come within the "initial reservation" exception in IGRA, 25 U.S.C. § 2719(b)(1)(B)(ii). The pending trust applications should be processed with the understanding that the tribal resolution, which was submitted by the Band, was for the trust applications and proclamation of reservation status for all of the parcels noted above.

---

[1] Neither the Notice of Proposed Finding, 60 Fed. R. 104, 28426-28427, nor the Notice of Final Determination contain any reference to a service area for the Band or specific county or township limits for the acquisition of trust land. The Band claims that both Calhoun and Allegan Counties are within its seven county service are in Michigan used by BIA and Indian Health Service. The service area has been established by IHS but the request for a designation of a BIA service area has been pending in Washington since August 31, 1999.

[2] The terms of the tribal-state gaming compact, while not determinative in the Department's decision to issue a proclamation of reservation status, are indicative of the understanding reached between the state and Band for the geographic reach of "Indian lands" upon which gaming may be conducted.

About Us | Regional Offices | Tribal Data | Laws & Regulations | Resources | FOIA | Contact Us | Search | Text Only | Employee Login

1441 L. Street NW Suite 9100, Washington DC 20005 Tel.: (202) 632-7003  Fax: (202) 632-7066
E-mail with Questions, Comments, or Suggestions   Privacy Statement