# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MICHIGAN GAMBLING OPPOSITION ("MichGO"), a Michigan non-profit corporation,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **Case No. 1:05-CV-01181-JGP** |
| **v.** | ) ) | |
| **GALE A. NORTON, in her official capacity as United States Secretary of Interior, Department of Interior, et al.,** | ) ) ) ) | |
| **Defendants,** | ) ) | |
| _____ | ) | |
| **MATCH-E-BE-NASH-SHE-WISH BAND OF POTTAWATOMI INDIANS, a federally-recognized Indian Tribe,** | ) ) ) ) | |
| **Intervenor.** | ) ) | |
| _____ | ) | |

## JOINT AMICUS CURIAE BRIEF OF
## WAYLAND TOWNSHIP, DEPUTY SHERIFF'S ASSOCIATION OF MICHIGAN, BARRY COUNTY CHAMBER OF COMMERCE, AND FRIENDS OF THE GUN LAKE INDIANS

**EXHIBIT A**

## INTRODUCTION

The Wayland Township, Deputy Sheriff's Association of Michigan, Barry County Chamber of Commerce, and Friends of the Gun Lake Indians (collectively referred to as "Amicus Movants") have moved for leave to file an *amicus curiae* brief in support of the decision of the Secretary of Interior (the "Secretary") to take a parcel of land into trust for the Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians ("Tribe" or "Gun Lake Tribe").

The Gun Lake Tribe has asked the Secretary to accept the parcel of land into trust for the purpose of operating a gaming facility thereon. The Amicus Movants support the Gun Lake Tribe's proposed gaming facility because it will infuse much needed growth into the economically depressed area of Wayland Township, as well as the surrounding communities and region. Unlike many of MichGO's members (and other opponents of the Tribe's project) who appear to be located in Grand Rapids (which is over twenty miles away from the site of the proposed facility), these Amicus Movants are comprised of individuals who reside in the immediate vicinity of the proposed gaming facility. Thus, these Amicus Movants are the individuals whose environment will be most intimately affected by the facility (as opposed to many of MichGO's members who may be indirect or direct competitors of the Gun Lake Tribe's gaming facility and, accordingly, appear to be concerned about the project from a competitive standpoint). The Amicus Movants also support the Tribe's project because it will not have any significant impacts on the environment. The Amicus Movants have banded together to file this Joint Amicus Brief in the interest of judicial economy.

## BACKGROUND

In August 2001, the Tribe submitted a fee-to-trust application to the Secretary requesting that a 146-acre parcel of land located in Wayland Township, Allegan County, Michigan, be

taken into trust, in order to allow the Tribe to develop a gaming facility.  *See* 25 U.S.C. §§ 467, 2719.   In consideration of the Tribe's fee-to-trust application, the Bureau of Indian Affairs ("BIA") developed an Environmental Assessment ("EA") evaluating the proposed trust acquisition and gaming project pursuant to the National Environmental Protection Act ("NEPA").  The BIA published its draft EA on November 26, 2002 for a seventy-five day public comment period, during which certain of the Amicus Movants submitted numerous comment letters in support of the Tribe's project.  (Administrative Record[1] ("AR") at 834; 886; 942.)  The BIA thereafter published its final EA in December 2003, concluding that the proposed action posed no significant impact to the environment.  Finally, on April 18, 2005, the Secretary formally decided to take the land into trust, and published that decision in the Federal Register on May 13, 2005.  *See* 70 Fed. Reg. 25, 596-97 (May 13, 2005).

## **THE MOVANTS' INTEREST**

The Amicus Movants support the Gun Lake Tribe's project and believe the project will benefit the southwest region of the State of Michigan and its citizens.  The Amicus Movants have an acute interest in the community, region and environment surrounding the proposed facility, which are at issue in this litigation.  Their participation in this action is important, as it will provide the Court with an accurate depiction of the geographical and economical nature of the surrounding area.  The Amicus Movants will also clarify for the Court the significant amount of local support for the Tribe's project.  Specifically, the Amicus Movants are in a unique position to respond to MichGO's various claims regarding the alleged impacts of the proposed casino on the surrounding area, including:  "an irreversible change in the rural character of the area;" "loss of enjoyment of the aesthetic and environmental qualities of the agricultural land

---

[1]   The Administrative Record ("AR") cites are to the administrative record filed by the Defendants in this case on November 18, 2005.

surrounding the casino site;" "diversion of police, fire, and emergency medical resources;" "the loss of business and recreational opportunities, such as retail stores and restaurants, that will be forced out by the casino;" "loss of tax revenue currently generated;" and "loss of consumer spending at area businesses." (Compl. ¶ 14.)

I. **Governmental Support for the Gun Lake Tribe's Project**

Amicus Movant Wayland Township (the "local government") is a strong supporter of the Gun Lake Tribe's project and is well-suited to provide the Court with information regarding the character of the area, the potential impact on local businesses, the alleged loss of tax revenue, and the alleged negative diversion of police, fire and emergency medical services.

A. **The Geographic Area Surrounding the Proposed Casino Site**

As set forth in the BIA's EA, the proposed gaming facility will be located in Wayland Township, Allegan County, in southwest Michigan, and will primarily be housed in an existing, single-story industrial building. (AR 36-39.) Contrary to MichGO's assertions, the proposed site is not rural, and the geographic area is very well-suited for the Tribe's proposed gaming facility for the following reasons.

The 146-acre parcel is located in an area that is currently zoned "light industrial" and is largely developed (including a pre-existing approximately 193,000-square-foot manufacturing plant located on the 146-acre parcel). (AR 36-38.) The site is bordered by 130th Avenue to the north, Norfolk Southern railroad tracks to the east, 129th Avenue to the south, and US-131 to the west. (AR 36.) East of the railroad tracks is a seed and landscape supply company and a small timber company, and located south of 129th Avenue is a transportation/freight company. (*Id.*)

The gaming facility is also in accord with the Wayland Township Zoning Ordinance and Wayland Township Land Use Plan, which states that the area surrounding the 146-acre parcel is

"logical for industrial growth given the access from US-131, the existing industrial uses and zoning the area as well as the industrial use being proposed in adjacent City of Wayland." (Wayland Township Master Plan 2002 at 4-5 (attached hereto).)  Moreover, the Tribe has consistently complied with Wayland Township's local laws, including zoning and land use restrictions.  (AR 886.)

A review of the EA demonstrates that the Tribe has made every effort to respect the environment surrounding the gaming facility.  For example, the preferred alternative would not directly impact any wetlands (AR 90); no state or federally listed sensitive plants or wildlife species have been, or are expected to be, found at the site (AR 92); and no significant historical resources will be affected (AR 94).  In the words of several local community members of the commenting public, the site is "compatible" with, and indeed, "well-suited" for the gaming project.  (AR 834; 926.)

## B.    Affect on Current and Prospective Businesses

MichGO argues that the Tribe's gaming facility should not be allowed on this parcel because it will cause a loss of business and recreational opportunities, such as retail stores and restaurants.  (Compl. ¶ 14.)  MichGO's assertion is inaccurate.  In fact, it is anticipated that in addition to the direct financial benefit that the community will receive from the gaming revenues, the development of the facility will result in increased off-site spending, including spending for dining, beverages, lodging and general retail sales.  Wayland Township is not aware of any prospective businesses that would be displaced as a result of the Tribe's gaming facility, and any assertion to the contrary is pure speculation.

### C.    <u>Illusory Tax Loss</u>

MichGO also opposes the Tribe's project because of the alleged impacts on the community from lost property tax revenues.[2]  (Compl. ¶ 14.)  To the contrary, the Gun Lake Tribe has taken affirmative steps to compensate Wayland Township and Allegan County, the two local governments affected by acceptance of the land into trust, for any loss in tax revenue.  (AR 886; 907.)  Specifically, as stated in the EA, the Tribe's gaming compact includes provisions to compensate local governments for loss of revenue.  (AR 188-89; 886; 907-08.)  Furthermore, the Tribe has committed to provide the local governments with a minimum guaranteed payment in order to compensate them for the tax loss, even in the absence of a tribal-state compact.  (AR 188-89; 886.)

### D.    <u>Fire, Police, and Emergency Medical Services</u>

MichGO asserts that the Court should prohibit the Secretary from accepting the 146-acre parcel of land into trust for the proposed casino because the gaming facility will divert fire, police and emergency medical resources from the community.  (Compl. ¶ 7.)  Again, this assertion is untrue.  To the contrary, the Gun Lake Tribe has worked with local communities to enter into agreements for police, fire and emergency services in order to ensure such a reduction in service does not occur.  (AR 886; 892.)  On March 27, 2003, the Tribe and the City of Wayland executed a "Firefighting Services Agreement" to provide for firefighting and rescue services to the 146-acre parcel.  (AR 216-24.)  Also, the Board of Commissioners of Allegan County has approved a "Deputization and Service Agreement" for the proposed facility, which dispels MichGO's contention that the facility will divert police resources.  (*Id.*)  Also, according

---

[2]  Because the City of Wayland does not levy any property taxes or special assessments on the parcel, the City's income will not be implicated by the Secretary's acceptance of this land into trust.  (AR 892.)

to the Deputy Sheriff's Association of Michigan's research, Native American casinos *do not* cost taxpayers money (for additional law enforcement), but rather provide local law enforcement with the funds necessary to purchase state-of-the-art equipment at no cost to taxpayers.  (AR 842.) Finally, the Tribe has secured a letter of intent from Wayland Area Medical Services to provide emergency medical services to the parcel.  (*Id.*)  All these agreements demonstrate the Tribe's firm commitment to safety and ensuring that adequate resources are available for both the facility and the surrounding community.

## II.     Associational/Organizational Support of the Tribe's Project

The Barry County Chamber of Commerce, the Deputy Sheriff's Association of Michigan, and the Friends of the Gun Lake Indians ("FOGLI") have also requested leave to participate *amicus curiae* in this case in order to rebut MichGO's inaccurate portrayal of Gun Lake Tribe's proposed project as repugnant to the community-at large.  (*See* Compl. ¶ 29.)  The Barry County Chamber of Commerce serves as the collective voice for numerous businesses near the proposed casino site.   The Deputy Sheriff's Association of Michigan ("DSAM") is a non-profit corporation founded in 1978.  The DSAM is a Bipartisan legislative and training organization dedicated to improving public safety and the professional careers of its members.  FOGLI is an unincorporated grassroots organization with more than 10,000 members of the local community, which was created in 2001 to support fairness to the Gun Lake Tribe and to support the Tribe's efforts to bring a casino into Wayland Township.   These *amici* support the Tribe's project because the gaming facility will provide the Tribe (as well as the community at large) much needed economic assistance, as it currently struggles to provide essential services, infrastructure, administrative facilities, and housing for its approximately 277 members, and because the project will not cause a measurable increase in violent crimes.  (*See* AR 18; 942.)

The development of a casino will bring jobs and economic growth to the southwest region of the State of Michigan, including the Wayland Township area, thus decreasing unemployment in a state with one of the highest unemployment rates in the Country. In fact, as set forth in the EA, the proposed casino is expected to create 4,904 new jobs (directly and indirectly). (AR 94-97; *see* AR 593-711.) In addition to the obvious direct employment benefits, the project is also expected to create jobs through the employment of local vendors and the increased revenues anticipated by other local businesses catering to casino patrons and employees. (*Id.*) Such non-gaming, off-site sales are expected to be approximately $32 million dollars per year, which will decrease the elevated unemployment rate of 6.6 percent (in November 2005 (seasonally adjusted)) for the State of Michigan.[3] (*See* U.S. Bureau of Labor Statistics Mem. No. 05-2317, at http://www.bls.gov/news.release/pdf/laus.pdf; AR 57-59; 94-95.) This gaming would also decrease the Tribe's unemployment rate of around 27 percent (as noted in the EA), which is approximately four times higher than that of the State of Michigan generally.[4] (*Id.*)

Also, the agreements between the Tribe and local governments for services such as fire, police and emergency medical will benefit the community by increasing the services and protections available to local residents, as well as casino patrons. For example, the new jobs created and funded by the proposed facility include four additional Allegan County Deputy Sheriffs and one Allegan County Sergeant, helping to protect not only the new casino, but also deter already-existing criminal acts. (AR 126-29; 230-42.) This is a substantial staffing increase

---

[3] It is important to consider this information in light of the fact that 48.6% of the Allegan County residential labor force works outside of Allegan County. (*Id.*)

[4] The proposed facility would also provide the Tribe and its members with the economic support necessary to attain housing for its approximately 277 members—only 26 percent of Tribal members own their own home (compared to 82.9 percent for Allegan County generally). (AR 18.)

for that Department.  Furthermore, contrary to MichGO's representations, the DSAM's research reveals that the Tribe's casino will <u>not</u> cause a measurable increase in violent crimes.  (AR 942.)

## **CONCLUSION**

In sum, the Administrative Record in this case supports the Secretary's decision to accept the 146-acre parcel of land into trust for the Gun Lake Tribe.  As the EA demonstrates, the Tribe's proposed casino will not significantly impact the human environment and, contrary to MichGO's assertions, the community overwhelmingly supports the Tribe's proposed casino.  For these reasons, the Amicus Movants support the Tribe's proposed facility and ask that the Court allow the Tribe's project to proceed.


Dated: January 18, 2006


On Behalf of Wayland Township,

By:___s/John A. Watts_____
   John A. Watts (Mich. Bar # P22048)
   Michael D. Blumeno (Mich. Bar # P66063)
   JOHN A. WATTS, P.C.
   245 Hubbard Street
   Allegan, MI 49010
   (269) 673-3547


On Behalf of Friends of the Gun Lake Tribe,

By: ___s/Kevin Cronin_____
   Kevin Cronin (Mich. Bar # P38915)
   2371 130th Ave.
   Hopkins, MI  49328
   (269) 793-7764


On Behalf of Barry County Chamber of Commerce,

By:____s/Robert Byington_____
   Robert Byington (Mich. Bar # P27621)
   DEPOT LAW OFFICES PLC
   222 W. Apple Street
   Hastings, MI  49058
   (269) 945-9557


On Behalf of Deputy Sheriff's Association of Michigan,

By:____s/Thomas A. Klug_____
   Thomas A. Klug (Mich. Bar # P27462)
   LAW OFFICE OF THOMAS A. KLUG, P.C.
   3626 Dunckel Road
   Lansing, Michigan 48909
   (517) 332-3555

## CERTIFICATE OF SERVICE

I certify that on January 18, 2006, I electronically filed the above document via the Clerk

of the Court's Generic Email Box, which will send notice of electronic filing to the following:

Rebecca A. Womeldorf
Spriggs & Hollingsworth
1350 I Street, N.W., Suite 900
Washington, DC  20005
Tel:  202-898-5800
Fax:  202-682-1639
*Attorney for Plaintiff*

William C. Fulkerson
Robert J. Jonker
Daniel P. Ettinger
Joseph A. Kuiper
Warner Norcross & Judd, LLP
900 Fifth Third Center
111 Lyon Street, N.W.
Grand Rapids, MI  49503
Tel:  616-752-2161
Fax:  616-222-2161
*Attorneys for Plaintiff*

Patricia Miller
Gina Allery
U.S. Department of Justice
601 "D" St., N.W.
Washington, DC  20026
Tel:  202-305-1117
Fax:  202-305-0271
*Attorney for Defendants*

Conly J. Schulte
Shilee T. Mullin
Monteau & Peebles, LLP
12100 W. Center Road, #202
Omaha, NE  68144
Tel:  402-333-4053
Fax:  402-333-4761
*Attorneys for Intervenor*
*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians*

Nicholas Yost
Sonnenschein Nath & Rosenthal, LLP
685 Market Street, 6th Floor
San Francisco, CA  94105
Tel:  415-882-5000
Fax:  415-543-5472
*Attorney for Intervenor*
*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians*

Edward Dumont
Seth Waxman
Wilmer Cutler Pickering Hale & Dorr
2445 M Street, Nw
Washington DC 20037
Tel:  202-663-6910
Fax:  202-663-6363
*Attorneys for Intervenor*
*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians*

s/John A. Watts