30 BIAM SUPPLEMENT 1 _____ 0

NEPA HANDBOOK
Table of Contents
_____

TABLE OF CONTENTS

1.   General

     .1   Introduction
          A.   Purpose
          B.   Scope
     .2   Authorities
          A.   National Environmental Policy Act (NEPA)
          B.   Council on Environmental Quality Regulations
          C.   Department of the Interior Procedures
     .3   Approach of this Handbook
     .4   Policy
     .5   Responsibilities
          A.   Central Office Environmental Services Staff
          B.   Area Directors
          C.   Area Office Environmental Quality Specialists
          D.   Agency Superintendents
          E.   Agency Environmental Coordinators
     .6   Definitions
     .7   Relationship with Other Agencies
          A.   Lead Agency
          B.   Cooperating Agency
          C.   Commenting Agency

2.   NEPA and Bureau Decisionmaking

     .1   Introduction
     .2   NEPA Requirement
     .3   Authority for Bureau Decisionmaking
     .4   Review by Line Officials
     .5   Area Office Addenda
     .6   Tribal Government and NEPA
          A.   Involvement in Preparation of Environmental
               Documents
          B.   Tribal Environmental Laws
          C.   Excluding Insignificant Actions
     .7   Indian Landowner Use of NEPA
     .8   Public Involvement

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

30 BIAM SUPPLEMENT 1 _____ 0 (cont.)
NEPA HANDBOOK
Table of Contents

3.  Initiating the NEPA Process

    .1    Introduction
    .2    Determination of Actions Not Requiring an EA or an EIS
          A.    Categorical Exclusions
          B.    Actions Sufficiently Covered in Earlier
                Environmental Documents
          C.    Responses to Emergencies

    .3    Responsibility for Determination
    .4    Determination of Whether to Prepare an EA or an EIS
          A.    EIS Required
          B.    EA Required
          C.    Further Guidance

4.  Environmental Assessment

    .1    Introduction
    .2    Responsibility for Preparation
          A.    Internally Initiated Proposals
          B.    Externally Initiated Proposals
    .3    EA Contents and Format
          A.    Cover Sheet
          B.    Table of Contents
          C.    Purpose and Need for Action
          D.    Alternatives
          E.    Affected Environment
          F.    Environmental Consequences
          G.    Consultation and Coordination
          H.    Appendices
    .4    Preparation and Review
          A.    Preparation of EA
          B.    Present to Decisionmaker
          C.    Publish Notice of Availability
          D.    Review by Higher Line Official
    .5    Further EA Guidance
          A.    Public Involvement
          B.    Sources of Information
          C.    Special Tribal Input

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

30 BIAM SUPPLEMENT 1                                                    0 (cont.)
NEPA HANDBOOK
Table of Contents

5.    Determination of Significance

      .1    Introduction
      .2    Definition of "Significantly"
      .3    Guidance for Determination of Significance
            A.    Type and Nature of Impact
            B.    Criteria to Consider in Determining Significance
      .4    Finding of No Significant Impact (FONSI)
            A.    Contents
            B.    FONSI Decision Package
            C.    Preparation
            D.    Review of Next Higher Line Official
            E.    Publication of Notice of Availability
      .5    Timing of Action and Reconsideration

6.    Environmental Impact Statement

      .1    Introduction
      .2    Designation of EIS Team and Team Leader
      .3    Preparation and Review
            A.    Notice of Intent (NOI)
            B.    Commencing Scoping Process
            C.    Scoping Reports
            D.    Cooperating Agencies
            E.    Preparation of Preliminary Draft EIS
            F.    Review of Preliminary Draft EIS
            G.    Preparation and Approval of Draft EIS
            H.    Distribution of Draft EIS and File with EPA
            I.    Draft EIS Review and Comment Period
            J.    Respond to Comments on Draft EIS and Prepare
                  Preliminary Final EIS
            K.    Preparation and Approval of Final EIS
            L.    Distribution of Final EIS and File with EPA
      .4    Make Decision, Prepare Record of Decision, and Initiate
            Action
      .5    EIS Supplements and Revisions
      .6    Draft EIS Cancellation

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

30 BIAM SUPPLEMENT 1                                    0 (cont.)
# NEPA HANDBOOK
## Table of Contents

7.   Review of Actions of Other Agencies

    .1   Introduction
    .2   Reviewing and Commenting on EISs
    .3   Pre-decision Referrals to CEQ
    .4   Pre-decision Referrals of BIA Actions by Other Agencies
    .5   Post-decision Referrals to EPA

ILLUSTRATIONS  1-19

No.                           Title

 1.  Overview of the NEPA Process and Bureau Decisionmaking
 2.  Environmental Impact Statement Process
 3.  NEPA and Related Authorities
 4.  CEQ Regulations (40 CFR Parts 1500-1508)
 5.  Summary of Related Laws, Rules & Regulations
 6.  Appendix for the BIA (516 DM 6, Appendix 4)
 7.  CEQ Forty Most Asked Questions
 8.  Exception Review Checklist
 9.  Notice Format
10.  Finding of No Significant Impact (FONSI)
11.  Notice of Intent (NOI)
12.  Notices of Availability (Draft & Final)
13.  Final EIS Comment Page Examples
14.  Record of Decision
15.  Notice of Cancellation
16.  Disclosure (Disclaimer) Statement
17.  Notice of Correction
18.  Scoping Report
19.  EA Environmental Consequences Checklist
20.  EA Review and Consultation Requirements Checklist

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

Case 1:05-cv-01181-JGP    Document 50-5    Filed 03/31/2006    Page 5 of 60

NEPA HANDBOOK
General

# 1. GENERAL

## 1.1 Introduction.

**A.  Purpose.**  This handbook provides guidance for Bureau
personnel in preparing documents required by the National
Environmental Policy Act of 1969 (NEPA).  An additional purpose
is to provide guidance to tribal officials on NEPA and how it
applies to the Bureau.  Because the interests of Indian people
are often affected by the actions of other Federal agencies, the
Handbook also explains how the Bureau and the tribes can use the
NEPA process to advise Federal decisionmakers of impacts on
Indian people and their environment which might result from the
actions of other Federal agencies.

**B.  Scope.**  This manual is strictly advisory and does not
create, add to, or otherwise modify any legal requirement.  The
procedures described in this handbook were devised solely to aid
Bureau officials in the internal administration of the agency,
and are subject to re-interpretation, revision, or suspension by
the Bureau in its discretion at any time without notice.  Users
of this Handbook should resolve any conflict with its content in
favor of the applicable legal authority.

## 1.2 Authorities.

**A.  National Environmental Policy Act of 1969 (NEPA).**
Section 102(2) of NEPA establishes procedures which are binding
on all Federal agencies.  The primary requirement is that an
Environmental Impact Statement (EIS) be prepared for every major
Federal action significantly affecting the quality of the human
environment.  The full text of NEPA is included in this Handbook
in Illustration 3.

**B.  Council on Environmental Quality Regulations.**  NEPA
established the Council on Environmental Quality (CEQ) in the
Executive Office of the President.  CEQ issued its latest
Regulations for Implementing the Procedural Provisions of NEPA
(43 FR 55978-56007; 40 CFR Parts 1500-1508) on April 25, 1986.
Copies of these Regulations may be obtained from the addresses
listed in Illustration 4.  As stated in the Executive Order
11991, the purpose of the regulations is:

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

"...to make the Environmental Impact Statement process more
useful to decisionmakers and the public; and to reduce
paperwork and the accumulation of extraneous background
data, in order to emphasize the need to focus on real
environmental issues and alternatives. [The Regulations]

require impact statements to be concise, clear, and to the point,
and supported by evidence that agencies have made the necessary
environmental analyses."

NOTE: Part 1500 of the regulations discusses in further detail
their purpose. References to the regulations in this handbook
normally give only the section number, omitting "40 CFR."

   C.   Department of the Interior Procedures.  The CEQ
regulations require Federal agencies to adopt procedures to
implement the regulations in agency programs.  The Department
of the Interior's implementing procedures are codified at 516 DM
1-7.  The Department's procedures are generally uniform for all
bureaus within the Department.  However, because of the
differences among bureaus, some provisions apply only to specific
bureaus.  These bureau-specific provisions are codified as
appendices to Chapter 6 of 516 DM.  The appendix for each bureau
contains the information specified by 516 DM 6.5A.  The appendix
for the Bureau of Indian Affairs is 516 DM 6, Appendix 4
(Illustration 6 of this handbook).  The Department of Interior's
516 DM will be available upon request from the Environmental
Services Staff.

1.3  Approach of This Handbook.  The person who uses this
handbook must become familiar with the authorities listed in
Section 1.2 above, i.e., NEPA, the CEQ Regulations, and the
Department's implementing procedures.  The approach this handbook
takes in explaining the application of NEPA to BIA decisionmaking
is to describe each phase of the NEPA process in a step-by-step
way, providing references to provisions in the authorities so
that the user can find the provisions which are of particular
relevance to each step.  The reason for this approach is to keep
the handbook as brief as possible, since it is the authorities
explained by the handbook, not the handbook itself, which govern
the NEPA process.

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

NEPA HANDBOOK
General

1.4  **Policy.**  The NEPA policy is set forth in 40 CFR Part 1500.2 and is augmented by the policy of the Department of the Interior as set forth in 516 DM 1.2.  The Bureau policy regarding protection and enhancement of environmental quality, as published in 30 BIAM 1.2, is also relevant.

1.5  **Responsibilities.**  The responsibilities of Bureau officials for the administration of activities for compliance with NEPA and the CEQ Regulations are set forth in 516 DM 1.3, 6.3B, 6.3, 6.4 , 6.5, and 516 DM 6, Appendix 4.1.  All Bureau officials to whom authority is delegated for making decisions on proposed actions subject to NEPA documentation requirements are responsible for compliance with NEPA and the CEQ regulations.  Line officials are responsible for assigning sufficient staff to ensure that their decisions comply with NEPA and the CEQ regulations.  If the preparation of an adequate EA or EIS by a decisionmaker requires staff or financial resources which are not subject to decisionmaker's authority, this should be brought to the attention of the line official from whom the delegation of authority is derived.

    A.  **Central Office Environmental Services Staff.**  The Chief, Environmental Services Staff, shall exercise primary staff responsibility for policy direction, coordination, and monitoring NEPA activities and resulting documents within BIA.  This office shall also resolve issues regarding the level of environmental documentation, and provide assistance, advice, and training to achieve the objectives of BIA compliance with NEPA.

    B.  **Area Directors.**  Area Directors are responsible for NEPA compliance at the area office level.  Area Directors will make adequate trained staff and funds available for NEPA compliance and for implementing the environmental quality program.

    C.  **Area Office Environmental Quality Specialists.**  The environmental quality specialists shall:

        (1) implement the procedures established in this handbook and may develop area-wide addenda procedures consistent with this handbook (See §2.5 below).

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

Case 1:05-cv-01181-JGP    Document 50-5    Filed 03/31/2006    Page 8 of 60

NEPA HAND BOOK
General

(2) coordinate with responsible agency officials concerning agency-wide actions.

(3) serve as liaison between the area and central offices and as coordinator on NEPA related activities at the area level.

D.  **Agency Superintendents.**  Superintendents shall be responsible for NEPA compliance for actions initiated at the agency level.  If the agency does not have its own environmental coordinator, the Superintendent shall assume the duties outlined in 1.5E.

E.  **Agency Environmental Coordinators.**  Agency environmental coordinators shall be responsible for coordinating activities at the agency level for compliance with the procedures outlined in this handbook.  The coordinator shall work with the area office environmental quality specialist and the tribe(s) to assess environmental consequences of proposed actions. Coordination shall include determining the extent of documentation necessary to comply with NEPA and the program(s) responsible for compliance.

1.6  **Definitions.**  For the purpose of this handbook all definitions of terms are those presented in 40 CFR Part 1508 (Terminology and Index).  Bureau personnel should be familiar with these terms.  An additional term used in this handbook is "Bureau decisionmaker," which is defined in section 2.3.

1.7  **Relationships With Other Agencies.**  The CEQ regulations emphasize cooperative consultation among agencies prior to the preparation of EISs, rather than the submission of adverse comments on completed documents (§1501.1).  There are three basic roles which BIA may assume in the NEPA process.

A.  **Lead Agency.**  If BIA has jurisdiction over the proposed action, it may take primary responsibility for NEPA compliance as the lead agency.  The Lead agency is primarily responsible for the preparation of the EIS for a proposed action.  In some circumstances, two or more agencies may serve as joint lead agencies.  The Departmental Office of Environmental Affairs (OEA) shall be notified of joint leads within the Department.  (See §1501.5 and 1508.16 and 516 DM 2.4)

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

NEPA HANDBOOK
NEPA and Bureau Decisionmaking

    B.   Cooperating Agency.  BIA may support another agency by providing special expertise or resources as a cooperating agency for EAs or EISs.  For proposed Federal actions which require environmental documentation and which may affect Indian interests, it may be advantageous for the BIA to become a cooperating agency.  Affected tribes may also become cooperating agencies.  Bureau or tribal participation may also be necessary because of Bureau or tribal expertise or jurisdiction by law. OEA is to be notified of cooperating agencies within the Department. (See §§ 1501.6 and 1508.5 and 516 DM 2.5.)

    C.   Commenting Agency.  BIA may comment on environmental documents prepared by other agencies.  If a proposed Federal action for which an environmental document has been prepared may affect Indian lands, rights, or other interests, the BIA has a duty to comment on the draft document, whether or not BIA is a cooperating agency.  Tribes may also want to submit comments on the document.  This subject is discussed in more detail in Chapter 7 of this handbook. (See §§ 1503.1, 1503.2, 1503.3 and 516 DM 7.)

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

NEPA HANDBOOK
NEPA and Bureau Decisionmaking

## 2.  NEPA AND BUREAU DECISIONMAKING

**2.1  Introduction.**  This chapter explains how the NEPA process
relates to Bureau decisionmaking.  The decision to prepare a NEPA
compliance document for a proposed action is different from the
decision whether or not to implement the proposed action.  NEPA
compliance does not necessarily mean that a proposed action can
be implemented, since other requirements may be imposed by other
laws, regulations, or policies.  An overview of the NEPA process
is presented in Illustration 1.

**2.2  NEPA Requirement.**  The primary requirement of §102(2) of
NEPA (Illustration 3) is that an Environmental Impact Statement
(EIS) shall be prepared for every major Federal action
significantly affecting the quality of the human environment.  An
environmental assessment (EA) is a less detailed document which
may be used to determine whether or not an EIS is required.  If
based on an EA it is determined that an EIS is not required, the
responsible line official signs a Finding Of No Significant
Impact (FONSI), and this fulfills the documentation requirements
established by the CEQ regulations.  Certain kinds of actions are
categorically excluded and may be taken without the preparation
of either an EA or an EIS upon completion of an Exception Review
Checklist (Illustration 8).  Chapters 3 and 5 of this handbook
provide guidance on how to determine whether an EA or an EIS is
required before an action can be taken.

**2.3  Authority for Bureau Decisionmaking.**  Decisions which Bureau
officials make are based upon delegations of authority which are
documented in 10 BIAM or its addenda.  Authority is generally
delegated to the lowest level in the organization at which
resources and competence are available for the proper exercise of
that authority.  This Handbook uses the term "Bureau
decisionmaker" to describe the Bureau official to whom authority
has been delegated to make the decision on a proposed action for
which either an EA or an EIS is required. Since the official who
has delegated such authority is not divested of the power to
exercise it (10 BIAM 1.10), the term "Bureau decisionmaker" also
applies to authority which has been delegated to a subordinate.
For most local proposed actions, the Bureau decisionmaker is the
Agency Superintendent.


BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

NEPA HANDBOOK
NEPA and Bureau Decisionmaking

2.4  Review by Line Officials.  This handbook establishes means
by which higher level line officials can exercise control over
environmental documents prepared under the authority of
subordinate line officials.  Specifically, Section 5.4D
establishes a process by which FONSIs signed below an Area
Director shall be reviewed by the Area Director on an individual,
semi-annual, or annual basis.

2.5  Area Office Addenda.  Area Directors may issue addenda to
this handbook to provide more detailed guidance regarding NEPA
compliance for Bureau actions within their service areas.  All
such addenda should be submitted to the Commissioner for
approval.

2.6  Tribal Governments and NEPA.  Tribal governments have
substantial authority for environmental protection within their
reservations as an aspect of their retained tribal sovereignty.
This tribal governmental authority is distinct from the
responsibilities and authority of the Bureau pursuant to NEPA,
other Federal environmental laws, and the trust responsibility.
Activities affecting the environment of Indian reservations often
require the approval of both the Bureau and the appropriate
tribal government.  Because of this dual authority, it is
desirable for the Bureau's NEPA process and tribal decisionmaking
processes to be coordinated.  Such coordination helps achieve the
policies and purposes of the CEQ regulations, reduces paperwork
and delay, integrates environmental considerations into the early
stages of planning and decisionmaking, and increases the
usefulness of the NEPA process for decisionmakers.

    A.  Involvement in Preparation of Environmental Documents.
EAs and EISs are generally more useful for tribal decisionmaking
if tribal governments are directly involved in the preparation
and review of these documents.  When an EIS is required for a
proposed action, tribal involvement can best be achieved by the
tribe becoming a cooperating agency (see chapter 6 of this
handbook).  Tribal involvement in the preparation and review of
EAs can be achieved in a variety of ways (see chapter 4 of this
handbook).

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

**B.** **Tribal Environmental Laws**. If a tribal government has
enacted any environmental law which applies to a proposed Bureau
action, and the preparation of either an EA or EIS is required,
compliance with these laws shall be addressed in the EA or EIS.
If the proposed Bureau action is categorically excluded, but
taking the action would threaten to violate a tribal
environmental law, an EA must be prepared (516 DM Appendix 2.10).

**C.** **Excluding Insignificant Actions**. To focus the NEPA
process on actions which have the potential for significant
environmental impacts and to avoid devoting time and resources to
actions which do not have such potential, the CEQ regulations
allow agencies to identify actions as categorical exclusions.
The Bureau's list of categorical exclusions is outlined in 516 DM
6, Appendix 4.4, and new actions may be added as appropriate.
Tribes may suggest such additions to the Central Office
Environmental Staff. Proposed tribal actions which do not
require "Federal actions" are not subject to the NEPA process.

**2.7** **Indian Landowners and NEPA**. Proposed allottee/assignee
actions on trust allotments which require Federal actions shall
comply with NEPA.

**2.8** **Public Involvement**. Public scrutiny is essential to the
NEPA process. It is Departmental policy to offer the public
meaningful opportunities for participation in decisionmaking
leading to actions and policies which may significantly affect or
interest them (301 DM 2.1). Sectors of the public with which the
BIA is most concerned are: tribal government officials; Indian
and Alaska Native communities and individuals; national,
regional, and local Indian organizations and interest groups; and
traditional, tribal religious leaders. (See §1500.1(b), §1506.6,
516 DM 1.6, and 301 DM 2.)

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

OVERVIEW OF THE NEPA PROCRSS AND BUREAU DECISIONMAKING

```
                    +-----------------------------------------+
                    |  P r o p o s e d      A c t i o n       |
                    +-----------------------------------------+

+-----------------+  +-----------------+  +-----------------+  +-----------------+
| IMPACT COVERED  |  | CATEGORICAL     |  | NEED FOR EIS    |  | EIS             |
| BY EARLIER NEPA |  | EXCLUSIONS      |  | NOT DETERMINED  |  | NORMALLY        |
| DOCUMENT        |  |                 |  |                 |  | REQUIRED        |
+-----------------+  +-----------------+  +-----------------+  +-----------------+

                     +------------+  +-------+  +----------------+
                     | DOES       |  | YES   |  | EA REQUIRED    |
                     | EXCEPTION  |  |       |  | CHAPT 4        |
                     | APPLY?     |  +-------+  +----------------+
                     +------------+

                     +----------------+        +----------------+
                     | EXCEPTION REVIEW|       | EA COMPLETED   |
                     | CHECKLIST      |        +----------------+
                     | ILLUSTRATION 8 |
                     +----------------+        +----------------+  +-------+
                                               | DETERMINATION OF|  | YES   |
                                               | SIGNIFICANCE   |  +-------+
                     +-------+                  | CHAPT 5        |
                     | N O   |                  +----------------+
                     +-------+
                                               +-------+         +----------------+
                                               | N O   |         | EIS            |
                                               +-------+         | PROCESS        |
                                               +-------+         | CHAPT 6        |
                                               | FONSI |         +----------------+
                                               +-------+
```

+-------------------------------------------------------------------------+
|  N E P A    D O C U M E N T A T I O N    C O M P L E T E D               |
+-------------------------------------------------------------------------+

+-----------------------------+
| DECISION DOCUMENT           |
| SIGNED BY RESPONSIBLE       |
| BUREAU OFFICIAL             |
+-----------------------------+

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

### 3. Initiating the NEPA Process

3.1  Introduction.  The purpose of this chapter is to provide guidance to Bureau personnel on the level of documentation required before making the decision on whether or not to implement a proposed action.

3.2  Determination of Actions not Requiring an EA or an EIS.  The majority of Federal actions do not result in significant environmental impacts and, therefore, do not require an EIS.  In addition, the CEQ regulations allow agencies to proceed with the following kinds of actions without preparing either an EIS or an EA.

   A.  Categorical Exclusions.  Actions listed in 516 DM 2, Appendix 1 and 516 DM 6, Appendix 4.4, have been determined not to individually or cumulatively affect the quality of the human environment and, therefore, they do not normally require preparation of either an EA or EIS.  However, exceptions may exist in which a normally excluded action may result in significant effects upon the environment, and in such cases an EA or EIS must be prepared.  These exceptions are summarized in the exception review checklist (Illustration 8).  This checklist may be used to assist in determining whether an exception applies.  If any exception applies an EA must be prepared.  If there is any doubt whether an exception applies, an EA should be prepared.

   B.  Actions Sufficiently Covered in Earlier Environmental Documents.  If the environmental impacts of a proposed action are sufficiently covered in any earlier EA, EIS, or state environmental document, the preparation of new NEPA documents may be unnecessary.  For example, the earlier document may have been prepared to address a broad range of actions, including the proposed action, or it may have been prepared by another Federal agency which also has approval authority over a similar proposed action.  An earlier EA or EIS is sufficient and may be adopted if it adequately evaluates the impacts of the proposed Bureau action and supports a FONSI.  An earlier EIS may be adopted for Bureau actions with significant impacts under the provisions of §1506.3.  However, these documents should be considered drafts.

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

30 BIAM SUPPLEMENT 1                                                      3.2C
NEPA HANDBOOK
Initiating the NEPA Process

C. Responses to Emergencies. In an emergency, a proposed
action with significant environmental impacts may be taken
without observing the provisions of the CEQ Regulations. These
actions are generally related to immediate personnel relief (See
§1506.11. and 516 DM 5.8). However, actions other than those
necessary to control the immediate impacts of the emergency
remain subject to the NEPA process. The Office of Environmental
Affairs and the Office of the Solicitor must be contacted to set
up emergency compliance actions in accordance with CEQ
Regulations. The Central Office Environmental Services Staff
will be the point of contact for this process.

3.3 Responsibility for Determination. The Bureau decisionmaker
is responsible for making the determination that an action may be
taken without preparation of either an EA or EIS. If the
decisionmaker is not a line official, responsibility is shared by
the line official from whom the decisionmaker's delegation of
authority is derived. Area Directors may provide procedures for
reviewing these determinations in Area Office addenda issued
pursuant to § 2.5 of this Handbook.

3.4 Determination of Whether to Prepare an EA or an EIS. If
none of the situations described in §3.2 apply, then an EA or EIS
may be necessary. This section provides guidance for determining
whether to initiate preparation of an EIS or to first prepare an
EA.

A. EIS Required. The primary requirement of NEPA is that
an EIS be prepared for every Federal action that will or may
significantly affect the quality of the human environment.
Pursuant to the CEQ regulations, there are three ways of reaching
the conclusion that an EIS is required:

(1) EIS Normally Required. Bureau actions which have
been determined to normally require the completion of an EIS
prior to their implementation are listed in 516 DM 6, Appendix
4.3. (However, circumstances may exist in which an action
normally requiring the preparation of an EIS does not result in
significant environmental impacts. In such circumstances, an EA
shall be prepared to determine whether any significant impacts
may or will occur. In these, the CEQ Regulations impose
additional public review requirements. See §1501.4(e)(2)}.

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

(2) **Based on EA.** The main purpose of an EA is to determine whether or not an EIS is required. If an EA supports a Finding Of No Significant Impact (FONSI), then an EIS is not required. If the EA does not support a FONSI, then an EIS is required.

(3) **Based on Judgment.** If, based on the judgment of the responsible Bureau official(s), an EA is not likely to support a FONSI, then unnecessary delay can be avoided by preparing an EIS rather than an EA. If an EA is in preparation at the time it becomes apparent that the impacts are likely to be significant, there is no need to complete the EA. Rather, an EIS should be initiated.

B. **EA Required.** While the Department's procedures specify actions which normally require an EIS (516 DM 6, Appendix 4) and actions which are categorically excluded from the NEPA process (516 DM 2, Appendix 1 and 516 DM 6, Appendix 4), the procedures do not identify actions which normally require an EA. The **basic rule** is that an EA will be prepared for all actions, except those covered by a categorical exclusion, covered sufficiently by an earlier environmental document, or for those actions for which a decision has already been made to prepare an EIS (516 DM 3.2). An EA is also required if an action is covered by a categorical exclusion, but an exception applies (See §3.2A above). However, if it is apparent that an EA is not likely to support a FONSI-- i.e., that the proposed action may or will have a significant impact--then proceed directly to the preparation of an EIS. If, on the other hand, an EIS has been initiated and it becomes apparent that the action will not have significant impacts (for example by revising the proposed action) the document may be released as an EA. In such circumstances, the notice of availability shall explain the reasons for not completing the document as an EIS and include a statement that the subsequent EA and FONSI will be made available for public review.

NOTE: In order to minimize the need for NEPA documentation on specific actions, a reasonable grouping of related actions can be considered in the same EA. This may be particularly appropriate if there are impacts from individual actions which do not appear to be significant, but which may be significant when cumulative impacts are considered.

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

30 BIAM SUPPLEMENT 1                                                    3.4C
                            NEPA HANDBOOK
                        Environmental Assessment

     C.  Further Guidance.  The decision whether to begin the
NEPA process with an EIS or to first prepare an EA is often a
matter of judgment especially where time is a critical factor.
Coordination among tribal and Bureau officials in determining the
need for and the scope of EAs and EISs is essential to achieving
a streamlined yet effective NEPA process.  In making a decision
on whether to prepare an EA or an EIS, it should be kept in mind
that judicial review of an EA is more stringent than that of an
EIS.

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

NEPA HANDBOOK
Environmental Assessment

## 4.  ENVIRONMENTAL ASSESSMENT

**4.1  Introduction.**  The purpose of this chapter is to provide guidance in preparing EAs.  An EA is a concise public document which provides sufficient analysis for determining whether a proposed action may or will have a significant impact on the quality of the human environment.  The EA should be completed early in the decisionmaking process so that if it becomes apparent that the proposed action may or will have significant impacts an EIS can be prepared early as well.  If the EA reveals no significant impacts, a FONSI is prepared.  Illustration 1 highlights this decision as one of the critical actions in the NEPA process.

**4.2  Responsibility for Preparation.**  As soon as a decision has been made to prepare an EA, responsibility for preparing the EA should be assigned by the Bureau decisionmaker.  To the extent possible, the Bureau will use an interdisciplinary team approach in preparing an EA.

    **A.  Internally Initiated Proposals.**  (See 516 DM 1.4B.) An EA is normally prepared by the program staff which has identified the need for a proposed action and which has lead responsibility for implementing the action.  Agency and Area Environmental Staff will provide assistance in the preparation of EAs.  Staff of other programs will assist in preparing EAs if one or more of the alternatives or mitigation measures fall within their areas of responsibility or if their participation would enhance interdisciplinary analyses.  Depending upon the complexity of the proposed action, the responsibility for preparation may be assigned to either an individual or an interdisciplinary team.

    **B.  Externally Initiated Proposals.**  (See 516 DM 1.4C.) When the proposed Bureau action is a response to an externally initiated proposal, such as a lease of trust land, the applicant will normally be required to prepare the EA, if one is required, and to provide supporting information and analyses as appropriate.  The EA should be submitted with the application, or as soon thereafter as possible.  The Bureau shall make its own evaluation of the environmental issues and shall take

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

responsibility for the scope and content of the EA. (See
§1506.5(b). The applicant may be required to submit additional
information, analyses, or reports if necessary to adequately
address the environmental issues or if it is determined that an
EIS will be required. The responsible Bureau official many elect
to prepare any or all of an EA.

4.3  EA Contents and Format. (See §§1508.9, and 516 DM 3.4.).
An EA will, at a minimum, include: brief discussions of the need
for the proposal, alternatives as required by §102(2)(E) of NEPA,
and environmental impacts of the proposed action and
alternatives. A listing of agencies and persons consulted shall
also be included. In addition, an EA may be expanded to add
detail to the description of the proposal, or to discuss a
broader range of alternatives and mitigation measures if this
facilitates planning and decisionmaking.

NOTE: It is important to keep in mind that an EA is not supposed
to be a short EIS. Except as required by §102(2)(E) of NEPA, the
analysis in an EA need not go beyond that needed to determine
whether impacts will or may be significant. In conducting the
analysis for an EA it will be helpful to refer to the guidance
contained in Chapter 5 of this Handbook in order to limit the
discussion to that which is necessary to determine significance.
An EA should normally be no more that 15 or 20 pages in length,
unless it has been decided to prepare a longer, more detailed EA
to aid in planning and decisionmaking. An EA may be combined
with another planning or decisionmaking document (516 DM 3.5B).
An EA should be organized as follows.

A.  Cover Sheet. This will include a brief description
of the proposed action. If public comments are being sought, the
cover sheet should be clearly marked as a draft and should state
the date when comments are due. The cover sheet should be dated
and should give the name of the preparer or team leader. If the
proposed action is one in which an "applicant," such as an Indian
landowner or tribal government, another governmental agency, or
person, has requested the Bureau to take the proposed action, the
cover sheet shall identify the applicant.

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

NEPA HANDBOOK
Environmental Assessment

B. **Table of Contents**. (Optional)  This lists chapter and section headings along with tables, figures and illustrations.

C. **Purpose of Need for Action**.  This section explains in a few sentences the reason why the proposed action is being considered.  The purpose of or need for the action should be stated clearly here, in order to ensure that the proposed action and alternatives address it directly.  If a programmatic EIS or other program documents have previously been prepared, they should be referenced but not repeated.

D. **Alternatives**.  All reasonable alternatives must be considered, including "no action".  The alternatives should not be merely exercises done to fulfill this requirement; they should be honest attempts to find other ways to meet the identified need or achieve the identified purpose while reducing or eliminating harmful environmental impacts.  The alternatives should be described in detail sufficient to permit comparison of their merits, especially if their impacts are different, e.g., in kind, size, location, intensity, or duration.  ($1502.14)

E. **Description of the Affected Environment**. (Optional)  The "Affected Environment" section ($1502.15) should succinctly describe the area in which the proposed action would occur.  Page-sized maps of the general area and the project site help avoid superfluous description.  Incorporation of sections of earlier environmental documents by reference may also be appropriate along with a summary of the key facts included in these references.

NOTE:  Components of the environment which should be considered in preparing the EA are listed below.  While all of these components should be considered, only those components which will be affected by the proposed action need be discussed (1500.4 (c) and 1502.2 (b)).  If there are resources which require special attention under any of the statutes or Executive Orders listed in 516 DM 4, Appendix 1 as amended by PEP ES Memo 88-3, such resources should be highlighted.

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

NEPA HANDBOOK
Environmental Assessment

    (1)  Land Resources

        (a)  Topography (land forms, drainage, gradients)

        (b)  Soils (types, characteristics)

        (c)  Geologic Setting and Mineral Resources

    (2)  Water Resources (quality, use, rights)

    (3)  Air (quality, visibility, etc.)

    (4)  Living Resources

        (a)  Wildlife (terrestrial, aquatic, threatened/endangered)

        (b)  Vegetation (terrestrial, aquatic, riparian, threatened/ endangered)

        (c)  Ecosystems and Biological Communities

        (d)  Agriculture (livestock, crops, prime and unique farmland)

    (5)  Cultural Resources

        (a)  Historic, Cultural, and Religious Properties

        (b)  Archeological Resource

    (6)  Socioeconomic Conditions

        (a)  Employment and Income

        (b)  Demographic Trends

        (c)  Attitudes, Expectations, Lifestyle and Cultural Values

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

30 BIAM SUPPLEMENT 1                                    4.3E (con't)

NEPA HANDBOOK
Environmental Assessment

    (1)  Land Resources

        (a)  Topography (land forms, drainage, gradients)

        (b)  Soils (types, characteristics)

        (c)  Geologic Setting and Mineral Resources

    (2)  Water Resources (quality, use, rights)

    (3)  Air (quality, visibility, etc.)

    (4)  Living Resources

        (a)  Wildlife (terrestrial, aquatic,
             threatened/endangered)

        (b)  Vegetation (terrestrial, aquatic, riparian,
             threatened/ endangered)

        (c)  Ecosystems and Biological Communities

        (d)  Agriculture (livestock, crops,
             prime and unique farmland)

    (5)  Cultural Resources

        (a)  Historic, Cultural, and Religious
             Properties

        (b)  Archeological Resource

    (6)  Socioeconomic Conditions

        (a)  Employment and Income

        (b)  Demographic Trends

        (c)  Attitudes, Expectations, Lifestyle and
             Cultural Values

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

### NEPA HANDBOOK
### Environmental Assessment

        (d)  Community Infrastructure

   (7)  Resource Use Patterns

        (a)  Hunting, Fishing, Gathering

        (b)  Timber Harvesting

        (c)  Agriculture

        (d)  Mining

        (e)  Recreation

        (f)  Transportation Networks

        (g)  Land Use Plans

   (8)  Other Value

        (a)  Wilderness

        (b)  Sound and Noise

        (c)  Public Health and Safety

     F.   Environmental Consequences.  Good analyses in this section is the key to a good EA.  Since the purpose of preparing an EA is to determine whether or not the proposed action will or may significantly affect the human environment, all potentially significantly effects, beneficial and adverse, must be noted.

The list provided in §4.3E, above shall be used in identifying impacts.  Impacts on any of the resources which require special attention under the laws and Executive Orders listed in 516 DM 4, Appendix 1, as amended by PEP ES Memo 88-3, shall be highlighted.

    (1)  Organization.  The discussion of environmental consequences may be organized in either of two ways:  (a) all of the consequences of an alternative may be discussed before moving on the next alternative; or (b) the consequences of each

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

NEPA HANDBOOK
Environmental Assessment

alternative on a component of the environment may be discussed
before moving on to the next component. The first approach is
appropriate for proposals which do not have a broad range of
environmental consequences, while the second approach may be more
useful for those that do. In either case, it may be helpful to
display a summary of this information in a matrix.

(2) **Mitigation Measures**. When adverse effects are
noted, mitigation measures to reduce or eliminate such effects
should be identified where possible and incorporated into
reasonable alternatives. Such mitigations may only be integrated
as part of the proposal if they are required by statue or
regulation and are enforceable or are integrated as part of the
proposal. However, it must be remembered that mitigation
measures to justify a FONSI are subject to more stringent
judicial review than those used in an EIS. See question number
40 of Illustration 7, CEQ Forty Most Asked Questions for more
detailed discussion.

G. **Consultation and Coordination**. Environmental
review and consultation requirements are established by the laws
and Executive Orders listed in 516 DM 4, Appendix 1. This
section of the EA must list the agencies and persons consulted,
either because an applicable law or Executive Order requires
consultation, or because the agency or person has expertise which
is appropriate. Affected tribes and appropriate tribal agencies
should always be included in this consultation. (§1502.25)

(1) If any of these requirements are applicable to any
of the alternatives under consideration, compliance should be
achieved during the preparation of the EA, if practicable. If
simultaneous compliance is not practicable, the EA shall identify
which requirements are applicable to which alternatives and it
shall explain how compliance will be achieved if one of the
alternatives is implemented. The discussion in the EA should be
brief, with correspondence and reports referenced and included as
an appendix.

(2) For many of the environmental review and
consultation requirements, compliance can be achieved by asking
the appropriate Federal, tribal, state, and local agencies with

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

30 BIAM SUPPLEMENT 1                            4.3G(3)
### NEPA HANDBOOK
### Environmental Assessment

jurisdiction by law or special expertise to contribute to the preparation of the EA or to review of the draft EA.  This practice will also tend to enhance the interdisciplinary analysis of an EA, since the staff of such agencies may represent disciplines of the natural and social sciences and environmental design arts which are not represented in the BIA organizational unit charged with the preparation of the EA.

      (3)  Special attention should be given to some of the statutes listed in 516 DM 4, Appendix 1, because of the time that may be required to achieve compliance and/or because of the importance of the protected resources to affected Indian people. These include:

      (a)  National Historic Preservation Act

      (b)  American Indian Religious Freedom Act

      (c)  Clean Water Act

      (d)  Safe Drinking Water Act

      (e)  Clean Air Act

      (f)  Fish and Wildlife Coordination Act

      (g)  Endangered Species Act

      (h)  Resource Conservation and Recovery Act

      (i)  Federal Insecticide, Fungicide and Rodenticide Act

      (j)  Clean Air Act

      (k)  Toxic Substances Control Act

      (l)  Asbestos Hazard Emergency Response Act

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

Case 1:05-cv-01181-JGP     Document 50-5     Filed 03/31/2006     Page 26 of 60

(4) It is important to remember that compliance with these laws does not preclude compliance with NEPA, and vice-versa. This is especially important in dealing with the National Historic Preservation Act and the Fish and Wildlife Coordination Act.

H.   Appendices.  A listing of BIA staff, with titles, who contributed to the development of the EA may be included as an appendix.  Correspondence and reports relating to environmental review and consultation requirements may be included as a separate appendix.  If the EA cites more references than can be conveniently cited in the text, then an appendix should be included which lists these references.  Any other appropriate material may be included in an appendix.

4.4  Preparation and Review.  This section describes the procedural steps in preparing and reviewing an EA.  Further guidance may be provided in area office addenda to this handbook.

A.   Preparation of EA.  As soon as a preparer or team has been designated, the analysis and consultation described in the preceding section should begin.  Writing the EA is a matter of documenting this analysis and consultation.  Illustrations 19 and 20 of this handbook may be used.  Depending on the scope of the EA, the preparer or team should contact appropriate Bureau offices, the affected tribe(s), and any Federal, tribal, state, or local agencies with jurisdiction by law or special expertise, and solicit their input on the preparation of the EA or their review of the completed document.  When the preparer or team is satisfied that the documentation is sufficient for determining whether or not an EIS is required, the EA may be considered completed.

B.   Present to Decisionmaker.  When the EA is completed the preparer or team presents it to the Bureau decisionmaker, along with recommendations for action.  After reviewing the EA and discussing it with the preparer or team, if necessary, the decisionmaker may decide to take one of the following actions:

(1)  Sign a FONSI.  (See chapter 5 of this handbook).

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

NEPA HANDBOOK
Determination of Significance

    **B.** <u>Sources of Information</u>.  Preparation of an EA should not normally involve primary data collection, but should rather draw upon existing information.  Area office and agency staff involved in the preparation of EAs should strive to maintain up-to-date baseline information for the Indian lands and communities under their jurisdiction.

    **C.** <u>Special Tribal Input</u>.  Special attention should be given to socioeconomic and cultural impacts of a proposed action, especially where traditional cultural practices are important to tribal members for subsistence, commerce, or religious purposes (see 30 BIAM 1.2).  Furthermore, socioeconomic or cultural benefits may be the major reason for proposing to take an action. The affected tribe(s) and tribal members are often the best sources for this kind of information.

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

(2) <u>Direct Further Work on the EA</u>. The decisionmaker
may decide that the EA is not sufficient to determine whether or
not an EIS is required. In such a case, the preparer or team may
be directed to: correct impacts, consider new alternatives or
mitigation measures, seek public involvement, or other measures
to make the EA useful to the decisionmaker. When the revised EA
is completed, the preparer or team will again present it to the
decisionmaker.

(3) <u>Initiate an EIS</u>. If the decisionmaker finds that
the proposed action may or will have a significant impact, and
does not adopt an alternative which would <u>not</u> have a significant
environmental impact then an EIS must be prepared. (see chapter
6).

C. <u>Publish Notice of Availability</u>. Notice of availability
of all EAs and FONSIs shall be provided as required by
§1506.6(b), and may include publication in a local newspaper of
general circulation. For minor localized actions, a FONSI may be
posted at the agency or tribal offices for a minimum of 30 days.
Illustration 10 may be helpful.

D. <u>Review by Higher Line Official</u>. Copies of all EAs
prepared below the Area Office level shall be provided to the
appropriate Area Office environmental staff. Controversial EAs
may be reviewed by the Central Office.

4.5 <u>Further EA Guidance</u>.

A. <u>Public Involvement</u>. The amount of public involvement
in preparing an EA will depend upon factors, such as the number
of people who would be affected by the alternatives under
consideration or the degree of public interest and/or
controversy. The scoping process (see chapter 6) may be used if
this would be helpful. If the EA is released for public comments
prior to making the
determination of significance, notice of availability shall be
provided as required by §1506.6 and may include publication in a
local newspaper(s) of general circulation. (See §2.8 of this
handbook)

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

NEPA HANDBOOK
Environmental Impact Statement

## 5. DETERMINATION OF SIGNIFICANCE

**5.1  Introduction.**  The purpose of this chapter is to provide guidance for determining whether the impacts of a proposed action or its alternatives will or may result in significant impacts on the environment.  The EA serves as the basis for making this determination.  If it is determined that no significant impacts will result, then a finding of no significant impact (FONSI) is prepared.  When the FONSI has been signed and notice published, as described in this chapter, NEPA compliance is completed.  If the EA does not support a FONSI, then an EIS must be prepared.  If at any time during the preparation of the EA it becomes apparent that it will not support a FONSI, there is no need to complete the EA process.  Rather, an EIS should be initiated.

**5.2  Definition of "Significantly."**  (See §1508.27).  This section of the CEQ regulations, in explaining the term significantly, uses the concepts of "context" and "intensity" to aid in the determination.  The term "context" includes duration, i.e. whether the impacts will be short-term or long-term.  The term "intensity" refers to the severity of the impacts.

**5.3  Guidance for Determination of Significance.**  The determination of whether the proposed action may cause a significant impact on a given component of the environment is the responsibility of the person(s) analyzing that component.  If the EA was prepared by an interdisciplinary team, all members of the team should participate as appropriate in the determination of significance, and may request other appropriate staff personnel to assist in the determination.  Cumulative impacts must also be considered.  These are impacts which result from the incremental impact of the action when added to past, present, or reasonably foreseeable future actions by any individual or entity.

     **A.   Type and Nature of Impact.**  To evaluate impacts, it is necessary to systematically assess each individual environmental component (see §4.3E of this handbook).  A determination of significance may be based on impacts resulting on any one component of the environment.  Impacts may be:

          **(1)  Direct Impacts.**  Impacts which are caused by the action and occur at the same time and place.

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

NEPA HANDBOOK
Environmental Impact Statement

(2)  Indirect Impacts.  These are often not obvious during a quick analysis of an action and thus are easy to miss. Many of these indirect impacts affect the social and cultural and religious values of the communities and region.  This includes alterations of life style and quality of life considerations that might be caused by the proposed action.  Note, however, that significant economic or social effects by themselves do not require the preparation of an EIS (see §1508.14).

B.    Criteria to Consider in Determining Significance. Determinations of significance involve subjective interpretations based upon professional judgment.  No hard-and-fast rules are available to conclusively label an action one way or the other. It is important to be as objective as possible when making these determinations.  For criteria to consider in making determinations, see §§1508.18 and 1508.27.

5.4  Finding of No Significant Impact (FONSI).  (§1508.13).  If it is determined that implementation of a proposed action would not constitute a major Federal action significantly affecting the quality of the human environment, a FONSI is prepared for the signature of the Bureau decisionmaker.

A.    Contents.  A FONSI is a brief Federal document which is either attached to the EA or provides a summary of the EA and which also includes the following:

(1)  A statement that, based on the EA, it has been determined that the proposed action will not have a significant impact on the quality of the human environment, and that, therefore, an EIS is not required.

(2)  A brief statement of the reasons supporting the finding.

(3)  References to specific portions of the EA which support each reason.

(4)  References to all other environmental documents related to the EA.

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

     B.   FONSI Decision Package.  The FONSI decision package
which is presented to the appropriate line official shall
include:

        (1)  The FONSI.

        (2)  Notice of Availability.  The CEQ regulations
require that there shall be a public notice of availability of
the FONSI (§1506.6(b)).  This notice shall:  (a) briefly describe
the proposed action; (b) state that based on a EA it has been
determined that the proposed action will not result in
significant impacts and that therefore an EIS is not required;
and (c) identify a person to contact for further information or
to obtain a copy of the FONSI and/or ERA.

        (3)  The EA.  Any comments on the EA shall be attached
to the EA.

     C.   Preparation.  Either the environmental staff or program
staff may prepare the FONSI decision package.  Sample documents
are provided in Illustration 10.  Topics not covered in the EA
shall not be introduced in the FONSI.  If significant new
information is developed between the EA and FONSI stages, the EA
shall be amended.

     D.   Review by Next Higher Line Official.  Copies of all
FONSIs signed below the Area Director shall be provided to the
appropriate Area Office environmental staff.  This will allow
higher line officials the opportunity to review a subordinate's
determination not to prepare an EIS without unnecessarily
intruding into the exercise of authority delegated to subordinate
officials.

     E.   Publication of Notice of Availability.  A FONSI is an
environmental document subject to the notice requirements of
§1506.6.  After the FONSI is signed, public notice shall be
provided in accordance with that section.  The Area Office public
information staff will assist in distribution and in the
preparation of a press release if appropriate.

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

NEPA HANDBOOK
Environmental Impact Statement

5.5  **Timing of Action and Reconsideration.**  If the proposed
action is one which is listed in, or is closely similar to one
listed in Appendix 4.3 as normally requiring an EIS, or if the
action is one without precedent, then a 30-day public review
period must lapse before the action can be implemented (See
§1501.4(e)(2)).  If the above provision does not apply, the CEQ
regulations do not establish any minimum time period between the
signing of the FONSI and the implementation of the action.  If
circumstances permit, however, it is generally advisable to allow
a reasonable time period for affected parties to make known their
views on the FONSI before implementing the action.  In any event,
10 working days should be allowed for review by the next higher
line official unless otherwise provided in Area Office addenda or
unless Area or Central Office environmental staff, as
appropriate, advise that they concur in the FONSI.  If affected
tribe(s), agencies with jurisdiction or expertise, or persons who
would be affected by the proposed action make known to the Bureau
that they disagree, it may be advisable to reconsider the FONSI.

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

### 6. Environmental Impact Statement

**6.1  Introduction.**  The purpose of this chapter is to provide guidance for the preparation of environmental impact statements (EISs).  The purpose of an EIS is stated in §1502.1.  (See also §§1502.2 - 1502.25).  An EIS aids in decisionmaking by providing environmental information to decisionmakers and the public.  Much of the guidance given in the previous section on EAs is also applicable to EIS preparation.  Two basic differences between an EA and an EIS are the depth of the analysis and the formalities regarding public involvement.

**6.2  Designation of EIS Team and Team Leader.**  When the decision has been made to prepare an EIS, the Area Director will appoint an EIS team leader from the appropriate program staff.  BIA will use an interdisciplinary team approach in preparing an EIS.  Area and/or Central Office Environmental Staff, as appropriate, will be represented on the EIS team and be responsible for the adequacy and overall coordination of the document.  The team leader and environmental quality specialist will make recommendations to the Area Director for the selection of other EIS team members, as appropriate.

**6.3  Preparation and Review.**

    A.  **Notice of Intent (NOI).**  The first step in preparing an EIS is publication of a Notice of Intent (NOI) in the **Federal Register** informing interested and affected parties of BIA's intent to prepare an EIS  (Illustrations 9 and 11).  The NOI should be published as soon as possible after the decision is made to prepare an EIS.  Section 1508.22 describes the content of such a notice.  If the issues to be addressed in the EIS are primarily of local or regional concern, publication of the NOI should also be made in a manner that will provide adequate notice to the affected area.  The NOI will be signed by the Assistant Secretary - Indian Affairs.

        (1)  **Revising of Notices of Intent.**  Revisions may be a result of major delays in filing either a DEIS, or a final EIS, or a major change in a proposed action.  The change notice must reference the date and page numbers of all previous notices

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

relevant to the proposed action which was published in the
Federal Register. General preparation and distribution is the
same as the original (See Illustration 17).

        (2) Canceling of a Notice of Intent. A cancellation
notice shall be prepared as soon as there is a decision to
terminate the project and the NEPA process. The cancellation
notice must reference the date and page numbers of all previously
published notices relevant to the proposed action which were
published in the Federal Register. The Central Office shall
forward a copy of the cancellation notice to the Office of
Environmental Affairs and to the EPA Office of Federal
Activities.

NOTE: All NOIs, changes, or cancellations prepared by Area
Offices shall be sent to the Central Office, Code 204, for
transmittal to the Federal Register. A sample NOI is provided in
Illustration 11.

    B.    Commencing Scoping Process. See §§1501.7 and 1508.25.
The preparation of an EIS begins with scoping. Scoping is a
process through which cooperating agencies and interested persons
are identified, and the significant issues and alternatives to be
addressed in the EIS are determined. Section 1501.7(a)(1)
specifies who shall be invited to participate in scoping. In
addition, the Solicitor's Office and the Departmental Regional
Environmental Officer should be invited. The required public
notice will be included in the Notice of Intent. The NOI will be
published in local newspapers as well as the Federal Register.
The NOI shall be published at least 15 days in advance of the
scoping meetings. It is recommended that the Central Office
Environmental Services Staff be contacted before meeting dates
are set to ensure proper lead time.

    C.    Scoping Reports. When the scoping process is
completed, the EIS team leader submits a scoping report
(Illustration 18) to the Area Director. The scoping report
includes: (1) a statement of the need for the proposed action
and alternatives being considered; (2) a summary of the issues
identified during the scoping process; (3) a list of agencies
which have agreed to be cooperating agencies; (4) a summary of

NEPA HANDBOOK
Environmental Impact Statement

any scoping meeting which was held; and (5) any other information which the EIS team leader deems appropriate. A copy of the scoping report shall be provided to the affected tribe(s), any cooperating agencies, and any person who requested a copy.

    D.  **Cooperating Agencies.** Any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved in a proposal may become a cooperating agency. See §1501.5 and 1501.6. An affected Indian tribe, or state, or local agency may also become a cooperating agency. Cooperating agencies should be identified by the time the scoping process is completed and the Office of Environmental Affairs should be so notified.

    E.  **Preparation of Preliminary Draft EIS.**

        (1)  **EIS Contents.** The EIS format is described in Sections 1502.10-1502.18. The preliminary draft EIS is for internal review purposes only.

            (a)  **Cover Sheet.** (§1502.11). The CEQ Regulations list specific items to be included on the cover sheet.

            (b)  **Summary.** (§1502.12). Matrices, tables, and other graphic displays may be useful to include in the Summary. Specific analysis regarding the impacts and other data will be found in the body of the EIS.

            (c)  **Table of Contents.**

            (d)  **Purpose of and Need for Action.** (§1502.13). This section corresponds to the first section of the EA. If an EA was completed prior to beginning work on the EIS, the purpose/need may be easily revised for use in the EIS. If an EA was not done first, the discussion in Section 4.1C applies here. Maps, diagrams, and drawings should be used here and throughout the document to help explain the document.

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

NEPA HANDBOOK
Environmental Impact Statement

        (e)  Alternatives Including the Proposed Action.
(§1502.14).  The discussion of the development of alternatives in
§4.3D of this Handbook should be applied to the EIS.  However, in
the EIS, the treatment of alternatives is more comprehensive.
Section 1502.14 gives specific guidance for this section of the
EIS.  This section of the EIS should be organized by alternative
and must include the no action alternative.  Those major
management actions necessary to implement the proposed action and
each alternative should be described.  Detailed discussion of
impacts appears in the Environmental Consequences section.
Usually, the Bureau's proposed action coincides with the
preferred alternative which the Bureau believes best fulfills its
responsibilities, giving consideration to economic and
environmental factors.  For externally initiated proposals, these
alternatives may differ at the draft and final EIS stages, and
must be so identified.  If a preferred alternative cannot be
identified, approval by OEA and SOL (516 DM 4.10 A. (3)) is
required.  Ordinarily, the alternative which is judged to cause
the least damage to the biological and physical environment is
considered the environmentally preferred alternative.  The Bureau
is encouraged to identify this alternative during the preparation
of the EIS.  However, this alternative must be identified in the
Record of Decision.  There is no requirement to select the
environmentally preferred alternative in the EIS.

NOTE:  Additionally, environmental review and consultation
requirements other than NEPA (§1502.25; 516 DM 4, Appendix 1)
which apply to any of the alternatives should be identified in
this section.

        (f)  Affected Environment.  (§1502.15).  The
discussion in §4.3E of this handbook is also relevant to EIS
preparation.  In the past, this section in many EISs has been too
voluminous to be helpful in decisionmaking.  The CEQ Regulations
express the policy of concise descriptions with references to
relevant studies or other documents.  The information in this
section should be enough to allow for understanding the impacts
analyzed later, but should not be superfluous.  The purpose here
is not to expand scientific knowledge, but to document what is
known and is relevant to the decision at hand.  Readily available
information should only be summarized.


BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

NEPA HANDBOOK
Environmental Impact Statement

(g) Environmental Consequences. ($1502.16).
This section forms the scientific and analytic basis for the
comparison of alternatives. The remarks made in §4.3F regarding
the Environmental Consequences section of the EA are also
relevant here. Again, whatever was prepared for the EA may be
revised and used in the EIS with the appropriate additional
analysis required.

(1) The topics listed in Section 1502.16 do
not all have to be section headings in the EIS. However, they
should all be addressed at some point in the discussion, at least
insofar as they must be a part of the considerations in the
analysis of alternatives.

(2) Two basic organizational forms may be
chosen for this section. One form of organization is to discuss
all the impacts of each alternative before moving on to the next
alternative. This would be best where impacts are relatively
simple. For more complex actions, it may be preferable to
organize the discussion by the environmental component which is
affected. This organization would follow the form set up under
the Affected Environment section. For example, all impacts of
all the alternatives on the hydrological system would be
discussed in one place, then the impacts of all the alternatives
on the vegetative species would be discussed, and so on, for the
wildlife species, socioeconomic factors, land use, and any other
environmental components affected. The order of the discussion
may be dictated by the order of importance, or by the presence of
controversy, if any.

(3) The analysis of effects should go beyond
mere description of a change in the environment caused by a
proposed action or alternative. It should include discussion of
the ultimate long- and short-term significance of the change and
a detailed cause and effect examination using the action elements
of the proposal and the specific environmental parameters.

(h) Incomplete or Unavailable Information. A
diligent attempt will be made to obtain the information necessary
to include a full evaluation of all significant impacts in NEPA
documents. Data/information needs should be identified early
enough in the process to enable timely completion of required

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

NEPA HANDBOOK
Environmental Impact Statement

studies and integration of the information into the EIS.  The
Bureau should not move ahead on proposals where relevant
information is lacking as this may preclude the meaningful
analysis of alternatives, impacts, or the means to mitigate
impacts.  If information cannot be secured due to scientific
uncertainty or exorbitant costs, then the EIS will make it clear
that such information is lacking and why it is not possible to
include the information.  (§1502.22)

NOTE: Some information may not be available to the Bureau because
it is proprietary information maintained by an applicant or a
tribe.  The Bureau will work closely with the applicant or tribe
on questions that deal with proprietary issues or information.
NEPA is not interpreted as requiring the release of proprietary
information; however, it is a full disclosure law and Federal
agencies are expected to have and report sufficient
information on the project to allow informed public review, and
be able to make a responsible decision.

          (i)  Consultation and coordination.  ( §1502.25
and 516 DM 4, Appendix 1, and §4.3G of this handbook.)  This
should include a short narrative of relevant public involvement
that has or will take place during the EIS development.  It
should also include agencies or individuals that provided
significant information in relation to such requirements as the
Fish and Wildlife Coordination Act, the Endangered Species Act
and the National Historic Preservation Act.  In addition, this
section will include a list of those entities or individuals
receiving a copy of the document.  The final EIS should have an
"*" before those organizations or individuals that commented on
the DEIS.

          (j)  List of Preparers.  (§1502.17).  This
should include position title and area of expertise (or
discipline).
          (k)  List of Agencies, Organizations, and Persons
to Whom Copies of the EIS are Sent.

          (l)  Index.  An index shall be included to make
the EIS a useful reference document.  The index is also helpful
for the public and other agency review.


BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

NEPA HANDBOOK
Environmental Impact Statement

    (m) Appendices (if any). (See §1502.18).

  (2) Other EIS Guidance.

    (a) Data Collection. Data collection for the EIS is mainly a Federal responsibility. However, other Federal, as well as tribal, state, and local agencies, or an applicant may provide information needed for an EIS. Appropriate requests for information should be made as soon as the determination is made that an EIS is required.

      (1) If the EIS is being prepared in response to an externally initiated proposal, the proponent of the action shall be required to provide environmental information and analysis as an integrated part of the application, as provided in 516 DM 1.4C. The EIS team will determine what environmental information and analysis will be required of the applicant and whether documents submitted are acceptable (see §1506.5(a) and (b)).

      (2) Methodology and data sources should be identified in the EIS (§1502.24). Where information is incomplete or unavailable this shall be made clear in the EIS (§1502.22). Incorporation of material by reference should be done whenever possible and appropriate (§1502.21).

    (b) Combining Documents. CEQ encourages combining NEPA documents to reduce paperwork (§1500.4(o)) and to reduce delay (§1500.5(i)).

    (c) EISs on Broad Actions. It may be appropriate to define in broad terms the action for which an EIS is prepared. Section 1500.4(i) of the regulations states that agencies shall reduce excessive paperwork by using program, policy, or plan EISs and tiering from statements of broad scope to those of narrower scope in order to eliminate repetitive discussions of the same issues. See also sections 1502.4, 1502.20, 1508.18(b), and 1508.28. Section 1502.4(c) suggests ways to group actions when preparing EISs of broad scope.

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

NEPA HANDBOOK
Environmental Impact Statement

(d) **Contracting for EIS Preparation.**  It may be necessary to contract for the services of a consulting firm or other organizations to ensure preparation of an adequate EIS.  In such cases, Area Office contracting officers can provide assistance.  If a consulting firm is chosen to prepare the EIS, a disclosure statement must be prepared for the DEIS which states that the consultant has "no financial or other interests in the outcome of the project."  (§1506.5 (c))

(e) **Arrangements with Applicants.**  An applicant may be required or allowed to fund an EIS.  However, the provisions of §1506.5 must be observed.

F.  **Review of Preliminary Draft EIS.**  After the initiating BIA office determines that the preliminary draft EIS is complete, it should be distributed to other affected BIA offices for critical review and comment.  The purpose of this review is to insure legal adequacy, policy consistency, and technical accuracy.  For site specific EIS's, in-house distribution should at a minimum include:  Local field stations and appropriate Agency, Area Office and Central Office personnel, the Central Office Environmental Staff, Solicitor's Office (regional or Washington D.C., as appropriate), and the Department Regional Environmental Officer.  The preliminary draft should also be distributed to cooperating agencies.  Sufficient lead time should be incorporated into this stage of the process to allow for resolving conflicting views, evaluating new data, or addressing significant concerns raised during review.  (§1502.17)

G.  **Preparation and Approval of Draft EIS.**  Following receipt of review comments on the preliminary draft EIS, appropriate revisions should be made and the EIS should be readied for printing.  The title page of the draft EIS should be signed for the Bureau by the Area Director, except that for programmatic and other broad scope EISs the title page should be signed by the Assistant Secretary.  The number of DEISs to be printed varies with the project mailing list.  Due to the relatively high labor costs associated with set-up prior to printing, it is advisable to print in multiples of 100 with at least 25 percent more copies than the mailing list indicates are needed.  The document number is obtained from the Departmental Office of Environmental Affairs by the Bureau's Environmental Services Staff.

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

H.  **Distribution of Draft EIS and File with EPA.**  While the draft EIS is being printed, transmittal letters and mailing labels (or manila envelopes) should be prepared.  The following parties should all be requested to review and comment on the draft EIS:  (1) any Federal agency with jurisdiction by law or special expertise with respect to the issue involved in, or impacts resulting from, the proposed action; (2) any Federal, State, local, or tribal agency responsible for environmental review, consultation, coordination, clearance, or permit requirements associated with the project; (3) affected Indian tribes; (4) the applicant.  EPA has responsibility for publishing notices of EIS availability in the **Federal Register**.  The Bureau may supplement this by publishing its own notice of availability in the **Federal Register**. (§1502.19).  At the same time as the draft EIS is provided to all parties listed above, fifteen copies of the draft EIS should be mailed to the Central Office Environmental Staff which will include copies for transmittal to the Departmental Office of Environmental Affairs and to the Environmental Protection Agency.  When appropriate, the Bureau's notice of availability and/or a press release briefly describing the DEIS may be prepared and distributed to newspapers of general circulation in the area affected by the proposed action.  A sample is provided in Illustration 12.  The Notice of Availability shall be provided to the Central Office Environmental Services Staff.

NOTE:  EPA serves as the repository for all Environmental Impact Statements prepared in accordance with NEPA.  It is responsible for providing public notice in the **Federal Register** of the filing of draft and final EISs and controls the extension or reduction of legally prescribed review and waiting periods.  EPA will not publish the Notice until the draft or final EISs have been mailed out.

I.  **Draft EIS Review and Comment Period**.  The BIA shall accept for consideration all comments received on the DEIS during the 60 days following the EPA publication date.

(1)  During the DEIS review period, at least one public hearing will be held.  A record must be made of statements made at the hearing(s), and responses to these statements must be included in the final EIS.  When hosting such a meeting it is important that the public notice state:

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

(2)  The purpose of this meeting will be to inform the
public regarding the alternatives considered in the draft EIS.
Comments made at the meeting will not be considered to be
comments on the draft EIS unless submitted in writing.  The final
EIS will include responses to all written comments received by
the end of the comment period, including any written comments
which are submitted at the public meeting.

(3)  A meeting or hearing should not be held sooner
than 15 days following publication of the notice of availability
of the draft EIS in the Federal Register.  Dates and locations of
any public meetings or hearings should be published in the notice
of availability in the Federal Register and in the press release
distributed to local newspaper(s) of general circulation.  If a
hearing is held it should be scheduled toward the middle of the
comment period to allow reviewers time to prepare their comments.

J.    Respond to Comments on Draft EIS and Prepare
Preliminary Final EIS.  After the comment period has ended a
preliminary final EIS is prepared.  The first step is to respond
to the comments.  (See §1503.4 and 516 DM 4.17.)  Section
1503.4(a) lists five possible ways to respond to comments.  The
preliminary final EIS consists of the comments, responses, and
any portions of the text of the draft EIS which were revised in
response to comments (See Illustration 13).  Following completion
of the preliminary final EIS it should be circulated for an in-
house review similar to that undertaken with the preliminary
draft EIS.

K.    Prepare and Approve Final EIS.  Following receipt of
review comments on the preliminary final EIS, it should be
appropriately revised and printed.  If the changes in the
response to comments are minor, the final EIS may consist of
comments, responses, or errata sheets to show changes from the
DEIS.  In such cases only the comments, responses, and errata
sheets need be circulated.  The final EIS should be submitted for
review and approval by the Environmental Services Staff.  The
guidance contained in §6.3F regarding approval and signing of the
title page is also applicable at this point.  (§1503.4)

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

NEPA HANDBOOK
Environmental Impact Statement

    **L.    Distribution of Final EIS and File with EPA.**  While the final EIS is being printed, transmittal letters and mailing devices shall be prepared.  As with the draft EIS, fifteen copies of the final EIS shall be sent to Central Office, Code 204, for filing with the EPA and the Office of Environmental Affairs. (See §§ 1502.19, 1506.9).

    (1)  At the same time the final EIS should be provided to all those who received a copy to the DEIS and all those who submitted substantive comments on the DEIS.  A notice of availability and/or press release should be issued, similar to that issued with the draft EIS, except that they will not normally invite comments.

    (2)  It may be deemed desirable to request comments on the final EIS before the decision on the proposed action is made. If comments are made on the final EIS within the 30-day waiting period, they need not be considered in making the final decision on the proposal unless a significant issue has been raised.  The Environmental Services Staff will help in making this determination, along with the Office of the Solicitor, if necessary.

**6.4  Make Decision, Prepare Record of Decision, and Initiate Action.**  The decision on the proposed action may be made no sooner than 30 days following publication of the notice of the availability of the final EIS in the Federal Register.  A record of decision (See Illustration 14) shall be signed by the BIA decisionmaker.  Until the issuance of the record of decision, no action having either an adverse environmental effect or which would limit the choice of alternatives can be taken (§1506.1(a)).

The record of decision should state which alternative has been selected for implementation and very briefly discuss other alternatives considered.  If the selected alternative includes mitigation measures, the decision should provide for monitoring or other means to insure that mitigation measures are implemented.  The record of decision should be made available to the public pursuant to §1506.6.  The proposed action may be initiated immediately after completion of the above. (See §§1505.2, 1505.3, 1506.10).

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

NEPA HANDBOOK
Environmental Impact Statement

6.5  **EIS Supplements and Revisions**.  Draft and Final EISs may be
revised or supplemented where there are substantial changes in
the proposed action and/or there are significant new
circumstances or information that have a bearing on the proposed
action or its impacts.  Supplemental and revised EISs shall be
prepared, circulated, and filed in the same manner, except for
scoping, and are subject to the same waiting periods as regular
draft and final EISs unless they are determined to be for
information purposes only (§1502.9 and 516 DM 4.5).  An EIS
should be reviewed to determine if a supplement is necessary
when:

(A)  A DEIS is more than 3 years old.

(B)  An FEIS is more than 5 years old for an action not yet
taken.

(C)  Changes have been made in the proposed action that may
be relevant to environmental concerns.

(D)  New circumstances or information relevant to
environmental concerns may have a significant bearing on the
proposed action or impacts.

(E)  Review results in the inclusion of a new preferred
alternative which was not detailed as a reasonable alternative in
the EIS.

NOTE:  It must be stressed that age alone does not trigger the
requirement for a supplemental.  There must be significant
changes, circumstances, or new information.  The time frames in
(1) and (2), above, are guidance for review purposes only.

6.6  **Draft EIS Cancellation.**  Occasions may arise when a project
that required an EIS is canceled, delayed for an unreasonable
period of time or drastically modified.  In these cases, it may
be necessary to cancel the DEIS.  Notice of Cancellation must be
published in the **Federal Register** and a notice of cancellation
sent to those agencies, organizations or individuals who received
the DEIS.  (See Illustration 15)

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

## ENVIRONMENTAL IMPACT STATEMENT

EIS REQUIRED

ISSUE NOTICE OF INTENT

COMMENCE SCOPING PROCESS

PUBLIC SCOPING MEETING(S)

PREPARE AND REVIEW PRELIMINARY DRAFT EIS

PREPARE AND REVIEW DRAFT EIS

APPROVE DRAFT EIS

DISTRIBUTE DRAFT EIS

ISSUE NOTICE OF AVAILABILITY

FILE WITH EPA AND DOI

PUBLIC REVIEW AND COMMENT PERIOD
      MINIMUM 60 DAYS

HOLD PUBLIC MEETING(S)

RESPOND TO COMMENTS

PREPARE AND REVIEW PRELIMINARY FILE EIS

PREPARE AND REVIEW FINAL EIS

APPROVE FINAL EIS

DISTRIBUTE FINAL EIS

ISSUE NOTICE OF AVAILABILITY

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

## ENVIRONMENTAL IMPACT STATEMENT (CON'T)

**FILE WITH EPA AND DOI**

**PREPARE RECORD OF DECISION**

**MAKE DECISION**
       **(MINIMUM 30 DAYS AFTER NOTICE OF AVAILABILITY)**

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

## 7.  REVIEW OF ACTIONS OF OTHER AGENCIES

7.1  **Introduction**.  The purpose of this chapter is to provide
guidance to Bureau personnel on reviewing the environmental
documents of other agencies.  This chapter also explains the
process for referring the matter to CEQ when the environmental
impacts of an action proposed by another agency would have
serious adverse consequences for an Indian Tribe or trust
resources.

7.2  **Reviewing and Commenting on EISs**.  ($1503.1)  The CEQ
regulations require that the lead agency for an EIS obtain
comments from Federal agencies with jurisdiction by law or
special expertise and request comments from affected tribes and
appropriate state and local agencies.  Since the Bureau has
special expertise in matters affecting Indian tribes, and in some
cases also has jurisdiction by law, other agencies frequently ask
the Bureau for comments on the EISs which they have prepared.  In
such cases the Bureau has the duty to comment ($1503.2).
Distribution of DEISs and other documents is normally performed
by the Departmental Office of Environmental Affairs and the
Central Office Environmental Services Staff.

A.   If a tribe is concerned about the environmental impacts
of an action proposed by another Federal agency, the likelihood
of influencing the other agency's decisionmaking will generally
by improved through early involvement in the process, i.e., it
will generally be more effective to participate in scoping and/or
become a cooperating agency than to wait until the draft EIS is
written to submit comments.

B.   It will also be beneficial to establish working
relationships with other agencies such that the Bureau and
affected tribes are routinely consulted regarding EAs when
appropriate.  It is important to keep in mind the provisions of
the Regulations which require that, to the fullest extent
possible, agencies shall comply with other environmental review
and consultation requirements concurrently with the preparation
of EISs.  (See $1502.25 and 516 DM 4, Appendix 1.)

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

NEPA HANDBOOK
Review of Actions of Other Agencies

7.3 **Pre-decision Referrals to CEQ.** (§1504)  The CEQ Regulations establish a procedure through which, following the filing of a final EIS, but prior to a decision based on it, a Federal agency which objects to a proposed action on environmental grounds can refer the matter to CEQ. In such situations, CEQ may take a range of actions including submitting the matter to the President.

A.    Pre-decision referral may be triggered by threatened violation of policies (§1504.3(c)(2)(ii)) such as the American Indian Religious Freedom Act (P.L. 95-341) or the Federal trust responsibility to manage and conserve trust resources for beneficial use by Indian tribes.

B.    Except where an extension is granted by the lead agency, referral by BIA of another agency action must be done within 25 days of the filing of the final EIS with EPA.  Because of this very short time period, the following actions should be taken without delay.

(1) the Central Office will contact the lead agency by phone to try to resolve the problem, and follow-up this contact with a letter.  If the problem cannot be resolved immediately, initiate the rest of the referral process.

(2) contact EPA and any other agency with specific expertise or jurisdiction regarding the expected problem and request their action pursuant to the referral process.

(3) initiate phone contact with the offices of Assistant Secretary - Indian Affairs, and Assistant Secretary - Policy, Management and Budget.

(4) initiate referral process by preparing documentation required by §1504.3(a) through (c).  Transmit this material through the Assistant Secretary - Indian Affairs for signature by Assistant Secretary - Program, Budget and Administration.  A cover memorandum highlighting significant issues shall accompany this documentation.

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

**7.4  Predecision Referral of BIA Actions by Other Agencies.**  (See 516 DM 5.2).  If the Bureau is informed that another Federal agency intends to refer a matter to CEQ, the Central Office Environmental Services Staff in coordination with the Departmental Office of Environmental Affairs (OEA) will meet with that agency in order to try and resolve the issue.

**7.5  Post-Decision Referrals to EPA.**  Pursuant to Section 309 of the Clean Air Act, EPA is required to refer to CEQ any action the Administrator of EPA believes to be unsatisfactory from the standpoint of public health, welfare, or environmental quality. If at any phase of the proposed action it becomes apparent that an unacceptable environmental impact is expected or is occurring, the Assistant Secretary will request that EPA initiate action under Section 309.  This action would be subject to demonstration by the Assistant Secretary that the impact is unsatisfactory.

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

THE NATIONAL ENVIRONMENTAL POLICY ACT OF
1969, as amended (Pub. L. 91-190, 42 U.S.C. 4321-4347, January 1,
1970, as amended by Pub. L. 94-52, July 3, 1975, Pub. L. 94-83, August 9,
1975, and Pub. L. 97-258, § 4(b), Sept. 13, 1982)

An Act to establish a national policy for the environment, to provide for
the establishment of a Council on Environmental Quality, and for other
purposes.

*Be it enacted by the Senate and House of Representatives of the United States of
America in Congress assembled,* That this Act may be cited as the "National
Environmental Policy Act of 1969."

## PURPOSE

**Sec. 2 [42 USC § 4321].** The purposes of this Act are: To declare a
national policy which will encourage productive and enjoyable harmony
between man and his environment; to promote efforts which will prevent
or eliminate damage to the environment and biosphere and stimulate
the health and welfare of man; to enrich the understanding of the
ecological systems and natural resources important to the Nation; and to
establish a Council on Environmental Quality.

## TITLE I

Congressional Declaration of National Environmental Policy

**Sec. 101 [42 USC § 4331].**

(a) The Congress, recognizing the profound impact of man's activity on
the interrelations of all components of the natural environment,
particularly the profound influences of population growth, high-density
urbanization, industrial expansion, resource exploitation, and new and
expanding technological advances and recognizing further the critical
importance of restoring and maintaining environmental quality to the
overall welfare and development of man, declares that it is the
continuing policy of the Federal Government, in cooperation with State
and local governments, and other concerned public and private
organizations, to use all practicable means and measures, including
financial and technical assistance, in a manner calculated to foster and
promote the general welfare, to create and maintain conditions under
which man and nature can exist in productive harmony, and fulfill the
social, economic, and other requirements of present and future
generations of Americans.

(b) In order to carry out the policy set forth in this Act, it is the
continuing responsibility of the Federal Government to use all
practicable means, consist with other essential considerations of national
policy, to improve and coordinate Federal plans, functions, programs,
and resources to the end that the Nation may —

    (1) fulfill the responsibilities of each generation as trustee of the
environment for succeeding generations;

    (2) assure for all Americans safe, healthful, productive, and
aesthetically and culturally pleasing surroundings;

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

(3) attain the widest range of beneficial uses of the environment without degradation, risk to health or safety, or other undesirable and unintended consequences;

(4) preserve important historic, cultural and natural aspects of our national heritage, and maintain, wherever possible, an environment which supports diversity, and variety of individual choice;

(5) achieve a balance between population and resource use which will permit high standards of living and a wide sharing of life's amenities; and

(6) enhance the quality of renewable resources and approach the maximum attainable recycling of depletable resources.

(c) The Congress recognizes that each person should enjoy a healthful environment and that each person has a responsibility to contribute to the preservation and enhancement of the environment.

Sec. 102 [42 USC § 4332]. The Congress authorizes and directs that, to the fullest extent possible: (1) the policies, regulations, and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in this Act, and (2) all agencies of the Federal Government shall —

(A) utilize a systematic, interdisciplinary approach which will insure the integrated use of the natural and social sciences and the environmental design arts in planning and in decisionmaking which may have an impact on man's environment;

(B) identify and develop methods and procedures, in consultation with the Council on Environmental Quality established by title II of this Act, which will insure that presently unquantified environmental amenities and values may be given appropriate consideration in decisionmaking along with economic and technical considerations;

(C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on —

i) the environmental impact of the proposed action,

ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

(iii) alternatives to the proposed action,

(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

Prior to making any detailed statement, the responsible Federal official shall consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved. Copies of such statement and the comments and views of the appropriate Federal, State, and local agencies, which are authorized to develop and

needs: and interests of the Nation; and to formulate and recommend national policies to promote the improvement of the quality of the environment.

### Sec. 203 [42 USC § 4343].

(a) The Council may employ such officers and employees as may be necessary to carry out its functions under this Act. In addition, the Council may employ and fix the compensation of such experts and consultants as may be necessary for the carrying out of its functions under this Act, in accordance with section 3109 of title 5, United States Code (but without regard to the last sentence thereof).

(b) Notwithstanding section 1342 of Title 31, the Council may accept and employ voluntary and uncompensated services in furtherance of the purposes of the Council:

### Sec. 204 [42 USC § 4344]. It shall be the duty and function of the Council.

(1) to assist and advise the President in the preparation of the Environmental Quality Report required by section 201 [42 USC § 4341] of this title;

(2) to gather timely and authoritative information concerning the conditions and trends in the quality of the environment both current and prospective, to analyze and interpret such information for the purpose of determining whether such conditions and trends are interfering, or are likely to interfere, with the achievement of the policy set forth in title I of this Act, and to compile and submit to the President studies relating to such conditions and trends;

(3) to review and appraise the various programs and activities of the Federal Government in light of the policy set forth in title I of this Act for the purpose of determining the extent to which such programs and activities are contributing to the achievement of such policy, and to make recommendations to the President with respect thereto;

(4) to develop and recommend to the President national policies to foster and promote the improvement of environmental quality to meet the conservation, social, economic, health, and other requirements and goals of the Nation;

(5) to conduct investigations, studies, surveys, research, and analyses relating to environmental quality;

(6) to document and define changes in the natural environment, including the plant and animal systems, and to accumulate necessary data and other information for a continuing analysis of these changes or trends and an interpretation of their underlying causes;

(7) to report at least once each year to the President on the state and condition of the environment; and

(8) to make and furnish such studies, reports thereon, and recommendations with respect to matters of policy and legislation as the President may request.

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

Sec. 205 [42 USC § 4345]. In exercising its powers, functions, and duties under this Act, the Council shall —

(1) consult with the Citizens' Advisory Committee on Environmental Quality established by Executive Order No. 11472, dated May 29, 1969, and with such representatives of science, industry, agriculture, labor, conservation organizations, State and local governments and other groups, as it deems advisable; and

(2) utilize, to the fullest extent possible, the services, facilities and information (including statistical information) of public and private agencies and organizations, and individuals, in order that duplication of effort and expense may be avoided, thus assuring that the Council's activities will not unnecessarily overlap or conflict with similar activities authorized by law and performed by established agencies.

Sec. 206 [42 USC § 4346]. Members of the Council shall serve full time and the Chairman of the Council shall be compensated at the rate provided for Level II of the Executive Schedule Pay Rates [5 USC § 5313]. The other members of the Council shall be compensated at the rate provided for Level IV of the Executive Schedule Pay Rates [5 USC § 5315].

Sec. 207 [42 USC § 4346a]. The Council may accept reimbursements from any private nonprofit organization or from any department, agency, or instrumentality of the Federal Government, any State, or local government, for the reasonable travel expenses incurred by an officer or employee of the Council in connection with his attendance at any conference, seminar, or similar meeting conducted for the benefit of the Council.

Sec. 208 [42 USC § 4346b]. The Council may make expenditures in support of its international activities, including expenditures for: (1) international travel; (2) activities in implementation of international agreements; and (3) the support of international exchange programs in the United States and in foreign countries.

Sec. 209 [42 USC § 4347]. There are authorized to be appropriated to carry out the provisions of this chapter not to exceed $300,000 for fiscal year 1970, $700,000 for fiscal year 1971, and $1,000,000 for each fiscal year thereafter.

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82

enforce environmental standards, shall be made available to the President, the Council on Environmental Quality and to the public as provided by section 552 of title 5, United States Code, and shall accompany the proposal through the existing agency review process;

(D) Any detailed statement required under subparagraph (C) after January 1, 1970, for any major Federal action funded under a program of grants to States shall not be deemed to be legally insufficient solely by reason of having been prepared by a State agency or official, if

(i) the State agency or official has statewide jurisdiction and has the responsibility for such action,

(ii) the responsible Federal official furnishes guidance and participates in such preparation,

(iii) the responsible Federal official independently evaluates such statement prior to its approval and adoption, and

(iv) after January 1, 1976, the responsible Federal official provides early notification to, and solicits the views of, any other State or any Federal land management entity of any action or any alternative thereto which may have significant impacts upon such State or affected Federal land management entity and, if there is any disagreement on such impacts, prepares a written statement of such impacts and views for incorporation into such detailed statement.

The procedures in this subparagraph shall not relieve the Federal official of his responsibilities for the scope, objectivity, and content of the entire statement or of any other responsibility under this Act; and further, this subparagraph does not affect the legal sufficiency of statements prepared by State agencies with less than statewide jurisdiction.

(E) study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources;

(F) recognize the worldwide and long-range character of environmental problems and, where consistent with the foreign policy of the United States, lend appropriate support to initiatives, resolutions, and programs designed to maximize international cooperation in anticipating and preventing a decline in the quality of mankind's world environment;

(G) make available to States, counties, municipalities, institutions, and individuals, advice and information useful in restoring, maintaining, and enhancing the quality of the environment;

(H) initiate and utilize ecological information in the planning and development of resource-oriented projects; and

(I) assist the Council on Environmental Quality established by title II of this Act.

Sec. 103 [42 USC § 4333]. All agencies of the Federal Government shall review their present statutory authority, administrative

regulations, and current policies and procedures for the purpose of determining whether there are any deficiencies or inconsistencies therein which prohibit full compliance with the purposes and provisions of this Act and shall propose to the President not later than July 1, 1971, such measures as may be necessary to bring their authority and policies into conformity with the intent, purposes, and procedures set forth in this Act.

**Sec. 104 [42 USC § 4334].** Nothing in section 102 [42 USC § 4332] or 103 [42 USC § 4333] shall in any way affect the specific statutory obligations of any Federal agency (1) to comply with criteria or standards of environmental quality, (2) to coordinate or consult with any other Federal or State agency, or (3) to act, or refrain from acting contingent upon the recommendations or certification of any other Federal or State agency.

**Sec. 105 [42 USC § 4335].** The policies and goals set forth in this Act are supplementary to those set forth in existing authorizations of Federal agencies.

## TITLE II

## Council on Environmental Quality

**Sec. 201 [42 USC § 4341].** The President shall transmit to the Congress annually beginning July 1, 1970, an Environmental Quality Report (hereinafter referred to as the "report") which shall set forth (1) the status and condition of the major natural, manmade, or altered environmental classes of the Nation, including, but not limited to, the air, the aquatic, including marine, estuarine, and fresh water, and the terrestrial environment, including, but not limited to, the forest, dryland, wetland, range, urban, suburban and rural environment; (2) current and foreseeable trends in the quality, management and utilization of such environments and the effects of those trends on the social, economic, and other requirements of the Nation; (3) the adequacy of available natural resources for fulfilling human and economic requirements of the Nation in the light of expected population pressures; (4) a review of the programs and activities (including regulatory activities) of the Federal Government, the State and local governments, and nongovernmental entities or individuals with particular reference to their effect on the environment and on the conservation, development and utilization of natural resources; and (5) a program for remedying the deficiencies of existing programs and activities, together with recommendations for legislation.

**Sec. 202 [42 USC § 4342].** There is created in the Executive Office of the President a Council on Environmental Quality (hereinafter referred to as the "Council"). The Council shall be composed of three members who shall be appointed by the President to serve at his pleasure, by and with the advice and consent of the Senate. The President shall designate one of the members of the Council to serve as Chairman. Each member shall be a person who, as a result of his training, experience, and attainments, is exceptionally well qualified to analyze and interpret environmental trends and information of all kinds; to appraise programs and activities of the Federal Government in the light of the policy set forth in title I of this Act; to be conscious of and responsive to the scientific, economic, social, aesthetic, and cultural

THE-ENVIRONMENTAL QUALITY IMPROVEMENT ACT, as amended (Pub. L. No. 91-224, Title II, April 3, 1970; Pub. L. No. 97-258, September 13, 1982; and Pub. L. No. 98-581, October 30, 1984)

42 USC § 4372.

(a) There is established in the Executive Office of the President an office to be known as the Office of Environmental Quality (hereafter in this chapter referred to as the "Office"). The Chairman of the Council on Environmental Quality established by Public Law 91-190 shall be the Director of the Office. There shall be in the Office a Deputy Director who shall be appointed by the President by and with the advice and consent of the Senate.

(b) The compensation of the Deputy Director shall be fixed by the President at a rate not in excess of the annual rate of compensation payable to the Deputy Director of the Office of Management and Budget.

(c) The Director is authorized to employ such officers and employees (including experts and consultants) as may be necessary to enable the Office to carry out its functions under this chapter and Public Law 91-190, except that he may employ no more than ten specialists and other experts without regard to the provisions of Title 5, governing appointments in the competitive service, and pay such specialists and experts without regard to the provisions of chapter 51 and subchapter III of chapter 53 of such title relating to classification and General Schedule pay rates, but no such specialist or expert shall be paid at a rate in excess of the maximum rate for GS-18 of the General Schedule under section 5332 of Title 5.

(d) In carrying out his functions the Director shall assist and advise the President on policies and programs of the Federal Government affecting environmental quality by —

(1) providing the professional and administrative staff and support for the Council on Environmental Quality established by Public Law 91-190;

(2) assisting the Federal agencies and departments in appraising the effectiveness of existing and proposed facilities, programs, policies, and activities of the Federal Government, and those specific major projects designated by the President which do not require individual project authorization by Congress, which affect environmental quality;

(3) reviewing the adequacy of existing systems for monitoring and predicting environmental changes in order to achieve effective coverage and efficient use of research facilities and other resources;

(4) promoting the advancement of scientific knowledge of the effects of actions and technology on the environment and encouraging the development of the means to prevent or reduce adverse effects that endanger the health and well-being of man;

## THE CLEAN AIR ACT § 309*

### § 7609.  Policy review

(a) The Administrator shall review and comment in writing on the environmental impact of any matter relating to duties and responsibilities granted pursuant to this chapter or other provisions of the authority of the Administrator, contained in any (1) legislation proposed by any Federal department or agency, (2) newly authorized Federal projects for construction and any major Federal agency action (other than a project for construction) to which section 4332(2)(C) of this title applies, and (3) proposed regulations published by any department or agency of the Federal Government. Such written comment shall be made public at the conclusion of any such review.

(b) In the event the Administrator determines that any such legislation, action, or regulation is unsatisfactory from the standpoint of public health or welfare or environmental quality, he shall publish his determination and the matter shall be referred to the Council on Environmental Quality.

*July 14, 1955, c. 360, § 309, as added Dec. 31, 1970, Pub. L. 91-604 § 12(a), 42 U.S.C. § 7609 (1970).

Executive Order 11514, March 5, 1970

# PROTECTION AND ENHANCEMENT OF ENVIRONMENTAL QUALITY

As amended by Executive Order 11991. (Secs. 2(g) and (3(h)). May 24, 1977*

By virtue of the authority vested in me as President of the United States and in furtherance of the purpose and policy of the National Environmental Policy Act of 1969 (Public Law No. 91–190, approved January 1, 1970), it is ordered as follows:

Section 1. *Policy.* The Federal Government shall provide leadership in protecting and enhancing the quality of the Nation's environment to sustain and enrich human life. Federal agencies shall initiate measures needed to direct their policies, plans and programs so as to meet national environmental goals. The Council on Environmental Quality, through the Chairman, shall advise and assist the President in leading this national effort.

Sec. 2. *Responsibilities of Federal agencies.* Consonant with Title I of the National Environmental Policy Act of 1969, hereafter referred to as the "Act", the heads of Federal agencies shall:

(a) Monitor, evaluate, and control on a continuing basis their agencies' activities so as to protect and enhance the quality of the environment. Such activities shall include those directed to controlling pollution and enhancing the environment and those designed to accomplish other program objectives which may affect the quality of the environment. Agencies shall develop programs and measures to protect and enhance environmental quality and shall assess progress in meeting the specific objectives of such activities. Heads of agencies shall consult with appropriate Federal, State and local agencies in carrying out their activities as they affect the quality of the environment.

(b) Develop procedures to ensure the fullest practicable provision of timely public information and understanding of Federal plans and programs with environmental impact in order to obtain the views of interested parties. These procedures shall include, whenever appropriate, provision for public hearings, and shall provide the public with relevant information, including information on alternative courses of action. Federal agencies shall also encourage State and local agencies to adopt similar procedures for informing the public concerning their activities affecting the quality of the environment.

(c) Insure that information regarding existing or potential environmental problems and control methods developed as part of research, development, demonstration, test, or evaluation activities is made available to Federal agencies, States, counties, municipalities, institutions, and other entities, as appropriate.

---

*The Preamble to Executive Order 11991 is as follows:

By virtue of the authority vested in me by the Constitution and statutes of the United States of America, and as President of the United States of America, in furtherance of the purpose and policy of the National Environmental Policy Act of 1969, as amended ((42 U.S.C. 4321 et seq.), the Environmental Quality Improvement Act of 1970 ((42 U.S.C. 4371 et seq.), and Section 309 of the Clean Air Act, as amended ((42 U.S.C. 1857h-7), it is hereby ordered as follows:

(d) Review their agencies' statutory authority, administrative regulations, policies, and procedures, including those relating to loans, grants, contracts, leases, licenses, or permits, in order to identify any deficiencies or inconsistencies therein which prohibit or limit full compliance with the purposes and provisions of the Act. A report on this review and the corrective actions taken or planned, including such measures to be proposed to the President as may be necessary to bring their authority and policies into conformance with the intent, purposes, and procedures of the Act, shall be provided to the Council on Environmental Quality not later than September 1, 1970.

(e) Engage in exchange of data and research results, and cooperate with agencies of other governments to foster the purposes of the Act.

(f) Proceed, in coordination with other agencies, with actions required by section 102 of the Act.

(g) In carrying out their responsibilities under the Act and this Order, comply with the regulations issued by the Council except where such compliance would be inconsistent with statutory requirements.

Sec. 3. *Responsibilities of Council on Environmental Quality.* The Council on Environmental Quality shall:

(a) Evaluate existing and proposed policies and activities of the Federal Government directed to the control of pollution and the enhancement of the environment and to the accomplishment of other objectives which affect the quality of the environment. This shall include continuing review of procedures employed in the development and enforcement of Federal standards affecting environmental quality. Based upon such evaluations the Council shall, where appropriate, recommend to the President policies and programs to achieve more effective protection and enhancement of environmental quality and shall, where appropriate, seek resolution of significant environmental issues.

(b) Recommend to the President and to the agencies priorities among programs designed for the control of pollution and for enhancement of the environment.

(c) Determine the need for new policies and programs for dealing with environmental problems not being adequately addressed.

(d) Conduct, as it determines to be appropriate, public hearings or conferences on issues of environmental significance.

(e) Promote the development and use of indices and monitoring systems (1) to assess environmental conditions and trends, (2) to predict the environmental impact of proposed public and private actions, and (3) to determine the effectiveness of programs for protecting and enhancing environmental quality.

(f) Coordinate Federal programs related to environmental quality.

(g) Advise and assist the President and the agencies in achieving international cooperation for dealing with environmental problems, under the foreign policy guidance of the Secretary of State.

(h) Issue regulations to Federal agencies for the implementation of the procedural provisions of the Act (42 U.S.C. 4332(2)). Such regulations shall be developed after consultation with affected agencies and after such public hearings as may be appropriate. They will be designed to make the environmental impact statement process more useful to decisionmakers and the public; and to reduce paperwork and the accumulation of extraneous background data, in order to emphasize the need to focus on real environmental issues and alternatives. They will require impact statements to be concise, clear, and to the point, and supported by evidence that agencies have made the necessary environmental analyses. The Council shall include in its regulations procedures (1) for the early preparation of environmental impact statements, and (2) for the referral to the Council of conflicts between agencies concerning the implementation of the National Environmental Policy Act of 1969, as amended, and

Section 309 of the Clean Air Act, as amended, for the Council's recommendation as to their prompt resolution.

(i) Issue such other instructions to agencies, and request such reports and other information from them, as may be required to carry out the Council's responsibilities under the Act.

(j) Assist the President in preparing the annual Environmental Quality Report provided for in section 201 of the Act.

(k) Foster investigations, studies, surveys, research, and analyses relating to (i) ecological systems and environmental quality, (ii) the impact of new and changing technologies thereon, and (iii) means of preventing or reducing adverse effects from such technologies.

Sec. 4. *Amendments of E.O. 11472.* Executive Order No. 11472 of May 29, 1969, including the heading thereof, is hereby amended:

(1) By substituting for the term "the Environmental Quality Council", wherever it occurs, the following: "the Cabinet Committee on the Environment".

(2) By substituting for the term "the Council", wherever it occurs, the following: "the Cabinet Committee".

(3) By inserting in subsection (f) of section 101, after "Budget,", the following: "the Director of the Office of Science and Technology,".

(4) By substituting for subsection (g) of section 101 the following:

"(g) The Chairman of the Council on Environmental Quality (established by Public Law 91-190) shall assist the President in directing the affairs of the Cabinet Committee."

(5) by deleting subsection (c) of section 102.

(6) By substituting for "the Office of Science and Technology", in section 104, the following: "the Council on Environmental Quality (established by Public Law 91-190)".

(7) By substituting for "(hereinafter referred to as the 'Committee')", in section 201, the following: "(hereinafter referred to as the 'Citizens' Committee')".

(8) By substituting for the term "the Committee", wherever it occurs, the following: "the Citizens' Committee".

BIAM Release No. 9303
9/24/93
Replaces 30 BIAM, Supp. 1, dated 2/22/82