# STATE OF MICHIGAN

# COURT OF APPEALS

SUNGOLD GAMING USA, INC. and SUNGOLD
GAMING INTERNATIONAL, LTD.,

          Plaintiffs-Appellants,

v

UNITED NATION OF CHIPPEWA, OTTAWA &
POTTAWATOMI INDIANS OF MICHIGAN,
INC., MATCH-E-BE-NASH-SHE-WISH BAND
OF POTTAWATOMI INDIANS OF MICHIGAN
a/k/a GUN LAKE BAND OF INDIANS
ACKNOWLEDGEMENT PROJECT, DAVID K.
SPRAGUE, WILLIAM L. CHURCH, and
ELDER/TRIBAL COUNCIL OF THE MATCH-
E-BE-NASH-SHE-WISH BAND OF
POTTAWATOMI INDIANS a/k/a GUN LAKE
BAND,

          Defendants-Appellees

UNPUBLISHED
April 5, 2002

No. 226524
Eaton Circuit Court
LC No. 99–000201-CZ

Before: Gage, P.J., and Hoekstra and Meter, JJ.

PER CURIAM.

Plaintiffs appeal as of right a circuit court order granting defendants summary disposition of plaintiffs' breach of contract and other related claims arising from the parties' agreements concerning future development and operation of a tribally owned casino. Defendants successfully asserted a sovereign immunity defense and were granted summary disposition pursuant to MCR 2.116(C)(7). We affirm.

Plaintiffs first contend that defendant tribe did not obtain its sovereign immunity until the federal government officially recognized the tribe, after the filing of the instant suit, and that the trial court therefore erred when it retroactively applied the tribe's sovereign immunity to bar plaintiffs' complaint. We review de novo a grant of summary disposition pursuant to subrule (C)(7), accepting as true the plaintiff's well-pleaded allegations and construing them in the light most favorable to the plaintiff. The motion should not be granted unless no factual development could provide a basis for recovery. *Huron Potawatomi, Inc v Stinger*, 227 Mich App 127, 130; 574 NW2d 706 (1997).

"Indian tribes are 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories. *Oklahoma Tax Comm v Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 US 505, 509; 111 S Ct 905; 112 L Ed 2d 1112 (1991). Because of their status as sovereign authorities, Indian tribes have sovereign immunity from lawsuits against them unless they clearly waive their immunity or where Congress has authorized an action against them. *Kiowa Tribe of Oklahoma v Mfg Tech, Inc*, 523 US 751, 754; 118 S Ct 1700; 140 L Ed 2d 981 (1998); *Huron Potawatomi, supra* at 130.

Contrary to plaintiffs' assertion, federal recognition does not bestow sovereignty on a tribe, but rather recognizes sovereignty that already existed. *United States v Wheeler*, 435 US 313, 322-323; 98 S Ct 1079; 55 L Ed 2d 303 (1978). The powers of Indian tribes are, in general, "*inherent powers of a limited sovereignty which has never been extinguished.*" *Id*. at 322, quoting F. Cohen, Handbook of Federal Indian Law 122 (1945) (emphasis in original). In recognizing the Gun Lake Band as an historic tribe, the federal government acknowledged that the tribe's existence dated from precolonial times and that the tribe is entitled to all the privileges and immunities of that tribal status, including sovereign immunity. *Santa Clara Pueblo v Martinez*, 436 US 49, 55-59; 98 S Ct 1670; 56 L Ed 2d 106 (1978). In this case, therefore, the tribe enjoyed immunity for the actions it took before its formal recognition by the federal government, including its entry into the agreements that form the basis of plaintiffs' complaint. *Huron Potawatomi, supra* at 128-131.

Tribal officials are protected by the tribe's immunity as long as they act in their representative capacity and within the scope of their authority. *Cameron v Bay Mills Indian Community*, 843 F Supp 334, 336 (WD Mich, 1994). Although plaintiffs sought damages and injunctive relief against defendant tribal officers and tribal council, plaintiffs made no allegations that the officers acted outside the scope of their authority. The tribal officials thus are immune from plaintiffs' claims.

The tribe's nonprofit corporation likewise enjoys immunity because it acts merely as an arm of the tribe, rather than as a separate and distinct business entity. *Huron Potawatomi, supra* at 132. The articles of incorporation for the tribe's nonprofit corporation indicate that it was organized to assist in the carrying out of governmental functions of the tribe and that the tribe exercised control over the corporation's operations. Because plaintiffs failed to show that the nonprofit corporation constituted a corporate entity separate from the tribal government, the nonprofit corporation also is immune from plaintiffs' claims. *Id*.; *Gavle v Little Six, Inc*, 555 NW2d 284, 294 (Minn, 1996).

Accordingly, all defendants have immunity from plaintiffs' suit unless Congress authorized the instant action or unless defendants waived their immunity. *Kiowa, supra* at 754. Plaintiffs do not contend that Congress authorized their suit, and the lower record does not support that finding. Plaintiffs assert, however, that defendants waived their immunity by including various provisions within the parties' agreements. A tribe's waiver of immunity must be clear and unequivocal, *Huron Potawatomi, supra* at 130, but the tribe need not use the words "sovereign immunity" for the waiver to be deemed explicit. *C & L Enterprises, Inc v Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 US 411, 420-421; 121 S Ct 1589; 149 L Ed 2d 623 (2001).

Plaintiffs first argue that defendants waived their immunity by acknowledging that the

parties' agreements were "valid and binding." Plaintiffs contend that one may infer from this language that the tribe intended plaintiffs to have recourse to enforce the agreement, from which one may infer that the enforcement was to be through a state or federal court, from which one may infer that the tribe intended to waive its sovereign immunity by submitting to suit in state and federal court. We conclude that a waiver requiring this many inferences does not qualify as clear and unequivocal. *Ramey Constr Co, Inc v Apache Tribe of Mescalero Reservation*, 673 F2d 315, 319 (CA 10, 1982).

Plaintiffs next allege that defendants waived their sovereign immunity by signing a March 6, 1995 letter agreement containing a choice of law provision stating that the agreement "has been made and shall be interpreted in accordance with the laws of the State of Arizona." We note, however, that the United States Supreme Court has not found that a choice of law provision standing alone constitutes a sufficiently clear and unequivocal waiver of tribal sovereign immunity. *C & L Enterprises, supra*, 532 US at 418-423 (finding a clear and unequivocal waiver of tribal sovereign immunity on the basis of the tribe's inclusion in a contract that it drafted of (1) a binding arbitration clause that governed resolution of all disputes related to the contract pursuant to the construction industry rules of the American Arbitration Association, (2) contract language providing that arbitration awards could be reduced to judgment "in accordance with applicable law in any court having jurisdiction thereof," and (3) an additional choice of law provision that the "court having jurisdiction" to enforce the arbitration award is an Oklahoma state court"). We similarly conclude that the instant choice of law provision did not reflect defendants' intent to waive their sovereign immunity.[1] See *James Joseph Morrison Consultants, Inc v Sault Ste Marie Tribe of Chippewa Indians*, 1998 WL 1031492, *3 (WD Mich, 1998) (distinguishing that a choice of law provision represents "merely an agreement that a certain body of substantive law will apply to disputes which arise," and "not an agreement to submit to a particular forum, to the jurisdiction of any particular court, or to any particular means of dispute resolution").

---

[1] Plaintiffs also suggest that defendant Church waived immunity by entering a consulting agreement with plaintiffs that stated the agreement's provisions "shall be governed by and interpreted in accordance with the laws of the Province of British Columbia and each of the parties hereto by their execution of this agreement irrevocably attorns to the jurisdiction of the Courts of the State of Arizona." To "attorn" means:

> [t]o turn over; to transfer to another money or goods; to assign to some particular use or service. To consent to the transfer of a rent or reversion. To agree to become tenant to one as owner or landlord of an estate previously held of another, or to agree to recognize a new owner of a property or estate and promise payment of rent to him. [Black's Law Dictionary (6th ed), 128.]

Because plaintiffs' and Church's reference to "attorn" apparently refers to a transfer of already existing authority or rights and not the creation of new authority or rights, we find that Church did not waive his immunity by agreeing to this provision alone. The consulting agreement contains no other provision beyond the above choice of law provision suggesting that Church waived his immunity.

-3-

Plaintiffs next contend that defendants waived immunity by agreeing that the parties' intended that their casino management contract, which the parties never executed, would include customary and required terms and conditions, presumably including a provision for a dispute resolution mechanism.[2] Plaintiffs assert that the trial court erred in not allowing them to conduct discovery to determine what provisions related to dispute resolution or the waiver of sovereign immunity might customarily have been intended for the management agreement. We conclude, however, that irrespective of what terms the management agreement might have encompassed, defendants' mere agreement to include provisions in a management contract to be executed in the future does not itself constitute a clear and unequivocal waiver of sovereign immunity.

Plaintiffs lastly assert that defendants waived their immunity by incorporating pursuant to Michigan's Nonprofit Corporation Act, MCL 450.2101 *et seq.*, which provides that a nonprofit corporation has the power to "[s]ue and be sued in all courts." MCL 450.2261(1)(b). Because a tribe's "act of incorporating pursuant to Michigan law [the Nonprofit Corporation Act] does not constitute an express and unequivocal waiver of sovereign immunity from suit," *Huron Potawatomi, supra* at 132, we conclude that plaintiffs' claim lacks merit.

Because defendants enjoyed sovereign immunity, when they entered the contracts with plaintiffs as well as when plaintiffs filed this action, and because defendants have not waived their immunity, the trial court properly granted defendants summary disposition pursuant to MCR 2.116(C)(7).

Affirmed.

/s/ Hilda R. Gage
/s/ Joel P. Hoekstra
/s/ Patrick M. Meter

---

[2] The specific letter agreement language on which plaintiff relies states as follows:

Subject to the approval of the Indian Gaming Commission, the Management Agreement shall have, at a minimum, the following terms and provisions:

(c)     The Management Agreement will fully comply with required regulations of the Indian Gaming Act and the Bureau of Indian Affairs, which are in effect on the date the Management Agreement is submitted to the Indian Gaming Commission for approval.

* * *

(f)     All such additional terms and provisions as are customarily included in gaming management contracts, approved by the Indian Gaming Commission.