

# United States Department of the Interior
OFFICE OF THE SECRETARY
Washington, DC 20240



TAKE PRIDE IN AMERICA

SEP 2 1 2005

Honorable Rick Brannan
Chairman, Northern Arapaho Tribe
P.O. Box 396
Fort Washakie, Wyoming 82514

Dear Chairman Brannan:

We have completed our review of your application for Secretarial Procedures. We believe that the Northern Arapaho Tribe has complied with the requirements set forth in the Indian Gaming Regulatory Act of 1988 (IGRA), 25 U.S.C. §§ 2701 et seq. Therefore, Secretarial Procedures for the Northern Arapaho Tribe, pursuant to Section 2710(d)(7)(vii) of IGRA, are hereby prescribed.

The Tribe first requested gaming negotiations with the State of Wyoming in 1995. On November 21, 2000, after five years of discussion with the State, the Tribe filed suit seeking a declaration that the State had failed to negotiate in good faith. On February 6, 2002, the District Court ruled in favor of the Tribe, finding that the State failed to negotiate in good faith. On April 19, 2002, the District Court issued a written order denying the State's motion to stay proceedings pending appeal and issued its Order appointing a mediator pursuant to IGRA.

On November 11, 2002, the Mediator acknowledged that he was "required to select from the two proposals submitted by the state of Wyoming and the Tribe the proposal that best comports with the terms of IGRA, any other applicable federal law, and the findings and order of the District Court." The Mediator chose the Last Best Offer of the Tribe.

On December 13, 2002, Governor Geringer rejected the Tribe's Last Best Offer. The Mediator, pursuant to 25 U.S.C. § 2710(d)(7)(B)(vii), notified the Secretary of the Interior of the State of Wyoming's rejection of the Tribe's proposed compact and submitted the Tribe's Last Best Offer to the Department. Finally, on December 30, 2002, the Department received the Tribe's application for Secretarial Procedures.

Congress has carefully defined the procedure that takes place when the Secretary has been notified that a mediator has selected a proposal and the State has rejected the mediator's selection. The Secretary "shall prescribe, in consultation with the Indian tribe, procedures . . which are consistent with the proposed compact selected by the mediator . . . and under which class III gaming may be conducted on the Indian lands over which the Indian tribe has jurisdiction." See 25 U.S.C. § 2710 (d)(7)(B)(vii)(I) and (II).

1



EXHIBIT
No. 05-CV-1181
JGP
B

These Secretarial Procedures are prescribed in accordance with the statutory process delineated in IGRA. We wish the Tribe success in its economic venture.

Sincerely,

*James E. Cason*

James E. Cason
Associate Deputy Secretary

cc:   Honorable David Freudenthal
      Governor, State of Wyoming
      State Capitol
      Cheyenne, Wyoming 82002

      Mr. Patrick Crank
      Attorney General, State of Wyoming
      123 State Capital Building
      Cheyenne, Wyoming 82002

# CLASS III GAMING PROCEDURES FOR THE
# NORTHERN ARAPAHO NATION

## PREFACE

A. The Tribe has enacted, and the United States National Indian Gaming Commission has approved, pursuant to IGRA, a statute that authorizes and governs class III gaming by the Tribe.

B. The Northern Arapaho Nation ("Nation" or "Tribe") of the Wind River Reservation, Wyoming, initiated negotiations for class III gaming with the State of Wyoming ("State") pursuant to the Indian Gaming Regulatory Act ("IGRA") 25 U.S.C. 2701 et seq. The Tribe and the State failed to reach a gaming compact. Pursuant to the IGRA, the Tribe filed suit against the State after the close of the 180-day period following the request for negotiations. The State waived its immunity from suit.

C. The United States District Court for the District of Wyoming in its ruling February 6, 2002, in Northern Arapaho Tribe v. State of Wyoming et al. No. 00-CV-221J, found that the State failed to negotiate in good faith and set forth certain gaming which may be conducted by the Tribe.

D. The Tribe and the State failed to reach a gaming compact within sixty (60) days after the District Court ruling and the Court appointed the Honorable James Carrigan (retired) as Mediator pursuant to the IGRA.

E. The Tribe and the State failed to reach a gaming compact through the mediation process and on November 11, 2002, the Mediator choose the Last Best Offer of the Tribe pursuant to the IGRA. The State rejected the Last Best Offer approved by the Mediator.

F. The Mediator has requested the United States Department of the Interior to prescribe class III gaming procedures for the Tribe pursuant to the IGRA, 25 U.S.C. 2710(d)(7)(B)(vii), and the Tribe has joined in that request.

# I. DEFINITIONS

For purposes of these procedures:

A. "Act" and "IGRA" mean the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 et seq. and 18 U.S.C. §§ 1166-1168.

B. "Calcutta wagering" is a form of parimutuel wagering.

C. "Class I gaming" shall have the meaning set forth in IGRA at 25 U.S.C. § 2703(6).

D. "Class II gaming" shall have the meaning set forth in IGRA at 25 U.S.C. § 2703(7).

E. "Class III Gaming" shall have the meaning set forth in IGRA at 25 U.S.C. § 2703(8).

F. "Complimentary services" means the provision to a patron of a gaming facility or such patron's guest, either free of charge or at a reduced price, of any goods or services, including transportation, lodging, meals, beverages, and coupons or other representations of money for use in wagering.

G. "Contest of skill" means any contest or game involving the use of skill, including strategy or dexterity, in which awards are made only to entrants or owners of entries and which can be played with or without a video facsimile, electronic game or amusement device so long as such device is not expressly prohibited by this compact. "Contests of skill" include, without limitation, poker, cribbage, chess, checkers, bowling, target-shooting, and ring-toss.

H. "Gaming" means all class III gaming activities permitted under these procedures. "Gaming" does not include class I or class II gaming.

I. "Gaming floor" means the area of a gaming premise where patrons engage in class III gaming and does not include any areas used for accounting, maintenance, surveillance, security, administrative offices, storage, cash or cash counting, records, food service, lodging, or entertainment.

J. "Indian" means all persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction, and all persons who are descendants of such members who were, on June 1, 1934, residing within the present boundaries of any Indian reservation, and shall further include all other persons of one-half or more Indian blood.

K. "Indian lands" means "Indian lands" as defined in the Act and located within the Wind River Indian Reservation established by the Treaty with the Eastern Band Shoshoni and Bannock, July 3, 1868 (15 Stat. 673).

L. "MICS" means the Minimum Internal Control Standards as set forth in 25 Code of Federal Regulations Part 542, including future amendments.

M. "National Indian Gaming Commission" or "NIGC" shall mean the National Indian Gaming Commission established pursuant to the Indian Gaming Regulatory Act.

N. "Parimutuel wagering" means a mutual stake or wager on any event or game not otherwise prohibited by these procedures in which those who bet share the total stakes, less a percent to the management, that is not specifically prohibited by 28 U.S.C. 3702, et seq. Parimutuel wagering includes "calcutta wagering."

O. "Patron" means a person who is within a gaming facility or is on the business premises of a gaming facility and who is not an on-duty employee or official of the gaming facility, the Northern Arapaho Gaming Agency, or the United States.

P. "Premise" means a structure or facility that is clearly defined and that has a public external entrance, leading to a street or other area accessible to the general public.

Q. "Pull tabs" means a game in which players purchase numbers or symbols, the winning numbers or symbols are determined randomly in advance of play, and the probability for a win is equal for each player.

R. "Raffle" means a game in which players purchase numbers, the winning numbers are determined randomly, and the probability for a win is equal for each player and determined by the total amount of numbers purchased. "Raffle" is one form of lottery, but the term does not mean or include other forms of lotteries.

S. "Secretary" means the Secretary of the Interior, or the Secretary's designee.

T. "Slot machine" or "gaming machine" means an electronic or electromechanical machine which contains a microprocessor with random number generator capability which allows a player to play games of chance, some of which may be affected by skill, which machine is activated by the insertion of a coin, token or cash, or by the use of a credit, and which awards game credits, cash, tokens or replays, or a written statement of the player's accumulated credits, which written statements may be redeemable for cash. Such terms do not include electronic, computer or other technological aids or electronic or electromechanical facsimiles of games.

U. "State" means the State of Wyoming, its authorized officials, agents and representatives.

V. "Tribe" means the Northern Arapaho Tribe, also known as the Northern Arapaho Nation or the Northern Arapahoe Tribe of the Wind River Indian Reservation, Wyoming,

including any agency, organization, subdivision, or public entity controlled by the Tribe.

W. "Tribal law" and "Tribal regulation" mean the laws and regulations of the Northern Arapaho Tribe in effect and as hereafter amended and includes published decisions of the Northern Arapaho Gaming Agency or the Tribal Court interpreting the laws and regulations of the Tribe.

X. "Tribal member" means an enrolled member of the Tribe.

Y. "United States Court" means any federal district court, federal circuit court of appeals or the United States Supreme Court.

Z. "Wyoming law" and "State law" mean the Constitution and laws of the State and Wyoming Statutes as they are in effect at the time of the signing of these procedures and as hereafter amended, and includes published court decisions of the Wyoming Supreme Court interpreting that Constitution and those statutes.

## II. AUTHORIZED CLASS III GAMING

A. **Authorized Class III Gaming Activities.** Subject to the terms and conditions of these procedures, the Tribe is authorized to offer or operate the following class III gaming activities without regard to the restrictions on such activities which may be otherwise applicable to other entities or persons engaged in gaming outside the Reservation under Wyoming law:

1. Pull-tabs
2. Raffles
3. Wagering on contests of skill, speed, strength or endurance
4. Calcutta wagering
5. Parimutuel wagering

In addition to the activities set forth above, the Tribe is authorized to offer or operate any class III gaming which is permitted in the State, including, without limitation, games or forms of games the State considers to be "bingo" or other Class II gaming but which the Tribe considers to be forms of keno, lotteries, or other Class III gaming so long as the game that is played is a game that is permitted in the State.

B. **Slot Machines and Gaming Machines Prohibited.** Slot machines and gaming machines are prohibited under these procedures. However, both electronic, computer or other technological aids as well as electronic or electromechanical facsimiles of both class II games and the class III games set forth herein are permitted.

C.  **State Law Limitations on Games Inapplicable.** Gaming permitted or conducted under these procedures is subject to the laws of the United States and the Tribe and the terms set forth herein but is not subject to any of the conditions, limitations or definitions otherwise applicable to gaming by other persons or entities outside the Wind River Reservation under Wyoming law.

D.  **Hosting of Additional Activities.** Any game, wager or transaction for social purposes may be conducted at tribal facilities, provided that the Tribe neither conducts nor participates as a player in such games.

### III. OPERATION OF GAMING FACILITIES

A.  **Gaming premises.** The Tribe may initially operate a total of five (5) gaming premises, one of which shall be the primary gaming enterprise, the gaming floor of which shall not exceed 65,000 square feet. Other premises shall not exceed 1,000 square feet of gaming floor per premise. The Tribe may operate three additional premises not to exceed 1,000 square feet of gaming floor per premise on the following schedule: operation of one additional premise may begin four years from the effective date of these procedures, a second additional premise eight years from the effective date of these procedures, and a third additional premise twelve years from the effective date of these procedures. If the Tribe desires to establish a gaming facility on Indian lands (as defined in Section I. K. hereof) held by the United States in trust for the joint benefit of the Northern Arapaho and Eastern Shoshone Tribes, the written concurrence of each tribe is a necessary condition for use of such Indian lands for a gaming facility.

B.  **Notice of Gaming Rules.** A summary of the rules of each game relevant to the play of the game and the odds paid on winning wagers shall be conspicuously posted or be readily available in pamphlet or electronic form in the portion of the gaming facility in which gaming activities are conducted. The Tribe shall furnish the NIGC a written copy of the full rules applicable to all games operated by the Tribe and of the odds paid on winning wagers. The Tribe shall notify the NIGC of any change in the rules of any games within ten (10) days of such change.

C.  **Resolution of Gaming Disputes.** Gaming disputes shall be resolved in accordance with applicable provisions of the Northern Arapaho Gaming Code, tribal law, and tribal regulations, which shall continue to provide for a decision by a person or entity separate from the person(s) who made the initial decision and posting of conspicuous notice of the process for resolving a payment dispute in the portion of the gaming facility in which gaming activities are conducted.

D.  **Complimentary Services.** The Tribe may offer complimentary goods or services in connection with its gaming activities. Any alcohol service provided or authorized by the Tribe shall comply with all applicable federal law including specifically 18 U.S.C. 1161.

E. **Employee Identification.** The Tribe shall require all on-duty employees on the gaming floor or who serve patrons in gaming facilities to wear conspicuous identification cards or badges issued by the Tribe that include the employee's photograph, first name, employee number, and tribal seal or signature. This provision shall not apply to employees assigned to covert compliance duties, who shall only be required to have on their person an identification badge.

F. **Minors.** The Tribe shall prohibit any patron under the age of 18 from engaging either directly or indirectly in any wagering or gaming activity, or loitering in or about any portion of the gaming facility which is used for gaming activities.

G. **Contracted Entities.** When the Tribe contracts with any organization, entity or individual to conduct any operation the Tribe is authorized or required to perform pursuant to these procedures, the Tribe shall ensure that such organization, entity or individual fulfills all obligations imposed upon the Tribe by these procedures with respect to such operations.

H. **Notice.** The Tribe shall post or provide in the portion of the gaming facility in which gaming activities are conducted conspicuous notice regarding patron disputes, injuries, and employee rights which includes language in substantial conformance with the sample notice set forth in the attached Appendix F.

## IV. REGULATION OF GAMING

A. **Tribal and State Jurisdiction.** The Tribe shall have jurisdiction, subject to any concurrent jurisdiction of the United States, to regulate class III gaming on its Indian lands. The State shall have no jurisdiction regarding any gaming addressed or regulated by IGRA. NIGC shall have enforcement authority over any breach of these procedures.

B. **Maintenance of Integrity of Gaming.** Maintaining the honesty, integrity, fairness and security of the Tribe's class III gaming is essential both to the success of the enterprise and to satisfy the desires of the Tribe.

C. **Tribal Responsibilities.** Decisions by the Tribe, the Northern Arapaho Gaming Agency and the management of the gaming facility concerning the Tribe's class III gaming operations shall be consistent with each of the following principles:

1. All decisions concerning gaming operations and the operation of the Tribe's gaming facility shall reflect the particularly sensitive nature of a gaming operation.

2. The Tribe shall work diligently and take all reasonably necessary affirmative steps to prevent cheating and theft, and to protect the gaming operations from the influence of or control by any form of criminal activity or organization.

3. The honesty, integrity, fairness and security of the Tribe's gaming operation shall be of paramount consideration in awarding contracts, licensing and hiring employees, and in making other business decisions concerning the operation of the gaming enterprise.

4. The Tribe's regulation and operation of its class III gaming activities shall be at a minimum consistent with generally accepted industry standards and practices, in order to maintain the honesty, integrity, fairness and security of the Tribe's class III gaming activities.

5. The Tribe's regulation of gaming on its Indian lands assists in realizing the objectives of tribal economic self-sufficiency and self-determination.

6. The Tribe shall have the exclusive authority and the duty to enact and enforce statutes, ordinances, administrative rules, guidelines and administrative procedures regarding gaming under these procedures and to impose taxes, fees, assessments and penalties upon and to license persons and entities participating in its gaming operations.

7. No statute, ordinance, administrative rule, guideline or administrative procedure of the State shall affect or control any aspect of the Tribe's gaming operations except as might be relevant pursuant to Section XII (Amendments) of these procedures.

D. **Gaming Code and Self-Regulation.** The Tribe has adopted Title 3, Gaming, ("the Gaming Code") as part of the Northern Arapaho Code, attached hereto as Appendix A, which shall be the governing code for the regulation of the Tribe's class III gaming except to the extent that these procedures or federal law expressly provide otherwise. The Tribe's Gaming Code shall include provisions regarding self-regulation of class III gaming as provided in Appendix G, attached hereto.

E. **Amendments to Gaming Code.** The Tribe shall have no restrictions upon its ability to amend the Gaming Code through its own processes provided that such amendments shall not conflict with these procedures, including all provisions attached in Appendices and incorporated herein by reference.

F. **Internal controls.** The Tribe has adopted the MICS and shall maintain minimum internal control standards which are consistent with or more stringent than applicable federal standards.

G. **Cash transaction reporting.** The Tribe shall comply with all applicable federal reporting requirements under the Bank Secrecy Act and all other applicable federal laws.

H.  **Minimum bankroll.** The Tribe shall maintain cash or cash equivalents in an amount sufficient to meet its obligations for wins in compliance with the MICS.

I.  **Log of Unusual Occurrences.** The Tribe shall establish procedures to ensure that all unusual occurrences within the gaming facility are recorded in indelible ink in a bound notebook from which pages cannot readily be removed, each side of each page of which is sequentially numbered, the assigned sequential number of the incident, the date, time and nature of the incident, the people involved in the incident and the security employee making the entry into the log.

J.  **NIGC Access.** NIGC shall have free access to inspect the Tribe's gaming facility and gaming records for the purpose of determining the Tribe's compliance with the terms of these procedures, including any federal or tribal law incorporated herein by reference.

K.  **Inspections.** NIGC filed investigators shall present proper identification and immediately notify the managerial employee of his or her presence upon arrival at a gaming facility or gaming support facility, if practicable.

L.  **Audits and Compliance Reviews.** The Tribe shall annually have conducted an audit of its gaming operations and associated financial statements which shall be done by a certified public accountant in accordance with generally accepted accounting principles and with the MICS.

M.  **Licensing Standards.** The Tribe shall adhere to and enforce the requirements and standards in the Act, in the MICS and in applicable portions of the Tribe's Gaming Code regarding background checks and licensing standards for gaming employees and contractors.

N.  **NIGC Recommended Accounting Standards.** The Tribe shall comply with the Recommended Accounting Standards of the NIGC currently in effect, attached hereto as Appendix B, or as hereafter amended from time to time by the NIGC.

O.  **Regulations.** The Tribe shall comply in all material respects with or exceed standards set forth in its Gaming Regulations currently in effect, attached hereto as Appendix C, or as hereafter amended from time to time by the Northern Arapaho Gaming Agency. The Tribe also shall comply in all material respects with or exceed applicable standards set forth in the attached Appendix D, which shall be promulgated by the Tribe as regulations within 180 days of the approval of these procedures by the Secretary. Amendments to the Tribe's Gaming Regulations, including those in Appendices C and D, do not require approval by the Secretary so long as such amendments refine, clarify, increase standards, delete inapplicable standards, or add new standards which comply with applicable federal law, federal regulations and these procedures.

## V. PUBLIC HEALTH AND SAFETY

A. **Uniform Construction Codes.** The Tribe shall establish for its gaming facilities and gaming support facilities health, safety and construction standards that are at least as stringent as the current editions of the National Electrical Code, the 1997 Uniform Building Code, the Uniform Mechanical Code, the 1997 Uniform Fire Code and the Uniform Plumbing Code, and each gaming facility constructed by or for the Tribe hereafter shall be constructed and all facilities shall be maintained so as to comply with such standards. The Tribe will conduct such inspections of such maintenance at least annually and the NIGC shall have access to reports of inspection and correction pursuant to the "NIGC Access" section of these procedures. The Tribe shall correct any deficiencies noted in such inspections within a time agreed upon between the NIGC and Tribe.

B. **N.E.P.A.** The Tribe shall comply with any applicable provisions of the National Environmental Policy Act (N.E.P.A.).

C. **Food and Beverage Service.** The Tribe shall establish and maintain for its gaming facilities standards for food and beverage handling that are at least as stringent as United States Public Health Service Requirements, which are incorporated by reference and attached hereto as Appendix E.

D. **Americans With Disabilities Act.** All construction of any new gaming facility shall comply with the building standards set forth in the Americans with Disabilities Act, P.L. 101-336, 42 U.S.C. § 12101 et seq.

E. **Emergency Access.** The Tribe shall make provision for adequate access by emergency vehicles and personnel to any gaming facilities and shall provide ready access for employees, patrons, and other individuals on or near such facilities to a means of contacting emergency agencies such as by a "911" number.

F. **Insurance.** The Tribe shall maintain in effect policies of public liability insurance, insuring the Tribe, its agents, employees, agencies, organizations and subdivisions against claims for damages resulting from bodily injury, wrongful death or property damages caused by the negligence of tribal employees while acting within the scope of their duties in the operation or maintenance of its gaming facilities in the amount of $One (1) million per occurrence and $Five (5) million annual aggregate. Each year, the amount of coverage shall increase or decrease based on adjustments in the Consumer Price Index. The Tribe shall require its insurer to covenant not to decline to indemnify or defend on the basis of sovereign immunity, so long as the claim is within policy limits; provided, however, that the provisions of this sentence shall not apply to claims for damages caused by (1) a defect in the plan or design or any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area; (2) the failure to construct or reconstruct any bridge, culvert, highway, roadway, street, alley, sidewalk, or parking area; or (3) the maintenance, including maintenance to compensate for weather conditions, of any

bridge, culvert, highway, roadway, street, alley, sidewalk or parking area. The Tribe shall provide the NIGC annually a certificate of insurance showing the coverage set forth in this section. Nothing herein shall prevent the Tribe from providing insurance in additional amounts or for additional coverage, in its sole discretion.

## VI. PROTECTION OF EMPLOYEES

The Tribe shall not discriminate in the employment of persons to work for its gaming operations on grounds of race, ethnicity, national origin, gender or age, provided that nothing herein shall be interpreted to prevent the Tribe from granting preference in hiring, retention and promotion to members of the Tribe in accordance with tribal law. The Tribe shall operate its gaming facilities under standards which protect the safety and ensure the fair treatment of its employees which are at a minimum consistent with principles set forth in the federal Fair Labor Standards and Occupational Safety and Health Acts.

## VII. TERM

These procedures shall take effect as provided by the Act and shall remain in effect for fifteen (15) years from such effective date. The term of these procedures may be extended for any period to which the Tribe and Secretary agree. These procedures may be voluntarily terminated by mutual agreement of the Tribe and Secretary or by a duly adopted ordinance or resolution of the Tribe revoking the authority to conduct class III gaming upon the Tribe's lands, as provided in the Act, 25 U.S.C. § 2710(d)(2)(D).

## VIII. THIRD-PARTY RIGHTS

Nothing in these procedures shall be construed to provide standing or rights to any person or entity other than the Tribe or the United States to bring an action for enforcement of the terms of these procedures.

## IX. EXPANSION OR CONTRACTION OF CLASS III GAMING

A.  **Expansion or Contraction of Class III Gaming.** In the event any legislation, including, without limitation, any amendment or repeal of existing law, or any judicial or administrative ruling might have the effect of expanding or contracting class III gaming permitted under these procedures, these procedures shall be amended as necessary pursuant to section XI.

If the State of Wyoming enters into a compact with another tribe within the State permitting that tribe to offer, engage in or operate any type of class III gaming not permitted in these procedures, the Northern Arapaho Tribe shall have the right to offer, engage in or operate such gaming. Prior to initiation of such gaming, the Tribe shall submit an amendment pursuant

to section XI of these procedures regarding terms and conditions concerning the offering of such gaming, in order to meet any needs created by a new or different form of gaming.

B. **Court Decision on Class III Gaming.** The Tribe shall adhere to any final judgment of a United States Court of competent jurisdiction which expands, restricts or otherwise affects the scope of gaming conducted pursuant to these procedures.

## X. RESERVATIONS OF RIGHTS

A. **Reservation of Rights.** These procedures were prescribed pursuant to IGRA and may not be used or construed by either party against the other party at any time to prejudice any other negotiations between the parties, nor shall it be used against either party in future litigation, arbitration, or mediation with respect to such other negotiations, arising therefrom. The Tribe reserves the right to participate in any lawsuit filed by any entity or to pursue any remedies afforded by IGRA, including any action filed to determine the types of class III gaming permitted under applicable law, or limitations on such gaming.

B. **Preservation of Self-Government.** Nothing in these procedures shall be construed to divest or diminish the governmental authority of the Tribe. Nothing in these procedures shall be construed to waive any immunity of the Tribe.

C. **Severability.** Each provision of these procedures shall stand separate and independent of every other provision. If a United States Court of competent jurisdiction finds any provision, section, or subsection of these procedures to be invalid, the remaining provisions, sections, and subsections of these procedures shall remain in full force and effect to the fullest extent possible.

D. **Interpretation of Procedures.** The interpretation of these procedures and of federal statutes and regulations incorporated herein by reference shall comply with established canons of construction applicable to Indian tribes as a matter of federal law.

## XI. AMENDMENTS

When the Tribe seeks to amend these procedures, it shall submit a request in writing to the Secretary pursuant to IGRA. See 25 U.S.C. 2710 (d)(8)(B)(C) and (D). The Secretary may disapprove amendments to these procedures which are requested by the Tribe only if they would violate the Act, any other provision of federal law that does not relate to jurisdiction over gaming on Indian lands but nonetheless applies to Tribes, or the trust obligations of the United States to Indians. If the Secretary does not approve or disapprove an amendment to these procedures which is requested by the Tribe before the date that is 45 days after the date on which they were submitted to the Secretary for approval, the amendment shall be considered to have been approved by the Secretary, but only to the extent the amendment is consistent with the provisions

of the IGRA. The Secretary may amend these procedures as set forth in Section X, but only after no less than 45 days advance written notice to and consultation with the Tribe.

## XII. NOTICES

All notices, requests, reports, information or demands shall be personally delivered, or sent by first class certified, express, or registered United States mail, postage prepaid, return receipt requested, and delivered or sent to the other at its address as specified below, or such other address as they shall hereafter inform the other hereto by written notice:

To the Tribe:

Chairman
Northern Arapaho Business Council
P.O. Box 369
Ft. Washakie, WY 82514

To the NIGC:

Chairman
1441 L Street NW
Suite 9100
Washington, DC 20005

Approved and effective this 21st day of September, 2005.

James E. Cason
Associate Deputy Secretary
United States Department of the Interior

*Secretarial Procedures for the Northern Arapaho Nation*
*Class III Gaming / Page 12*