IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHIGAN GAMBLING OPPOSITION ("MichGO"), a Michigan non-profit corporation, <br><br> Plaintiff, <br><br> vs. <br><br> GALE NORTON, in her official Capacity as SECRETARY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR, et. al. <br><br> Defendants. <br><br> MATCH-E-BE-NASH-SHE-WISH BAND OF POTTAWATOMI INDIANS, a federally-recognized Indian Tribe, <br><br> Intervenor. | Case No. 1:05-CV-01181-JGP |

## RESPONSE TO PLAINTIFF'S SUPPLEMENTAL STATEMENT OF POINTS AND AUTHORITIES

Intervenor Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians ("Tribe") responds to the Supplemental Statement of Points and Authorities filed by Plaintiff Michigan Gambling Opposition ("MichGO")—a document filed more than six weeks after briefing on the Tribe's dispositive motion had closed—in order to correct the Supplemental Statement's errors of fact and law.

MichGO asserts the Supplemental Statement is intended to illustrate a "recent trend by DOI and BIA to perform environmental impact statements [EISs] for proposed Indian casinos." Supp. Statement at 1. However, the "recent trend" Plaintiff purports to identify is an artifact of

its own exaggeration of facts published in the Federal Register. More importantly, even if factually accurate, MichGO's untimely trend-spotting would not support its legal argument that the BIA must prepare an EIS in this case.

**MichGO's Supplemental Statement Distorts Facts Published in the Federal Register**

MichGO's Supplemental Statement primarily consists of a series of citations to the Federal Register. MichGO suggests that those citations provide evidence that DOI and BIA normally prepare EISs—and not Environmental Assessments ("EAs")—when evaluating casino projects. Supp. Statement at 1-3. But several of the cited projects actually involved EAs that were used to help determine whether an EIS would be necessary. *See* 70 Fed. Reg. 29363 (May 20, 2005); 69 Fed. Reg. 42065 (July 13, 2004); 69 Fed. Reg. 24182 (May 3, 2004); 68 Fed. Reg. 65647 (Nov. 20, 2003). *See also* 40 C.F.R. §§ 1504.1(b), 1508.9 (agencies may prepare EA to determine necessity of preparing EIS). *See also* NIGC NEPA Procedures Manual § 3.1; BIA NEPA Handbook § 3.3.

Moreover, most of the cited projects bear no resemblance to the Tribe's project—a 200,000-square foot casino to be located in an existing manufacturing facility on a 146-acre site already zoned for commercial use. *See, e.g.,* 71 Fed. Reg. 21034 (April 24, 2006) (2,000-acre tribal project including residential community, commercial development, schools, parks, trails, surface streets, a freeway interchange, natural gas facilities, and a water treatment plant); 70 Fed. Reg. 47262 (Aug. 12, 2005) (hotel, gaming facility, and outdoor amphitheater totaling more than 1.3 million square feet). The fact that BIA chose to prepare EISs for projects far larger and more complex than the Tribe's proposal is neither surprising nor relevant. The issue properly before this Court is whether BIA took a "hard look" at the proposed action at issue in this case. For this project, as for many other casino projects, BIA prepared a thorough EA that identified and

evaluated the environmental consequences of the Tribe's proposal.  Indeed, the most recent and relevant federal court decision on this issue involved a tribal gaming project that is also located in West Michigan.  *TOMAC v. Norton*, 433 F.3d 852 (D.C. Cir. 2006).  There, the Court of Appeals affirmed this Court's decision that an EIS was not required for the project, and that the BIA's Finding of No Significant Impact based upon an EA complied with NEPA.  Notably, the project at issue in *TOMAC* included 675 acres and new construction of a 110,000-square foot gaming facility, five or six restaurants, a 200-room first class hotel, and parking garage.  *Id*. at 856-57.  MichGO's distorted generalizations about the environmental consequences of other projects in other locations provide no basis for questioning the thoroughness of the BIA's decision-making process in this case.

Finally, it is worth noting that MichGO also significantly distorts the number of casino projects for which EISs have been performed by citing multiple notices for certain projects.  For example, MichGO cites two separate notices (one announcing an intent to prepare, and one announcing the availability of a draft) discussing the same EIS for a proposal by the Cowlitz Tribe.  Supp. Statement at 1-2 (citing 71 Fed. Reg. 18767 (April 12, 2006) and 69 Fed. Reg. 65447 (Nov. 12, 2004)).  *See also* Supp. Statement at 1-3 (citing multiple Federal Register notices for single projects by the Ione Band of Miwok Indians, the Federated Indians of Graton Rancheria, and the Scotts Valley Band of Pomo Indians).

In sum, the "recent trend" identified in the Supplemental Statement is a manifestation of MichGO's own exaggeration and distortion of routine notices published in the Federal Register, and ignores the most recent precedent from this Circuit.  Indeed, several of the cited documents actually undermine MichGO's argument by demonstrating that federal agencies continue to prepare EAs for casino projects.

## **Even if Factually Accurate, MichGO's Supplemental Statement Would Not Provide Evidence That the BIA Was Required to Prepare an EIS**

MichGO nonetheless maintains that EISs prepared for other casino projects are important to the resolution of this case because "the [Council on Environmental Quality's] NEPA regulations state that, in determining whether to perform an EIS, an agency's first step must be to determine whether the project is of a type that '[n]ormally requires an environmental impact statement.'" Supp. Statement at 3 (citing 40 C.F.R. § 1501.4(a)). It is mistaken.

MichGO's summary of the Council on Environmental Quality's NEPA regulations is misleading and inaccurate. The regulation on which Plaintiff's argument is based actually reads as follows:

> "In determining whether to prepare an environmental impact statement the federal agency shall:
> (a) Determine *under its procedures supplementing these regulations* whether the proposal is one which
> (1) Normally requires an environmental impact statement, or
> (2) Normally does not require either an environmental impact statement or an environmental assessment."
> 40 C.F.R. § 1501.4(a) (emphasis added).

Thus, the cited regulation does not—as Plaintiff would have this Court believe—require federal agencies to monitor "recent trends" in order to determine whether a proposed action is of a type that normally requires preparation of an EIS. Rather, it mandates that federal agencies determine whether *their own NEPA regulations* categorize a proposed action as being of a type that normally requires an EIS.[1] If a proposed action does not fall within that category, the agency may prepare an EA. 40 C.F.R. § 1504.1(b).

---

[1] *Seattle Community Council Federation v. Federal Aviation Administration*, 961 F.2d 829, 832 (9th Cir. 1992) is not to the contrary. Plaintiff suggests that *Seattle Community Council* stands for the proposition that "[a]n EIS must be prepared if the proposed agency action is one which 'normally requires an environmental impact statement . . . .'" Supp. Statement at 3. On the contrary, the *Seattle Community Council* decision upheld an agency's EA against various claims that an EIS should have been prepared. *Seattle Community Council Federation,* 961 F.2d 829, 835-36 (9th Cir. 1992).

The NEPA regulations promulgated by DOI, BIA, and NIGC do not categorize the proposed federal action in this case as "one that normally requires an EIS." *See* 516 DM 10; BIA NEPA Handbook § 3.3; NIGC NEPA Procedures Manual § 3.[2]  Therefore, as a matter of law, 40 C.F.R. § 1504.1 does not require the preparation of an EIS.

### Conclusion

MichGO's Supplemental Statement fails to provide an accurate statement of the facts and the law related to preparation of EISs for casino projects. The Supplemental Statement distorts the number of EIS notices published in the Federal Register and mischaracterizes their content. More importantly, it ignores recent precedent from this Circuit and provides a misleading and inaccurate statement of applicable NEPA requirements. Those requirements provide that federal agencies must follow their own NEPA regulations; they do not mandate that federal agencies—or federal courts—must account for "recent trends," even assuming the facts revealed the existence of such a trend here. An EA must be judged on its own merits in light of the unique aspects of the project for which it was prepared; the existence of an EIS, or a supposed trend in preparing EISs, for other non-related projects is irrelevant as to the adequacy of a specific EA.

Finally, and remarkably, MichGO argues that the Tribe is responsible for the delay of its project occasioned by this litigation, because the Tribe has joined the Secretary in defending her administrative decision. That contention is as meritless as the rest of MichGO's claims. Without restating here the reasons why rapid resolution of this matter is critically important to the Tribe, the Tribe respectfully requests a ruling on the pending joint motion for an expedited hearing. Counsel for the Tribe are available for a scheduling conference if it will assist the Court in setting a hearing date.

---

[2] In fact, the NIGC NEPA Procedures Manual expressly authorizes EAs as a permissible means of NEPA compliance. *See* NIGC NEPA Procedures Manual § 3.1 (the Commission "will require the preparation of an EA for any proposed action within its jurisdiction involving construction or development of a gaming facility").

        Respectfully submitted,

        Match-E-Be-Nash-She-Wish Band of
        Pottawatomi Indians, Intervenor-Defendant,

        By    /s/ Conly J. Schulte

| | |
|---|---|
| Nicholas C. Yost, CA Bar 35297 | Conly J. Schulte, NE Bar 20158 |
| Paula M. Yost, CA Bar 156843 | Shilee T. Mullin, NE Bar 22286 |
| Sonnenschein Nath & Rosenthal LLP | Monteau & Peebles, LLP |
| 685 Market Street, Sixth Floor | 12100 W. Center Road, Suite 202 |
| San Francisco, CA 94105 | Omaha, NE 68144 |
| Telephone (415) 882-5000 | Telephone (402) 333-4053 |
| Fax (415) 543-5472 | Fax (402) 333-4761 |
| | |
| Seth P. Waxman, DC Bar 257337 | Michael J. Anderson, DC Bar 417887 |
| Edward C. DuMont, DC Bar 471443 | Monteau & Peebles, LLP |
| Wilmer Cutler Pickering Hale and Dorr LLP | 300 Independence Ave. SE |
| 2445 M Street, NW | Washington, DC 20003 |
| Washington, DC 20037 | Telephone (202) 543-5000 |
| Telephone (202) 663-6000 | Fax (202) 543-7716 |
| Fax (202) 663-6363 | |