IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHIGAN GAMBLING OPPOSITION
("MichGO"), a Michigan non-profit
corporation,

        Plaintiff,

v.

GALE A. NORTON, in her official
capacity as SECRETARY OF THE
UNITED STATES DEPARTMENT
OF THE INTERIOR, *et al.*,

        Defendants,

MATCH-E-BE-NASH-SHE-WISH BAND
OF POTTAWATOMI INDIANS, a
federally recognized Indian tribe,

        Intervenor.

Case No. 1:05-CV-01181-JGP

_____

**MICHGO'S POST-HEARING STATEMENT OF POINTS AND AUTHORITIES IN OPPOSITION TO FEDERAL DEFENDANTS' AND THE GUN LAKE BAND'S MOTIONS TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff Michigan Gambling Opposition ("MichGO") submits this post-hearing brief to inform the Court about the existence of a key document just provided to MichGO by the Department of Interior ("DOI") on January 9, 2007. The document itself is dated March 2005, but a copy was not included in the administrative record of this case. In the document, entitled "Checklist for Gaming Acquisitions, Gaming Related Acquisitions and IGRA Section 20 Determinations" ("2005 Checklist," attached as **Exhibit A**), the DOI flatly states: **"Proposals for large, and/or potentially controversial gaming establishments should require the preparation of an EIS, especially if mitigation measures are required to reduce significant**

**impacts."** (2005 Checklist at 10.) This is precisely what MichGO has been arguing in this case. This previously undisclosed DOI policy statement demonstrates that an environmental impact statement ("EIS") should be required for the Gun Lake Band's proposed casino project.

### SIGNIFICANCE OF PREVIOUSLY UNDISCLOSED DOI DOCUMENT

The key NEPA question in this case is whether a full EIS should be performed before DOI may properly take land into trust for a new and massive casino project in rural Michigan. The DOI required a full EIS for a similar new casino project near Battle Creek, Michigan after Judge Jackson of this Court rejected the DOI's environmental assessment ("EA"). *CETAC v. Norton*, 2004 U.S. Dist. LEXIS 27498 (D.D.C. Apr. 23, 2004). Moreover, MichGO demonstrated in earlier briefing that DOI, as a matter of practice, has required EISs for at least two dozen new Indian casino projects over the past five years, and that the CEQ regulations mandate the performance of an EIS if the project is of a type that normally requires one. (MichGO's Supp. Br. in Opp. to Summ. J. at 1-3.) What the newly disclosed DOI document demonstrates is that DOI not only has a practice of requiring EISs for such projects, but that it actually has a written policy requiring EISs, and that for some unexplained reason that policy was not followed in this case.

In fact, at oral argument, both DOI and the Gun Lake Band denied the existence of any policy requiring an EIS. DOI's counsel stated:

> Plaintiff also states there is a general policy of the government conducting environmental impact statements for casinos. There is no policy. In fact, that is done on a case-by-case basis.

(11/29/06 Hr'g Tr., attached as **Exhibit B**, at 56.) Similarly, the Gun Lake Band's counsel argued:

> [MichGO's counsel] says, well, you know, EISs are routinely done for gaming facilities. As we explain in our brief and in the supplemental filings in response

2

>to their supplemental filings, that is emphatically not true. In fact, under the CEQ regulations every agency is required to identify the types of projects that it does or supervises that routinely require environmental impact statements as opposed to environmental assessments; and as our supplemental submission points out, casinos are not included in that category.

(*Id.* at 62-63.) The newly disclosed DOI document belies these claims and demonstrates that, contrary to the assertions of DOI and the Gun Lake Band before this Court, there is not only a practice, but also a written policy supporting the requirement of an EIS for projects such as this.

In December 2006, shortly after oral argument, MichGO first learned of the possible existence of the 2005 Checklist, and pursued the matter promptly with DOI's counsel. DOI publishes a checklist to assist Regional Directors in preparing land acquisition packages and to inform them of "certain procedural steps that should be followed to assure" proper compliance with the law. (*See* 2005 Checklist at 1.) MichGO discovered that DOI had updated the checklist in March 2005–two months before DOI made its final decision to take the Bradley parcel into trust for the Gun Lake Band without performing an EIS–and that the updated checklist included the critical policy statement. MichGO was forced to ask DOI for a copy of the updated checklist because DOI did not make it a part of the administrative record filed with the Court. Moreover, MichGO was unable to locate the updated checklist with the critical language using publicly available sources.[1] On January 9, 2007, DOI provided a copy of the 2005 Checklist to MichGO.

The 2005 Checklist reflects a change in DOI policy under NEPA relative to Indian gaming acquisitions. Whereas previous checklists provided generic guidance for preparing NEPA documents and merely restated the law requiring preparation of an EIS if "the EA

---

[1] In the *TOMAC v. Norton* case, the DOI included an earlier version of the checklist in the administrative record. (*See* 1997 Checklist – POKAG001 4317-4329, attached as **Exhibit C**.) This version of the checklist, dated February 18, 1997, does not include the newly added critical policy language. Until December 2006, MichGO had no reason to know that there had been any change in the checklist.

determines that the environmental consequences of a proposed Federal undertaking may be significant" (POKAG001 4327), the 2005 Checklist explicitly states:

> Proposals for large, and/or potentially controversial gaming establishments should require the preparation of an EIS, especially if mitigation measures are required to reduce significant impacts.

(2005 Checklist at 10.) This articulated policy, which was in place before DOI decided to take the land into trust for gaming, runs contrary to the contentions of DOI and the Gun Lake Band and explains why DOI is now routinely performing EISs for gaming acquisitions around the country.

As MichGO has previously explained, the proposed casino project here falls squarely within DOI's policy. The project is both large and controversial. It contemplates a 200,000-square-foot casino and entertainment complex open 24 hours a day, 365 days a year, that will draw 3.1 million visitors per year – 8,500 visitors per day – in a town of 3,000 residents. It will attract 4,900 new jobs, 1,420 new residents, and induce the construction of more than 500 new residences. And by DOI's own admission, it will create an unacceptable traffic problem near the casino, even after proposed mitigation. The project is opposed by ordinary citizens from the area who have joined groups like MichGO to oppose the project, as well as West Michigan members of the Michigan Legislature and the United States Congress. (*See, e.g.*, AR000930-33, 000940, 001059-60.)

Moreover, DOI and the Gun Lake Band have both admitted that mitigation measures are required to reduce significant impacts such as traffic. Thus, DOI's own articulated policy in existence when it decided to take land into trust for the Gun Lake Band requires it to perform an EIS.

## **CONCLUSION**

MichGO respectfully requests that this Court order DOI to perform an EIS before deciding to take the land into trust for a new casino project, just as it has been doing for proposed Indian casinos all over the country, and just as its freshly disclosed policy statement has required at least since March 2005.

Dated: January 12, 2007                                    Respectfully submitted,


                                                                          _____/s/_____
ROBERT J. JONKER                                  REBECCA A. WOMELDORF
DANIEL P. ETTINGER                                D.C. Bar No. 452034
JOSEPH A. KUIPER                                  Attorneys for Plaintiff
Warner Norcross & Judd, LLP                       Spriggs & Hollingsworth
900 Fifth Third Center                            1350 I Street, N.W., Suite 900
111 Lyon Street, N.W.                             Washington, DC 20005
Grand Rapids, MI 49503                            (202) 898-5800
(616) 752-2161

# **CERTIFICATE OF SERVICE**

I certify that on January 12, 2007, I electronically filed the above document via the Clerk of the Court's Generic Email Box, which will send notice of electronic filing to the following:

Gina Allery
U.S. Department of Justice
601 D St., N.W.
Washington, DC 20026
*Attorney for Defendants*

Conly J. Schulte
Shilee T. Mullin
Monteau & Peebles, LLP
12100 W. Center Road, #202
Omaha, NE 68144
*Attorneys for Intervenor*
*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians*

Nicholas Yost
Sonnenschein Nath & Rosenthal, LLP
685 Market Street, 6th Floor
San Francisco, CA 94105
*Attorney for Intervenor*
*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians*

Edward C. Dumont
Demian S. Ahn
Wilmer Cutler Pickering Hale & Dorr
2445 M Street, Nw
Washington DC 20037
*Attorneys for Intervenor*
*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians*

Elizabeth Lohah Homer
Homer Law, Chartered
1730 Rhode Island Avenue, NW, Suite 501
Washington, DC 20036
*Attorney for Amici*
*Allegan Chamber of Commerce, Barry County Chamber of Commerce, Deputy Sheriff's Association of Michigan, Friends of the Gun Lake Indians, Wayland Township, and Kalamazoo Regional Chamber of Commerce*

                /s/
                Rebecca A. Womeldorf