# CHECKLIST
# FOR GAMING ACQUISITIONS
# and I.G.R.A. SECTION 20
# DETERMINATIONS

Indian Gaming Management Staff
1849 C Street, N.W., MS-2070
Washington, DC 20240
(202) 219-4066
fax (202) 273-3153

February 18, 1997

POKAG001  4317

# Table of Contents

**PART 1 - LAND ACQUISITION - 25 CFR PART 151**

- I. 151.3 Land acquisition policy .................................................. Page 2
- II. 151.4 Acquisitions in trust of lands owned in fee by an Indian ....................... Page 2
- III. 151.5 Trust acquisitions in Oklahoma under Section 5 of the I.R.A. ................... Page 2
- IV. 151.6 Exchanges .......................................................... Page 2
- V. 151.7 Acquisitions of fractional interests ...................................... Page 2
- VI. 151.8 Tribal consent for non-member acquisitions ............................... Page 2
- VII. 151.9 Request for approval of acquisitions ................................... Page 3
- VIII. 151.10 On-reservation acquisitions ......................................... Page 3
  - B. 151.10(a) ........................................................ Page 3
  - C. 151.10(b) ........................................................ Page 3
  - D. 151.10(c) ........................................................ Page 3
  - E. 151.10(d) ........................................................ Page 3
  - F. 151.10(e) ........................................................ Page 3
  - G. 151.10(f) ........................................................ Page 4
  - H. 151.10(g) ........................................................ Page 4
  - I. 151.10(h) ........................................................ Page 4
- IX. 151.11 Off reservation acquisitions .......................................... Page 4
- X. 151.12 Action on requests .................................................. Page 5
- XI. 151.13 Title Examination .................................................. Page 5
- XII. 151.14 Formalization of acceptance ......................................... Page 5

**PART 2 - INDIAN GAMING REGULATORY ACT - 25 U.S.C. § 2719, SECTION 20**

- I. Section 20(a), 25 U.S.C. § 2719(a) ........................................... Page 6
  - A. Section 20(a)(1) .................................................... Page 6
  - B. Section 20 (a)(2)(A) ................................................ Page 6
  - C. Section 20 (a)(2)(B) ................................................ Page 6
- II. Section 20(b)(1), 25 U.S.C. § 2719(b)(1) ..................................... Page 6
  - A. Section 20 (b)(1)(B) ................................................ Page 7
  - B. Section 20(b)(1)(A) ................................................. Page 7
- III. Guidance for preparing NEPA documents ..................................... Page 8
  - Checklist of Environmental Issues for NEPA Review ............................ Page 10
- IV. Preparation of Section 20 documentation by area office .......................... Page 11

POKAG001 4318

# CHECKLIST FOR GAMING ACQUISITIONS

The Indian Gaming Management Staff (IGMS) is responsible for Indian Gaming functions and activities remaining with, or delegated to, the Secretary under the Indian Gaming Regulatory Act of 1988 (IGRA), 25 U.S.C. §§ 2701-2721. One of the functions is the review, analysis, and final processing of requests for the acquisition of land into trust for gaming. This function includes acquisitions either for a new gaming facility, or for the expansion of a present gaming facility if gaming will be conducted thereon.

In order to assist you in preparing a complete land acquisition package for review and final action, the IGMS has prepared this checklist for your use. The checklist is designed to address the factors found in Title 25, Code of Federal Regulations (CFR), Part 151, the requirements of Section 20 of the IGRA, and the environmental laws which most likely would be applicable. We also have included information on certain procedural steps that should be followed to assure that a complete file of the tribe's application, information, and supporting documentation is properly submitted to the Central Office. These procedural steps are:

A. All requests for the acquisition of land for gaming must be transmitted to the IGMS office regardless of whether the land is located on, contiguous to, or off the applicant's reservation. This directive applies to trust-to-trust, restricted-to- restricted/trust, and fee-to-trust land acquisitions. The authority to approve or disapprove land acquisitions for gaming is vested with the Assistant Secretary -Indian Affairs (AS-IA); however, the authority to accept title in trust for BIA is vested with the Area Director.

B. The acquisition package submitted to Central Office, IGMS must contain a complete file of information and documents which clearly indicates compliance with 25 CFR Part 151, IGRA, the National Environmental Policy Act (NEPA) and other applicable Federal laws, regulations, and Executive Orders. The Area Office's transmittal memorandum must contain Proposed Findings of Fact and Conclusions relative to 25 CFR Part 151, Section 20 of IGRA, and NEPA, and any other information deemed appropriate by the Area Director. Further, it must contain the Area Director's recommendations for approval or disapproval of the acquisition. For ease in cross-referencing to specific findings or conclusions, the acquisition package should be organized with an index, and all exhibits should be tabbed and numbered. The initial request or application received from the tribe should be kept intact and tabbed as one exhibit. For example, responses to the BIA's request for input/comments should be kept intact and tabbed as a single exhibit, e.g. the 30-day notices to states, county, city, etc. All of these documents can be under one tab with each full document manually numbered for ease in citation and location. No additions or deletions should be made to the tribe's application package. Any additional information obtained by BIA offices to supplement or clarify the tribe's application should be maintained separately and should be identified in a manner that will enable the reader to readily make a determination as to which office obtained or prepared the additional information.

C. The Area Director must independently analyze the factors, and make independent findings and recommendations even when the Tribe submitting the application has contracted the realty services program under Title I of the Indian Self-Determination and Education Assistance Act (ISDEA), or has entered into a self-governance compact pursuant to Title IV of the ISDEA.

D. When the acquisition is subject to Section 20 (b)(1)(A) of IGRA, 25 U.S.C. Sec. 2719(b)(1)(A), which requires consultation, a two-part Secretarial determination, and the concurrence of the Governor of the State, the Area Director must recite separate proposed factual findings to support a determination by the Secretary that the gaming establishment on newly acquired lands is in the best interest of the tribe and its members and is not detrimental to the surrounding community. The specific factors and consideration for the Section 20 analysis are identified in Part 2 of this Checklist.

E. When the acquisition satisfies one of the Section 20 exemptions other than (b)(1)(A), the transmittal memorandum from the Area Director must so indicate and must include an analysis establishing that such an exemption exists, and include supporting documentation, i.e., an appropriate Regional or Field Solicitor's legal opinion, in the acquisition file.

F. The completed acquisition package must be reviewed by the appropriate Regional or Field Solicitor to ensure that all legal requirements have been adequately addressed.

C. The Area Director's Memorandum must contain a statement certifying that the documents submitted for the acquisition are copies of the original documents.

## PART 1 - LAND ACQUISITION - 25 CFR PART 151

### I. 151.3 Land acquisition policy

☐ A. The Area Director's Proposed Findings of Fact and Conclusions must include a statement and statutory citation to the specific act(s) of Congress authorizing the trust acquisition, e.g., Section 5 of the Indian Reorganization Act (IRA), 25 U.S.C. § 465.

Additionally, the Area Director's Proposed Findings of Fact and Conclusions must include a discussion of applicable provisions in the tribe's governing documents authorizing the tribe to take the requested action.

☐ B. The Area Director must include a statement that indicates which circumstances listed in 25 CFR § 151.3 support the request for the trust acquisition, that is, § 151.3 (a) (1), (2), or (3) (respectively that the land is needed because the acquisition will facilitate tribal self-determination, economic development or Indian housing).

### II. 151.4 Acquisitions in trust of lands owned in fee by an Indian

☐ A. The trust acquisition package must include a discussion of the ownership status of the property, a legal land survey or other document that provides an accurate description of the property to be acquired, and a plat or map to show the distance and/or proximity of the property to the reservation, the reservation boundaries, or to trust lands, whichever is applicable (see also Part 1, Section VII, Paragraph A of this Checklist).

☐ B. The acquisition package must include a copy of the resolution of the appropriate governing body of the tribe authorizing the trust acquisition request and must include a copy or excerpt of the tribe's governing document, if any, which identifies the scope of authority for the tribe's actions. The resolution should include a request to take the land into trust, the exact legal description of the property, the location, the intended purpose, and a citation to the applicable portion of the tribe's governing document which permits the governing body to make the request. The description of the property must be identical throughout the acquisition package. Any discrepancies in the legal description should be noted and fully explained.

☐ C. The Area Director must provide an assurance that the information provided pursuant to 25 CFR § 151.4 was reviewed and found to be sufficient. The Area Director's assurance must include a brief summary of the tribe's history, organization, and governing practices to illustrate the tribe's operating standards. Legal issues must be reviewed by the appropriate Regional or Field Solicitor. A copy of the Solicitor's opinion or response must be included as part of the package.

### III. 151.5 Trust acquisitions in Oklahoma under Section 5 of the I.R.A.

☐ A. When 25 CFR § 151.5 applies, the acquisition package must include all the information required under Part 1, Section II of this Checklist.

### IV. 151.6 Exchanges

☐ A. When 25 CFR § 151.6 applies, the acquisition package must include all the information required under Part 1, Section II of this Checklist, in addition to information required in 25 CFR Part 152, if applicable.

### V. 151.7 Acquisitions of fractional interests

☐ A. When 25 CFR § 151.7 applies, the acquisition package must include all the information required under Part 1, Section II of this Checklist.

### VI. 151.8 Tribal consent for non-member acquisitions

☐ A. When 25 CFR § 151.8 applies, the acquisition package must include all the information required under Part 1, Section II of this Checklist.

☐ B. A copy of any written documentation, such as a letter or resolution, executed by the tribe proposing to acquire land on a reservation other than its own, to the tribe having jurisdiction over such reservation must be included as part of the package. This documentation should identify the property proposed for trust acquisition and the parties involved in the transaction.

Case 1:05-cv-01181-JGP    Document 664    Filed 01/12/2007    Page 5 of 13

- [ ] C. The acquisition package must also include a copy of the written consent of the tribe having jurisdiction over such reservation for the proposed acquisition. This documentation should also identify the property and the parties involved in the transaction.

## VII. 151.9 Request for approval of acquisitions

- [ ] A. The information required under 25 CFR Part 151 should be organized to provide a complete picture of the tribe's request. Tribes should be encouraged to submit their requests in a manner which will facilitate the analysis of the request. At the onset of a request, the tribe should be instructed on the nature of the required submissions which support the request. Documents received from the tribe should be kept intact. NO ADDITIONS OR DELETIONS SHOULD BE MADE TO THE TRIBE'S APPLICATION PACKAGE. ANY ADDITIONAL INFORMATION OBTAINED BY BIA OFFICES TO SUPPLEMENT OR CLARIFY THE TRIBE'S APPLICATION SHOULD BE MAINTAINED SEPARATELY AND IDENTIFIED IN A MANNER THAT WILL ENABLE THE READER TO READILY MAKE A DETERMINATION AS TO WHICH OFFICE OBTAINED OR PREPARED THE ADDITIONAL INFORMATION. Although there is no particular application format required, the organization of information should follow the following logical sequence: (1) The identification of the parties; (2) a citation of the statutory authority which authorizes the acquisition; (3) a statement justifying the need for the additional land [151.10(b)]; (4) a full and complete explanation of the intended purpose for the land [151.10(c)]; (5) a physical description of the location of the land; (6) present and past uses of the land; (7) proof of present ownership, or a description of those circumstances which will lead to tribal ownership; (8) a legal description supported by a survey or other document; (9) an indication of the location and proximity to the tribe's reservation, the reservation boundaries or to trust lands; (10) a plat/map indicating such location and proximity of the land to the reservation; and (11) the tribal resolution. The tribal resolution must include the information listed in Part 1, Section II, Paragraph B of this Checklist.

## VIII. 151.10 On-reservation acquisitions

- [ ] A. The notification process will be conducted by letter inviting the state and local governments having regulatory jurisdiction over the land to be acquired to provide written comments on potential impacts (regulatory jurisdiction, real property taxes, and special assessments). The notification letters should include information on the location of the proposed gaming facility, the scope of gaming proposed, and other pertinent information which will assist the consulted officials should they wish to comment on the proposed acquisition.

- [ ] B. 151.10(a): The Area Director must determine that there is statutory authority for the acquisition. A brief summary of the specific statute or act(s) of Congress should be provided along with an independent, factual analysis of the application of such statutory authority to the tribe's request. (See Part 1, Section I of this Checklist).

- [ ] C. 151.10(b): The Area Director must conclude that the tribe has sufficiently justified the need for the additional land. The Area Director's conclusion should be based on a factual finding which may be supported by independent information, or by information and evidence provided by the tribe. The tribe may justify its request by establishing that existing tribal land is inadequate for gaming because of size, location, and market conditions. In support of this contention the tribe may have developed a feasibility or market study, or a business plan which the Area Director should independently review to determine whether it supports the tribe's assertions.

- [ ] D. 151.10(c): The Area Director must conclude that the tribe has adequately described the intended purposes for the land.

- E. 151.10(d): NOT APPLICABLE

- [ ] F. 151.10(e): The Area Director must make a conclusive statement regarding the impact on the State and any political subdivisions expected to result from removing the land from the tax rolls. The Area Director will come to a conclusion on the basis of information received from the state and local governments having regulatory jurisdiction over the land to be acquired, and other independent information. At the expiration of the required

POKAG001 4321

30-day comment period for State and local governments, the appropriate BIA official will prepare a record that indicates the contacts made and the responses received, and that includes any other additional comments or information. The record will also include any objections made by the contacted governmental entities. The Area Director must consider any and all objections, and must provide an analysis of the merits of specific objections. The Area Director will include any information on the outcome of any objection referred to the tribe. Copies of the record on the 30-day notification process shall be included in the submission to the Central Office.

- G. 151.10(f): The Area Director must include, in the same manner as described in Part 1, Section VIII, paragraph F of this Checklist, a conclusion regarding any jurisdictional problems and potential land use conflicts. The Area Director's conclusion should be based on information received as a result of the BIA notification, on information obtained independently, or information known about the jurisdictional issues inherent in the status of Indian lands.

- H. 151.10(g): The Area Director must include an independent assessment of the impact on the BIA should the land be acquired in trust. The Area Director should consider the type of services required for the land, if any; the availability of staff to carry out the additional responsibilities; and such other considerations which may be relevant in making this assessment. In the assessment of the impact, an analysis is required of the intended and future uses of the property, and a statement should be written based on the analysis indicating the extent to which the BIA Agency and Area offices will be impacted by the proposed trust acquisition. A fully documented assessment is needed to assess how the added responsibilities (i.e. leases, rentals, easements, emergencies, environmental concerns, roads, traffic, etc.) will affect the present BIA staff. To state merely that the BIA's only duty to the property will be routine or administrative is insufficient. If the applicant tribe has contracted the realty services program under Title I of the ISDEA, or has entered into a self-governance compact under Title IV of the ISDEA, the Area Office should provide an analysis of the tribe's role in the supervision/administration of the land.

- I. 151.10(h): The acquisition package must include a pre-acquisition environmental site assessment, no matter whether the proposed acquisition is discretionary or non-discretionary, as required by 602 DM 2. This Departmental Manual release requires the assessments to be conducted or supervised by qualified individuals, as determined by the Bureau, and provides that assessments will generally be considered adequate for one year prior to the date of acquisition, with documented exceptions for real property located in adverse climatic or geographical areas.

With respect to discretionary acquisitions, the Area Director must also comply with the requirements of NEPA and its implementing regulations. NEPA is codified at 42 U.S.C. §§ 4321-4347. The NEPA regulations promulgated by the Council on Environmental Quality (CEQ) are published at 40 CFR Parts 1500-1508. In addition, the Area Director must comply with Departmental NEPA requirements in 516 DM 1-6, as well as the BIA-specific NEPA requirements in 516 DM 6, Appendix 4. The Bureau's NEPA Handbook is published in 30 BIAM Supplement 1. The *Checklist Environmental Issues for NEPA Review of Proposed Gaming-Related Actions* reproduced Part 2 of this Checklist must be included with NEPA documents which are being submitted the ASIA for review. A more detailed description of the pertinent NEPA requirements is provided in Part 2, Section III of this Checklist.

IX. 151.11 Off reservation acquisitions

- A. When 25 CFR 151.11 applies, the acquisition package must include all the information required under Part I, Section VIII, of this Checklist.

- B. The greater the distance the acquired land is from the tribe's reservation will require that the Area Director's analysis more fully justify the anticipated benefits to the tribe. The information obtained under Part 2, Section II(B) (best interests factors) of this Checklist may be considered, if the application requires submission of this information pursuant to Section 20 of the IGRA, in analyzing the tribe's application to determine if the acquisition sufficiently satisfies the anticipated benefit to the tribe. As the distance from the reservation increases, the greater the justification will have to support the additional benefits to the tribe.

- C. The Area Director must review the tribe's comprehensive economic development plan required under 25 CFR § 151.11(c), which specifies the anticipated financial benefits associated with the acquisition.

## X. 151.12 Action on requests

- A. The AS-IA will use the information provided by the Tribe, Superintendent, and Area Director to make a decision on the request. Therefore, the Area Director must ensure that the acquisition package is complete in all respects to allow for a timely and informed decision. The package must include all documents, exhibits, and information relied on or provided in support of the proposed acquisition. Should the AS-IA decide to approve the Tribe's application to acquire the land in trust for gaming, the Central Office will publish the required *Federal Register* notice.

## XI. 151.13 Title Examination

- A. The acquisition package must include an *Abstract of Title* or *Commitment for Title Insurance Policy* covering the property to be acquired. The title evidence must be examined by the appropriate Regional or Field Solicitor who must prepare a preliminary title opinion to identify any liens, encumbrances or other legal infirmities which may exist. The accuracy of all legal descriptions must be verified and must match the legal descriptions of the property contained in other documents within the acquisition package prior to submission to the appropriate Regional or Field Solicitor. Copies of correspondence or documented contacts between the Area Office and the Solicitor's Office must be included as part of the acquisition package. A draft of the instrument of conveyance must be prepared and provided to the Solicitor to ensure compliance with all legal requirements.

    After an Abstract of Title has been submitted by the tribe for the title evidence, an appraisal of the property by the BIA is required. The appraisal is used to alert the appropriate Regional or Field Solicitor of the value of the property in the event that office does not have authority to examine title evidence on property exceeding the value of $100,000.00. The Department of Justice is authorized to examine an Abstract of Title on the property valued at $100,000.00 or more.

## XII. 151.14 Formalization of acceptance

- A. The Area Director will be notified in writing of the AS-IA's approval of the acquisition request and authorized to proceed with the formal acceptance of the land in trust subject to satisfactory completion of all title requirements, and following expiration of the 30-day period after publication of the *Federal Register* notice required under 25 CFR § 151.12. A copy of the final title opinion by the appropriate Regional or Field Solicitor, and a copy of the approved and recorded conveyance instrument must be provided to the IGMS for inclusion as part of the file.

- B. The appropriate Regional or Field Solicitor's approval of the draft conveyance document must be obtained before a final instrument of conveyance is prepared and signed. A copy of the draft conveyance instrument should be included as part of the acquisition package.

- C. The approved instrument of conveyance must be recorded in the appropriate BIA title office. When fee property is approved for trust, the approved instrument of conveyance to trust should also be recorded in the appropriate county office.

## PART 2 - INDIAN GAMING REGULATORY ACT - 25 U.S.C. § 2719, SECTION 20

Section 20 of the IGRA, 25 U.S.C. § 2719, governs the use of land acquired in trust when the intended use of the land is for gaming. Section 20 of the IGRA prohibits gaming on lands acquired in trust after October 17, 1988, with certain exceptions.

The first section of this Part describes the exceptions to the gaming prohibition on lands acquired in trust after October 17, 1988. The second section of this Part describes the instances when the general prohibition on gaming on newly acquired lands will not apply to lands acquired in trust after October 17, 1988. The third section of this Part describes the responsibility of the BIA Area Office regarding compliance with the requirements of NEPA. The fourth section of this part describes the preparation of the Section 20 documentation by the Area Office for transmittal to Central Office.

All applications for the trust acquisition of land intended for gaming must be processed with Section 20 considerations in mind. Typically, the acquisition will be for the construction and operation of a gaming facility. There will be projects

however, which on first impression may not readily appear to be intended for gaming. For instance, if a tribe intends to expand an existing gaming facility through the addition of a hotel with additional gaming space thereon, the acquisition should be deemed to be for gaming. However, if a tribe intends to expand parking facilities for an existing gaming establishment, the acquisition should not be deemed to be for gaming because there is no gaming conducted in the parking lot. A tribe's contention that gaming on newly acquired lands is not prohibited because one or more exceptions apply will require a conclusive factual and legal finding that the particular exception does apply to the trust acquisition.

I. Section 20(a), 25 U.S.C. § 2719(a)

This section of the IGRA prohibits gaming on land acquired by the Secretary in trust for an Indian tribe after October 17, 1988, UNDER one of the following exceptions apply:

- A. Section 20(a)(1): The land to be acquired qualifies as either:

  - land that is located within the boundaries of the tribe's reservation as the reservation existed on October 17, 1988, OR

  - land that is contiguous to the boundaries of the tribe's reservation as the reservation existed on October 17, 1988. Include documentation establishing that the land is contiguous and the appropriate Field or Regional Solicitor's concurrence with this determination.

- B. Section 20 (a)(2)(A): The tribe had no reservation on October 17, 1988, AND the land is located in Oklahoma, AND:

  - the land to be acquired is within the boundaries of the Indian tribe's former reservation as defined by the Secretary, (2)(A)(i). Include the appropriate Field or Regional Solicitor's opinion that the land is within the tribe's former reservation, OR

  - the land to be acquired is contiguous to other land held in trust or restricted status by the United States for the Indian tribe in Oklahoma, (2)(A)(ii). Include documentation establishing that the land is contiguous and the appropriate Field or Regional Solicitor's concurrence with this determination.

When the application indicates that the proposed acquisition of land in Oklahoma is located in the Indian tribe's "former reservation," the Area Director must provide a legal opinion from the appropriate Regional or Field Solicitor's office that the land qualifies as "former reservation lands" and should be treated as such for the purposes of IGRA.

When the application indicates that the proposed acquisition is contiguous to other trust land, or to land held in restricted status by the United States for the Oklahoma tribe, the acquisition package must include documentation of the trust or restricted status of the land which is contiguous to the proposed acquisition. A plat or map showing the contiguous status of the respective parcels of land should be included in the acquisition package. The Area Director's findings should include all legal descriptions of the lands (lengthy descriptions can be noted as attachments, exhibits, etc.), references to significant dates such as the acquisition date and approval date of trust status. Any and all facts, historical and present, which will establish the finding that the proposed acquisition is contiguous should be discussed and included in the Area Director's findings. The appropriate Regional or Field Solicitor's concurrence that the land is contiguous must be included.

- C. Section 20 (a)(2)(B): The tribe had no reservation on October 17, 1988, AND the land is located in a State other than Oklahoma AND

  - such land is within the Indian tribe's last recognized reservation within the State or States within which such Indian tribe is presently located.

When the application indicates that the proposed acquisition is located within the Indian tribe's "last recognized reservation," the Area Director must provide documentation that the proposed acquisition is in the tribe's last recognized reservation. The Area Director's analysis of this issue must include documented information relating the history of the tribe to show that the tribe is presently located in the state in which the land proposed for trust acquisition is located. A legal opinion from the appropriate Regional or Field Solicitor's office addressing this issue must be included.

II. Section 20(b)(1), 25 U.S.C. § 2719(b)(1)

This section provides that the general prohibition on gaming on newly acquired lands will not apply under several circumstances. Because the circumstances numbered (b)(1)(B) are not frequently presented, they are discussed before (b)(1)(A).

- ☐ A. Section 20 (b)(1)(B): Gaming can be conducted on newly acquired land if the land(s) are taken in trust as part of:

  - ☐ a settlement of a land claim, (b)(1)(B)(i); OR

  - ☐ the initial reservation of a newly acknowledged Indian tribe given federal recognition under the Federal acknowledgment process, (b)(1)(B)(ii); OR

  - ☐ the restoration of lands for an Indian tribe restored to Federal recognition, (b)(1)(B)(iii).

When the application indicates that the proposed acquisition falls within one of these exceptions, the Area Director must provide documentation that the particular exception is applicable to the case. Copies of the enabling acts or legislation such as the settlement act, the restoration act, the reservation plan, the final determination of federal recognition and other documentary evidence relating to the tribe's history and existence must be included as part of the acquisition package. A legal opinion from the appropriate Regional of Field Solicitor's office concluding that the proposed acquisition comes within one of the above exceptions must be included.

- ☐ B. Section 20(b)(1)(A): Gaming can be conducted on newly acquired land if the Secretary:

  - ☐ Consults with the Indian tribe and appropriate State, and local officials, including officials of other nearby Indian tribes, and

  - ☐ Issues a two-part determination: that the gaming establishment on newly acquired lands (1) will be in the best interest of the Indian tribe and its members, and, (2) will not be detrimental to the surrounding community, and

  - ☐ Obtains the concurrence of the Governor of the State in which the gaming activity is to be conducted in the Secretary's two-part determination.

The BIA has been delegated responsibility to conduct the consultation on behalf of the Secretary. The consultation process must be completed by the Area Director at the Area Office level. Consultation will be conducted by letter inviting the applicant tribe and appropriate state (including the Governor), local and other nearby tribal officials to comment on the proposed acquisition by addressing questions/issues relating to the two-part determination. The consultation letter should include pertinent information regarding the proposed trust acquisition for gaming including information on the location of the proposed gaming facility, the scope of gaming proposed and other information which will assist the consulted officials to comment on the proposed acquisition. A consultation letter should always be sent to the Governor of the State in which the gaming activity is to be located.

- ☐ Appropriate state and local officials include the governor of the state in which the land is located and state and local government officials whose jurisdiction includes or borders the land.

- ☐ Nearby tribal officials include the tribal governing bodies of all tribes located within 50 miles of the site of the proposed trust acquisition.

The Area Director may decide that another method of consultation is necessary in addition to the consultation conducted by letter. When an additional method is used, the Area Director must fully describe the process and the outcome or results, and provide verification of the use of the process. For example, if public hearings or meetings were held copies of the hearing transcripts, minutes or videotapes must be provided as part of the file. Newspaper articles or other written verification of the public's response to the proposed acquisition should also be included to illustrate public sentiment. Sample letters are attached for your information. Note that two letters are used - one for the applicant tribe (13 factors); and one for the appropriate State, and local officials, including officials of other nearby Indian tribes (6 factors). It is recommended that the letters be adjusted to reflect the facts of the transaction being processed. Also, it is very important that this process be differentiated from the Part 151 notification process which requires the 30-day notice for determination of taxation, special assessments, services, zoning, etc. (151.10(e)).

The Area Director should provide a minimum of 30 days for the consulted officials to comment and respond to the consultation letter. In determining the proper length of the consultation period, the Area Director should take into consideration the number of parties contacted, the scope and magnitude of the proposed gaming project, the preliminary indications of public sentiment, support, opposition, the potential impact on other gaming operations and such other factors which likely will be issues of concern to the consulted parties. Additional time may be granted upon written request; however, the request should provide a good reason for the additional time.

- ☐ The consultation letters to the applicant tribe and to the appropriate state, local and nearby tribal officials must request specific information useful in making the

two-part determination. The responses provided, whether they oppose or support the proposed acquisition, should be supported by factual data and documentary information justifying the position taken. To assist the Secretary in determining whether the gaming establishment on newly acquired land will be in the best interest of the tribe and its members, the applicant tribe should be requested to address items such as the following:

1. Projections of income statements, balance sheets, fixed assets accounting, and cash flow statements for the gaming entity and the tribe prepared in accordance with Generally Accepted Accounting Principles and NIGC standards. There should be sufficient detail in expenses and assumptions to allow evaluation of the accuracy and reasonableness of the projections. Projections should cover at least the term of any financing or management agreement, but not less than three years.

2. Projected tribal employment, job training, and career development, including the basis for projecting an increase in tribal employment considering the off-reservation location of the facility, and the impact on the tribe if tribal members leave to take jobs off-reservation.

3. Projected benefits to the tribe from tourism and basis for the projection.

4. Projected benefits to the tribe and its members from the proposed uses of the increased tribal income.

5. Projected benefits to the relationship between the tribe and the surrounding community.

6. Possible adverse impacts on the tribe and plans for dealing with those impacts.

7. Any other information which may provide a basis for a Secretarial determination that the gaming establishment is in the best interest of the tribe.

☐ To assist the Secretary in determining whether the gaming establishment on newly acquired land will not be detrimental to the surrounding community, the officials consulted and the applicant tribe should be requested to address items such as the following:

1. Evidence of environmental impacts and plans for mitigating adverse impacts.

2. Reasonably anticipated impact on the s... structure, infrastructure, services, housing, c... munity character, and land use patterns of the surrounding community.

3. Impact on the economic development, income, and employment of the surrounding community.

4. Costs of impacts to the surrounding community and sources of revenue to accommodate them.

5. Proposed programs, if any, for compulsive gamblers and the source of funding.

6. Any other information which may provide a basis for a Secretarial determination that the gaming establishment is not detrimental to the surrounding community.

Consulted officials should be advised that the fact that an official does not have extensive information or documented proof on the items listed above should not prevent the consulted official from addressing the items to the extent possible.

Because the impacts of a gaming facility established newly acquired land will be difficult to quantify in conc... or tangible terms, the officials consulted should also invited to address such additional concerns or factors which they believe more fully demonstrate the actual or potential impact of the proposed gaming facility. The consulted officials should not be limited to the listed items.

III.  Guidance for preparing NEPA documents for proposed gaming-related actions

The following information provides general guidelines for compliance with the National Environmental Policy Act of 1969 (NEPA) in cases involving gaming-related Federal actions. The Area Director must comply with the requirements of NEPA when making recommendations pursuant to the two-part determination in Section 20(b)(1)(A) of the IGRA, even when this determination is made for lands already held in trust for an Indian tribe.

NEPA is codified in 42 U.S.C. §§ 4321-4347. Section 102 of NEPA, 42 U.S.C. § 4332, requires all Federal Agencies to include in every recommendation or report on proposals for major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on: (1) the environmental impact of the propos... action, (2) any adverse environmental effects which can... be avoided should the proposal be implemented; (...

POKAG001  4326

alternatives to the proposed action; (4) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity; and (5) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

In 1978, the Council on Environmental Quality (CEQ) promulgated regulations implementing NEPA in 40 CFR Parts 1500-1508. These regulations, which are binding on all Federal agencies, address the procedural requirements of NEPA and the proper methods for the administration of the NEPA process. Further guidance on NEPA compliance can be found in Department of the Interior Manual, Part 516, Departmental Manual 516 DM 6, Appendix 4 (augmented by a *Federal Register* Notice of July 7, 1995) addresses BIA's NEPA policy and procedures. The BIA's NEPA Handbook is published in 30 BIAM Supplement 1.

The law and regulations defining the parameters of NEPA are well-defined and explicit. The implementing regulations for NEPA require the use of an interdisciplinary approach, consultation with all interested parties, and a speedy commencement of the process (40 CFR § 1501.2). The NEPA regulations also require that the paperwork be concisely written (40 CFR § 1500.4), that the entire process be completed without delay (40 CFR § 1500.5), and that consideration of NEPA occur early in the planning process (40 CFR §§ 1501.1 and 1501.2). NEPA documents must be supported by evidence which is adequate to show that the agency in question has made sufficient environmental analyses (40 CFR § 1500.2(b)). The lead agency may, if it wishes, set specified page limits and time limits for NEPA documents (40 CFR § 1501.8); the BIA has so far not chosen to set such limits.

Under the NEPA process there are several levels of analysis that may be applied to a particular federal action. The level which will eventually be chosen for the analysis is generally dependent upon whether or not an undertaking could significantly affect the environment. The basic levels are: a categorical exclusion determination (CX), an environmental assessment (EA), and an environmental impact statement (EIS).

☐   A federal action may be categorically excluded from a detailed environmental analysis if it meets certain criteria, criteria which a Federal agency has previously determined would have no significant environmental impact. A number of agencies, including the BIA, have developed lists of actions which are normally categorically excluded from environmental evaluation under the NEPA regulations. See 516 DM 6 Appendix 4.

☐   The next level of analysis, the environmental assessment (EA), is used to determine whether or not a Federal action would significantly affect the environment (for the definition of "significantly" see 40 CFR § 1508.27). If it would not, the agency can then issue a Finding of No Significant Impact (FONSI). The environmental assessment is described in 40 CFR § 1508.9. An EA usually contains the following information: the need for the proposed action; the alternatives to the proposed action (always including the no-action alternative); the environmental impacts of the proposed action and the alternatives; and a listing of the agencies and persons consulted.

☐   If the EA determines that the environmental consequences of a proposed Federal undertaking may be significant, an environmental impact statement (EIS) is prepared. The EIS, the most comprehensive level of analysis, is described in 40 CFR § 1502. The EIS should discuss the purpose of, and need for, the action; the alternatives; the affected environment; the environmental consequences of the proposed action; mitigation measures; lists of preparers, agencies, organizations and persons to whom the statement is sent; an index; and an appendix (if any). It is also a good practice to include in a NEPA document a large-scale map with a legend, showing the proposed site in detail. A smaller-scale map with a legend, showing the site in relation to the surrounding features and areas is also a desirable feature of a NEPA document.

Following is a *Checklist of Environmental Issues for NEPA Review of Proposed Gaming-related Actions*. The Area Director must include this *Checklist* with NEPA documents which are being submitted to the ASIA for review. Diskette copies of the *Checklist* are available from the IGMS upon request.

# INDIAN GAMING MANAGEMENT STAFF
## Checklist of Environmental Issues for NEPA Review of Proposed Gaming-related Actions

Title of NEPA Document: _____ Area Office: _____

NEPA Document Number: _____ Case File Number: _____ Date: _____

Print Name & Title of Lead Area Preparer/Reviewer: _____

| Common Environmental Issues | Addressed in Document? | | Significant Impact?♣ | | Signature of BIA Field Specialist | Date |
|---|---|---|---|---|---|---|
| | Page(s) | No | Yes | No | | |
| Air Quality (40 CFR 50-85)▼ | | | | | | |
| Archaeological, Historical & Cultural (36 CFR 800)▼ | | | | | | |
| Coastal Zone Issues (15 CFR 930) (▼ if present) | | | | | | |
| Construction and Reclamation Activities | | | | | | |
| Crime Potential, Protection & Prevention | | | | | | |
| Current, Past & Future Cumulative Impacts♣▼ | | | | | | |
| Demographic Trends (▼ if alterations will be notable) | | | | | | |
| Energy (electrical, fuel, etc.) Resource Use & Changes | | | | | | |
| Fire Potential, Protection & Prevention | | | | | | |
| Floodplains, Wetlands and Riparian Zones▼ | | | | | | |
| Forests, Forestry Resources, and Logging | | | | | | |
| Geology, Seismic and Mining (▼ if hazards present) | | | | | | |
| Hazardous Substances and Wastes (40 CFR 260-373) | | | | | | |
| Health and Safety: OSHA (29 CFR 1900-1999, etc.) | | | | | | |
| Indian Religious Concerns (25 CFR 262, AIRFA)▼ | | | | | | |
| Land-use Plans (40 CFR 1500.2(c), 1501.2, etc.) | | | | | | |
| Noise (29 CFR 1910.95 & 1926.52, 40 CFR 205, etc.) | | | | | | |
| Non-hazardous Wastes (solid, liquid, confined gas)▼ | | | | | | |
| Paleontological Resources | | | | | | |
| Pedestrian and Vehicular Traffic Issues & Changes | | | | | | |
| Plant, Animal and Threatened & Endangered Sp.▼ | | | | | | |
| Prime and Unique Farm Lands (7 CFR 658.3-5)▼ | | | | | | |
| Protected, Sensitive or Special-management Areas▼ | | | | | | |
| Rangelands, Range Resources and Range Activities | | | | | | |
| Recreational/Subsistence Hunting, Fishing, Gathering | | | | | | |
| Releases (40 CFR 112-117, 40 CFR 300-373, etc.)▼ | | | | | | |
| Socio-economic Issues (tribe & other affected entities) | | | | | | |
| Visual Resources (light pollution, views, aesthetics) | | | | | | |
| Water Quality (surface, ground & drinking water)▼ | | | | | | |
| Water Quantities Affected and Needed | | | | | | |
| Other (specify) | | | | | | |
| Other (specify) | | | | | | |
| Other (specify) | | | | | | |
| Other (specify) | | | | | | |

♣ "Significance" is defined in 40 CFR 1508.27. An EA or an EIS must show an assessment of the degree of significance of any expected impa individual, cumulative, direct, indirect, beneficial, adverse, present, reasonably-foreseeable-future, residual and/or synergistic--of the propose action. See 42 U.S.C. 7609, 40 CFR 1501.2(a and b,) and 516 DM 5.3(B.) The term "cumulative impacts" is defined in 40 CFR 1508.7.
▼ Indicates those issues, at a minimum, which must be addressed in all EAs and EISes. Other issues must be addressed if they would be affected.

POKAG001 4328

## IV. Preparation of Section 20 documentation by area office

This section describes the duties of the BIA Area Office after completion of the Section 20 requirements for the proposed acquisition:

- ☐ Upon completion of the consultation process, (i.e. receipt of responses, expiration of allowed response time), the Area Director will review and prepare a summary of the comments and responses received from the consulted officials. When a response raises an issue with actual or potential negative implications which may affect a favorable two-part determination, the Area Director will analyze the issue and determine what action may be appropriate. The Area Director should request the applicant tribe to make an effort to resolve the issue. The tribe should be given 30 days to resolve the issue. Additional time may be granted upon written request; however, the requester must justify the need for the additional time. The Area Director should also advise the tribe that failure or reluctance to respond will result in the Area Director making conclusive findings on the issue without input from the tribe.

- ☐ Upon completion of all actions or activities relating to the proposed acquisition, including an independent analysis of all the information and factual evidence provided by the tribe and the parties consulted, the Area Director must prepare Proposed Findings of Fact addressing the two-part determination and the items of information relating to such a determination. The proposed findings made and conclusions reached must be supported by the facts, supporting exhibits or other documentation.

The Area Director's Proposed Findings of Fact should include an analysis by program officers (i.e. social services, law enforcement, finance, environmental and tribal operations), to ensure that aspects of those program areas have been adequately addressed by the tribe's application. For example, suppose that the tribe had indicated that in furtherance of its relationship with the surrounding community, the tribe and the local governments will enter into mutual-aid or cross-deputization agreements to facilitate better police services. Clearly, the law enforcement staff would provide a valuable analysis of the agreements and the merits of the proposal.

The Area Director's Proposed Findings of Fact should also include an analysis of all agreements relied on to arrive at conclusions on the two part determination. For example, if the management agreement is the document used to figure projections of income to the tribe, the Area Director's Proposed Findings of Fact must include an analysis and conclusion regarding the validity of the finding.

To assure that all important documents and issues are received and adequately reviewed and considered, the acquisition package should be organized in such a manner to allow easy access for review. The information and exhibits should be tabbed and indexed for easy reference. For purposes of organization, the Area Director's factual findings relative to the two-part determination should be placed under the topical heading identified for each of the two-parts. For example, the "Best Interest of the Tribe" category should serve as a topical heading, and be followed by facts, findings and conclusions on each factor listed under that category.

POKAG001 4329