### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MichGO, Michigan Gambling Opposition | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:05-cv-01181-JGP |
| | ) | Judge John G. Penn |
| KEMPTHORNE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| MATCH-E-BE-NASH-SHE-WISH | ) | |
| BAND OF POTTAWATOMI INDIANS, | ) | |
| | ) | |
| Intervenor | ) | |
| _____ | ) | |

**THE UNITED STATES' OPPOSITION TO PLAINTIFF'S MOTION FOR STAY PENDING APPEAL**

**INTRODUCTION**

The United States hereby opposes the Motion for Stay filed March 1, 2007 [#76], by

Plaintiff MichGO, requesting that the Court enjoin, pending appeal, the Secretary from placing a

147-acre parcel of land into trust for the Match-E-Be-Nash-She-Wish Band of Pottawatomi

Indians ("Gun Lake Band").[1]  The Secretary approved the acceptance of the land ("Bradley

_____

[1]MichGO claims that the United States departed from normal practice of imposing a self-stay on the trust acquisition.  Motion for Stay at 1-3.  Initially, the United States agreed not to take the land into trust while this case was under review in the district court without providing plaintiffs with 30 days notice.  As time passed, the United States requested that Plaintiff join the United States in seeking expedited review.  When Plaintiff refused to do so, the United States provided Plaintiff with more than 30 days notice and on November 22, 2006, informed this Court and Plaintiff that the United States planned to take the land into trust after March 5, 2007.  Plaintiff similarly delayed in filing its Motion for Stay, making it difficult for this Court and the United States to address this Motion in an orderly fashion.  Plaintiff was on notice that the United States intended to take the land into trust, but waited until Thursday, March 1, 2007, to file this Motion.

Property") into trust status pursuant to the Indian Reorganization Act ("IRA"), 25 U.S.C. § 465.

The Secretary intends to complete the acquisition of the land into trust on March 5, 2007 at 5:00

pm.

MichGO's complaint does not allege that the Secretary violated the IRA or its regulations

in deciding to accept the parcel into trust. Rather, MichGO's complaint asserts four causes of

action, the IRA is unconstitutional premised on the long-discredited non-delegation doctrine, the

National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4347, and the Indian Gaming

Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701-2721. On February 23, 2007, this Court rendered

its final decision [#72] granting the United States' Motion to Dismiss or in the Alternative

Motion for Summary Judgment. In its memorandum opinion, the Court found:

- That the Secretary's classification of the Bradley Property as the Gun Lake Band's initial reservation does not violate IGRA. Opinion at 12.

- That "upon consideration of the EA's extensive analysis of the cumulative environmental impacts of the Bradley Property, plaintiff's argument falls short of demonstrating that the actions of defendant were arbitrary, capricious, or an abuse of discretion[,]" in preparing an Environmental Assessment ("EA") instead of an Environmental Impact Statement ("EIS"). Opinion at 30. Moreover, the length and complexity of the EA do not militate in favor of preparing an EIS. Opinion at 15.

- The Secretary did not violate IGRA by acquiring the parcels into trust in the absence of a Tribal-State Gaming Compact because the Gun Lake Band does not need a compact to conduct Class II gaming. Opinion at 32-

33.

- Plaintiff's claim that Section 5 of the IRA violates the non-delegation

doctrine fails as a matter of law.  Opinion at 36-37.

In its Motion to this Court, MichGO relies on its NEPA and IGRA "initial reservation"

claims as a basis for the requisite likelihood of success on the merits to obtain a stay or injunction

pending appeal.  However, Plaintiff's "initial reservation" IGRA claim would survive the United

States taking land into trust, so that claim cannot serve as a basis for arguing likelihood of

success on the merits.  With respect to NEPA, MichGO also fails to demonstrate a likelihood of

success on the merits.  MichGO claims that the Environmental Assessment did not adequately

address the traffic issues, despite the fact that the Allegan County Road Commission and the

Michigan Department of Transportation (the two entities with jurisdiction) approved the

mitigation measures.  Although Plaintiff may be dissatisfied with the results of the NEPA review,

NEPA does not guarantee a particular result.  MichGO fails to show a likelihood of success on

these issues and for the reasons set forth below, Plaintiff's Motion should be denied.

### STANDARD OF REVIEW

When addressing a Motion for Stay Pending Appeal, a court examines (1) the likelihood

that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the

moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed

if the court grants the stay; and (4) the public interest in granting the stay.  Cuomo v. U.S.

Nuclear Regulatory Commission, 772 F.2d 972, 974 (D.C. Cir. 1985), citing WMATA v.

Holiday Tours, Inc., 559 F.2d 841, 843 (D.C.Cir.1977).

**Argument**

Plaintiff fails to make a sufficient showing on any of the elements required to justify a stay pending appeal and their motion should be denied.

**A.    MichGO cannot show a substantial likelihood of success on the merits**.

Plaintiff's arguments in support of the current Motion are the same as those presented in Plaintiff's Complaint and their Response to the United States' Motion to Dismiss or in the Alternative for Summary Judgment, which this Court dismissed.  Plaintiff has not made a convincing case that the Court's assessment of the merits of Plaintiff's case was erroneous.

First, MichGO claims a likelihood of success on the merits of its challenge to the Secretary's decision to prepare an EA and issue a Finding of No Significant Impact ("FONSI"), instead of preparing an EIS.  Plaintiff relies on two bases for this assertion 1) that the United States failed to address the significant impacts from increase traffic generated by the casino, Motion for Stay at 12-14, and 2) that the 2005 Checklist for Gaming Acquisitions requires the preparation of an EIS, Motion for Stay at 14-16.

In its Opinion, this Court properly applied the four-part test to determine if a FONSI was properly issued: 1) whether the agency has accurately identified the relevant environmental concern; 2) whether the agency has taken a hard look at the problem in preparing the EA; 3) whether the agency has made a convincing case for its finding within the FONSI; and 4) if the agency does find an impact of true significance, preparation of an EIS can be avoided only if the agency finds that the changes or safeguards in the project sufficiently reduce the impact to a minimum.  Opinion at 16, citing Grand Canyon Trust v. FAA, 290 F.3d 339, 340-41 (D.C. Cir. 2002).  As the Court recognized, the United States analyzed the full range of potential

environmental impacts of taking the property into trust, took a hard look at the problems

associated with the land acquisition and building of the casino, and mitigated the impacts of

those problems to a minimum. Opinion at 16. Therefore, the United States' decision not to

prepare an EIS was not arbitrary, capricious or an abuse of discretion.

In their Motion for Stay, Plaintiff takes issue with this Court's finding that the United

States adequately addressed the issue of traffic in the EA. Motion for Stay at 13. As the Court

recognized, the United States identified the traffic-related concerns. Opinion at 28. Once the

United States identified the traffic-related concerns, it mitigated those concerns to a minimum by

implementing enforceable mitigation measures. Id.; AR at 189-90, 221-22. These mitigation

measures are supported by both the Michigan Department of Transportation and the Allegan

County Road Commission, the local authorities with jurisdiction over the intersections at issue.

Opinion at 29-30. Therefore, the United States has met the requirements of NEPA and the D.C

Circuit's four-part test for reviewing a FONSI.

Plaintiff's NEPA argument ignores the fact that NEPA imposes only procedural

requirements, but does not guarantee a particular result. Ohio Forestry Ass'n v. Sierra Club, 523

U.S. 726, 737 (1998). While Plaintiff may disagree with that result, they cannot demonstrate that

the United States failed to comply with NEPA's procedures or that the decision to prepare an EA

instead of an EIS was arbitrary, capricious, or an abuse of discretion.

This Court also dismissed Plaintiff's argument that the 2005 Checklist for Gaming

Acquisitions, Gaming-Related Acquisitions and IGRA Section 20 Determinations ("2005

Checklist") mandates the preparation of an EIS, because it is undercut by the ruling in TOMAC

v. Norton, 433 F.3d 852, 862 (D.C. Cir. 2006). In TOMAC, Plaintiff argued that the CEQ

guidelines mandate that the length and complexity of the EA necessitates an EIS. The D.C.

Circuit rejected this argument and held that "[w]hat ultimately determines whether an EIS rather

than an EA is required is the scope of the project itself, not the length of the agency's report.'"

TOMAC at 862. As the Court recognized, if the CEQ guidelines do not bind the agency to

produce an EIS, TOMAC at 862, certainly the agency is not bound to produce one by its own

internal checklists. Op. at 15 n.14.

Furthermore, the United States maintains that the 2005 Checklist is irrelevant to the

instant case because the memorandum identified by Plaintiff is dated March 7, 2005, and the

checklist is dated March 2005. However, the Finding of No Significant Impact (FONSI) in this

case was issued on February 7, 2004, and the Regional Office signed off on the fee-to-trust

acquisition on March 24, 2004, almost a year before the memorandum and checklist were

distributed. Therefore, at the time this checklist was issued no action was pending at the

Regional Office. The only pending action was the Associate Deputy Secretary's final approval of

the Gun Lake Band's land acquisition, which he granted on April 18, 2005. Therefore, the

March 2005 Checklist, designed to assist the Regional Offices in preparing complete land

acquisition packages for review and final action, is irrelevant to this case. See Memorandum and

Checklist at page 1. The Checklist is also not a rule or regulation and is not binding. See United

States Response to MichGO's Post-Hearing Statement [#69] at 2-4.

For the foregoing reasons, MichGO cannot demonstrate a likelihood of success on the

merits.

**B.      Plaintiff is not entitled to injunctive relief because it has failed to show sufficient
         harm.**

MichGO improperly seeks extraordinary relief from this Court without demonstrating that it will suffer irreparable harm absent a stay. Contrary to the requirement that MichGO show that it will suffer an injury that is "both certain and great" and "of such an imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm," Wisconsin Gas Co. v. F.E.R.C., 758 F.2d 669, 674 (D.C. Cir. 1985), MichGO identifies no cognizable harm that will result from the denial of the requested relief. MichGO's claim of irreparable harm absent emergency relief is premised upon the assumption that the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a(a), forecloses review of some of their claims once the land has been taken into trust. Motion for Stay at 9-12.

### 1.    The United States' Intent

The United States has stated that it intends to take the land into trust on March 5, 2007. "[W]hen the United States claims an interest in real property based on that property's status as trust or restricted Indian lands, the Quiet Title Act does not waive the Government's immunity." United States v. Mottaz, 476 U.S. 834, 843, 106 S.Ct. 2224 (1986). As such, if the relief requested by Plaintiff effectively alters the status of the land as trust land, the United States' sovereign immunity bars Plaintiff's claim. See Shivwits Band of Paiute Indians v. Utah, 428 F.3d 966, 974 -978 (10th Cir. 2005), Neighbors for Rational Development v. Norton, 379 F.3d 956, 961 (10th Cir. 2004). A plaintiff cannot avoid the QTA's impact by characterizing their claim as falling under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706. Block v. North Dakota, 461 U.S. 273, 286 n. 22 (1983); see also Alaska v. Babbitt, 182 F.3d 672, 674 (9th Cir. 1999); Alaska v. Babbitt, 38 F.3d 1068, 1072-73 (9th Cir. 1994); Ducheneaux v. Sec'y of Interior, 837 F.2d 340, 342 (8th Cir. 1988); Metropolitan Water District v. United States, 830

F.2d 139, 143-44 (9th Cir. 1987); <u>Florida v. United States Dep't of Interior</u>, 768 F.2d 1248,

1254-55 (11th Cir. 1985).

      2.       **The effect on MichGO's claims**

Plaintiff alleges that the United States violated NEPA by failing to prepare an EIS in

conjunction with the trust acquisition (Count I), that the classification of the parcels as the "initial

reservation" of the of the Band violates IGRA (Count II), that the United States cannot place the

parcels into trust because the Band does not have a Tribal-State gaming compact (Count III), and

that the IRA violates the non-delegation doctrine (Count IV).  Complaint at 16, 36, 39, 41.

Plaintiff is correct that the QTA would preclude review of some of these claims.  Motion for Stay

at 9-12.  In particular, the QTA will bar Plaintiff's NEPA and IRA claims once the land is taken

into trust because the relief requested, preparation of an EIS and a declaration that the IRA is

unconstitutional, would effectively alter the status of the land.

The preparation of an EIS would require the Secretary to revisit the major federal action

that necessitated NEPA compliance.  In this case, that is the acquisition of the land into trust.

Once the Secretary acquires the land into trust, the Court will lack jurisdiction because:

> [A]ny claim seeking to re-examine issues unique to the trust acquisition is moot
> because the court is without authority to provide any relief. "When events occur
> that prevent the ... court from granting any effective relief, an issue is moot."
> *Casad v. United States Dep't of Health & Human Servcs.,* 301 F.3d 1247, 1254
> (10th Cir.2002). Assuming for the sake of argument the district court considered
> the merits of Neighbors various claims and concluded the Secretary had not
> complied with the National Environmental Policy Act or the trust acquisition
> regulations, the district court could theoretically order the Secretary to now
> consider the appropriate factors. The district court, however, has no power to
> divest the United States of the property and Neighbors does not allege the
> Secretary has power to reconsider its decision. Requiring the Secretary to re-
> examine its trust acquisition decision would not provide Neighbors with any
> meaningful relief and would be a waste of agency resources-not to mention the

judicial resources that would be consumed in evaluating the sufficiency of the
Secretary's initial considerations. Since the Secretary has acquired title to the
property, the issue is moot.

See Neighbors at 965.

The QTA would also bar Plaintiff's IRA claim because a declaration that the IRA is

unconstitutional would have the effect of reversing the Secretary's decision to place the land into

trust.  Finally, Plaintiff's claim that the United States cannot take the land into trust absent a

Tribal-State Compact would be moot once the land was taken into trust.

However, contrary to Plaintiff's assertion, the QTA would not bar an opportunity to

challenge whether the trust parcel qualifies as the "initial reservation" of the Gun Lake Band

under Section 20 of IGRA.  Motion for Stay at 18-20.  The Secretary's determination under

Section 20 of IGRA, 25 U.S.C. § 2719, is a final agency decision separate from the Secretary's

decision to acquire the parcel into trust, and is independently reviewable under the APA

regardless of the trust status of the land.  This is demonstrated by cases addressing Section 20 of

IGRA, where the land in question is already taken into trust, and the courts were called upon to

determine whether they were eligible for gaming under Section 20.  Sac & Fox v. Norton, 240

F.3d 1250, 1257 (10th Cir. 2001); Confederated Tribes of Coos, Lower Umpqua, and Siuslaw

Indians v. Babbitt, 116 F. Supp. 2d 155, 157 (D.D.C. 2000); Grand Traverse Band of Ottawa and

Chippewa Indians v. U.S. Attorney for Western Dist. of Michigan, 198 F. Supp. 2d 920, 925

(W.D. Mich. 2002).

Thus, even if the land is taken into trust, MichGO's Section 20 IGRA challenge remains

for determination under the APA.  MichGO's stated purpose is "to protect the citizenry and

quality of life in its community by opposing the proliferation of gambling venues."  Complaint at

7, ¶ 12. As such, MichGO will still be able to pursue this goal once the land is taken into trust

because it would still be possible for the Bradley Property to be declared ineligible for gaming.

As discussed earlier, Plaintiff must demonstrate that its harm will be "both certain and great."

Wisconsin Gas Co. v. F.E.R.C., 758 F.2d at 674.[2] Plaintiff's assertions regarding further judicial

review of their weak claims does not satisfy this high standard. MichGO has not demonstrated

sufficient harm in the taking of the Bradley Property into trust pending appeal to warrant a stay.

**C.    An injunction pending appeal would harm other parties and does not serve the public interest.**

The Associate Deputy Secretary for the United States Department of the Interior, James

E. Cason, in the attached affidavit identifies the harm that the interests of the United States and

the Tribe will suffer should the requested emergency relief be granted. Affidavit of James E.

Cason at 3, ¶ 6. The Gun Lake Band has waited twenty-two months since the Secretary

determined to acquire the Bradley Property in trust for the Band and any further delay will

prevent the Band from taking advantage of the economic opportunities afforded it by Congress

through IGRA. Id. Therefore, MichGO cannot meet its burden of demonstrating that an

injunction pending appeal would not substantially injure other interested parties.

Nor has MichGO demonstrated that the public interest would be furthered by an

injunction pending appeal. The agency action at issue in this appeal serves the important federal

policy of promoting strong Indian self-government. The federal government has a long-

recognized policy of "furthering Indian self-government." Morton v. Mancari, 417 U.S. 535, 551

---

[2] In CETAC v. Norton, No. 06-5354 (D.C. Cir.), Plaintiff's attorneys are litigating the same gaming issue, whether the parcel at issue fits within the "initial reservation" exception, although the land has been taken into trust.

(1974); Affidavit of James E. Cason at 4, ¶ 7. In analyzing whether injunctive relief would

advance the public interest, the courts properly consider whether an injunction would further this

policy. See Prairie Band of Potawatomi Indians v. Pierce, 253 F.3d 1234, 1253 (10th Cir. 2001)

(finding that "tribal self-government may be a matter of public interest"); Seneca-Cayuga Tribe

of Oklahoma v. Oklahoma, 874 F.2d 709, 716 (10th Cir. 1989) (affirming grant of injunction

where "injunction promotes the paramount federal policy that Indians develop independent

sources of income and strong self-government"); Bowen v. Doyle, 880 F. Supp. 99, 137

(W.D.N.Y. 1995) (finding "the public's interest and the interests of [an Indian tribe] coincide"

insofar as "there is a strong federal policy favoring tribal self-government [and] tribal self-

sufficiency").

No such policy would be advanced by a grant of emergency relief requested in this case.

Rather, land is being accepted into trust on behalf of the Gun Lake Band by the Department of

the Interior for the purpose of providing a land base to a once-terminated Tribe. Such plans are

in accord with the express intent of Congress to provide a "means of promoting tribal economic

development, self-sufficiency, and strong tribal government[]." 25 U.S.C. § 2702(1). The

balance of harms and the public interest strongly favor denial of the requested relief.

### CONCLUSION

For the foregoing reasons, and particularly due to MichGO's failure to meet its burden to

show likelihood of success on the merits, the Court should deny MichGO's request for the

extraordinary relief of a stay or injunction pending appeal.

Dated: March 2, 2007                           Respectfully submitted,

MATTHEW J. McKEOWN
<u>Acting Assistant Attorney General</u>
United States Department of Justice
Environment and Natural Resources Division


          /s/
GINA L. ALLERY
D.C. Bar No. 485903
Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
Indian Resources Section
P.O. Box 44378
L'Enfant Plaza Station
Washington, D.C.  20026-4378
(202) 305-0261

<u>OF COUNSEL</u>:
MARIA WISEMAN
United States Department of the Interior
Office of the Solicitor
Washington, DC