## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MICHIGAN GAMBLING                      )
OPPOSITION ("MichGO"), a               )
Michigan non-profit corporation,       )
                                       )
        Plaintiff,              )
                                       )
        vs.                     )     Case No.  1:05-CV-01181-JGP
                                       )
GALE NORTON, in her official           )
Capacity as SECRETARY OF THE )
UNITED STATES DEPARTMENT )
OF THE INTERIOR, et. al.               )     **DECLARATION OF CHAIRMAN**
                                       )     **SPRAGUE IN OPPOSITION TO**
        Defendants.             )     **MICHGO'S MOTION FOR**
                     )     **INJUNCTION PENDING APPEAL**
_____)
                                       )
MATCH-E-BE-NASH-SHE-WISH )
BAND OF POTTAWATOMI                    )
INDIANS, a federally-recognized        )
Indian Tribe,                          )
               Intervenor.      )
_____)

Chairman D.K. Sprague, being over eighteen (18) years of age, states as follows:

1.     The information contained in this Declaration is based upon my personal knowledge, and I am competent to testify to the matters herein if called to do so in any proceeding.

2.     As I stated in my June 27, 2005 Declaration in Support of Motion to Intervene in this action, which is incorporated herein by reference, I am the duly elected Chairman of the Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians, commonly known as "the Gun Lake Tribe" (hereinafter "Tribe"), a federally-recognized Indian tribe. I have served in this capacity for over fourteen years.



EXHIBIT

2

05-CV-01181 JGP

3.     In my capacity as Chairman, I am the primary representative of the Tribe and preside over the Tribe's governing body, the duly elected Tribal Council.

4.     The Tribe has no reservation or trust lands and, since 1999 when the Tribe became federally recognized, the Tribe has sought to acquire federal trust land for its initial reservation. Accordingly, in August 2001, the Tribe submitted a Fee-to-Trust Application to the Department of Interior to accept two adjacent parcels of land totaling 147.48 acres into trust (hereinafter "Bradley Tract").

5.     The Bureau of Indian Affairs ("BIA") issued its final Environmental Assessment ("EA") for the acquisition in December 2003. The comment period on the EA closed on February 10, 2003, after an unusually long seventy-five day comment period (the normal comment period is thirty days). The Secretary issued a "Finding of No Significant Impact" ("FONSI") for the project on February 27, 2004. On May 13, 2005, the BIA published notice of the Secretary's decision to accept the Bradley Tract into trust and on June 13, 2005, MichGO filed the instant lawsuit. The administrative record was filed in this case on November 18, 2005, and the Tribe and the United States filed motions seeking dismissal of this case on January 6, 2006. MichGO filed its Response on March 31, 2006, to which the United States and Tribe replied on April 28, 2006. Thereafter, on October 27, 2006, the United States informed the parties and Court of its intent to accept the land into trust on January 5, 2007, but later revised that date to March 5, 2007. The Court conducted a hearing on the parties' dispositive motions on November 29, 2006.

6.     The Tribe and its members seek to have the United States accept the Bradley Tract into trust because they have determined that to improve the Tribe's and its members' economic well-being and to provide greater self-determination and self-sufficiency, the Tribe

should seek to establish a gaming and entertainment facility on its initial reservation. (The Tribe is required by IGRA, 25 U.S.C. § 2710, to use its revenues from the proposed facility to fund social programs for the Tribe and its members for tribal governmental operations, and to provide further financial assistance to its Members and existing underfunded programs.) Throughout this lawsuit, MichGO has alleged that the Tribe's intent to operate a gaming facility on the Bradley Tract is inconsistent with promises made by the Tribe to its members and the federal government. This allegation has *no* basis in fact. The Tribe's duly adopted Constitution does not contain any prohibition on gambling. The promise to which MichGO refers was contained in a *draft* constitution that was never adopted by the Tribe or its members.

7.      Earnings from the proposed gaming facility will provide much needed revenue for the Tribe and its members for numerous governmental programs and services. Such programs and services include higher education, rental housing assistance, emergency needs, mental and medical health care, home buying assistance, home revitalization assistance, youth programs and elder care. Currently, the Tribe lacks sufficient funding to fully fund any of these programs or services.

8.      The gaming facility is also vital to the Tribe because the Tribe's members are in dire need of jobs, as demonstrated by the Tribe's employment rate. As stated in the EA (Administrative Record p. 18), at the time of its issuance, the Tribe's unemployment rate was an astronomical 27%, which, at that time, was six times higher than that of non-members; and only 26% of Tribal members own their own home, as compared to 83% of non-members residing in the area. Clearly, the Tribe's members are struggling to survive on the most basic level.

9.      The facility will not only benefit the Tribe and its members, but also the local community. The gaming facility is expected to create 1800 direct and 3100 indirect jobs, which

will serve to assist the State of Michigan's high unemployment rate. In fact, local support for the Tribe's project is overwhelming. The Tribe has been blessed with the support of those who have filed amicus briefs—Wayland Township, Deputy Sheriff's Association of Michigan, Friends of the Gun Lake Indians, Barry County Chamber of Commerce, Kalamazoo Regional Chamber of Commerce, and Allegan Chamber of Commerce—in support the United States' decision to take the land into trust. In 2002, the Michigan legislature enacted Resolutions approving a Class III gaming compact between the State of Michigan and the Tribe. Also, the Tribe has received the support of many organizations that have written letters of support on its behalf. These organizations which have recently voiced this support include: the Deputy Sheriff's Association of Michigan ("DSAM") (Letter to Granholm from DSAM (Jan. 22, 2007), attached hereto as "Exhibit A"); Southwest Michigan Building & Construction Trades Council ("SMBCTC") (Letter to Granholm from SMBCTC (Dec. 11, 2006), attached hereto as "Exhibit B"); Kalamazoo Regional Chamber of Commerce (Letter to Granholm from Kalamazoo Chamber (Jan. 31, 2007), attached hereto as "Exhibit C"); Ironworkers Local 340 (Letter to Chairman Sprague from Ironworkers Local 340 (Oct. 31, 2006), attached hereto as "Exhibit D"); West Michigan Plumbers, Fitters and Service Trades Local Union No. 174 (Letter to Chairman Sprague from West Michigan Plumbers (Oct. 31, 2006), attached hereto as "Exhibit E"); West Michigan Trades Council (Letter to Chairman Sprague from Council (Oct. 31, 2006), attached hereto as "Exhibit F"); and Wayland Area Chamber of Commerce (Letter to Granholm from Wayland Chamber (Feb. 2007), attached hereto as "Exhibit G").

10.    Like any government, the Tribe seeks to provide a better life for its members and future generations. The gaming facility is the only means available to the Tribe to realize this goal.

11.    However, the Tribe's casino project, which is expected to remedy the employment, homelessness, and substandard living conditions for tribal members and thousands of area residents, cannot begin until the United States acquires title to the Bradley Tract in trust for the Tribe's benefit. In fact, it is expected to take at least fourteen (14) to sixteen (16) months after the land is in trust before the gaming facility can begin operation. The Tribe will be unable to do such preliminary matters as secure financing for the casino facility prior to the land being acquired by the United States in trust for the Tribe's benefit. Additionally, the National Indian Gaming Commission ("NIGC") has informed the Tribe that it will not approve the Management Agreement or financing documents between the Tribe and its partner Station Casinos, Inc.— which is a prerequisite to the Tribe's commencement of gaming—prior to the land being taken into trust.

12.    It has been three (3) years since the Secretary issued the FONSI for the Bradley Tract acquisition and almost two years since the Secretary made the final decision to acquire the land in trust and MichGO initiated this lawsuit. Further delay in acquiring the land will permanently deprive tribal members of the benefits of the Tribe's sovereign and statutory right to conduct gaming to advance tribal economic development and self-sufficiency. In some respects that deprivation will be permanent and irreparable. For example, since the initiation of this lawsuit, six (6) Tribal Members have died. Children continue to be born and grow up without the benefit of health programs and educational opportunities that would have provided them with lifelong benefits. If the trust acquisition is delayed any further, there will be even more Tribal members who will never realize the congressionally-intended benefits associated with this project.

13.    Since it was deprived of its land, without its consent, 170 years ago, the Tribe has fought to regain the ability to exercise its sovereign right of territorial sovereignty. Until the Tribe has trust lands, it will be unable to fully realize its rights as a federally-recognized Indian tribe. 25 C.F.R. § 83.12. Any further delay continues to perpetrate the injustice that has been ongoing for nearly two centuries.

14.    The Tribe has lost millions of dollars in revenue solely because of this lawsuit. This revenue would have provided sorely needed benefits to the Tribe's 309 Members, including: medical, educational, housing, nutrition, law enforcement and other assistance. This lawsuit has also prevented many tribal members and area residents from obtaining gainful employment and allowing them to provide for their families, leaving them instead to continue to live in substandard conditions and make difficult choices.

15.    An injunction further delaying the casino project pending briefing, argument, and final resolution on appeal would cause even more damage to the Tribe and its members by unnecessarily continuing joblessness, homelessness, poverty, and substandard health care, living conditions and education.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

_____        _____
Dated                    Chairman/D.K. Sprague, Declarant

6



# Deputy Sheriff's Association of Michigan

January 22, 2007

The Honorable Jennifer M. Granholm
Governor, State of Michigan
P.O. Box 30013
Lansing, Michigan 48909

Re: Class III Compact with Gun Lake Tribe

Dear Governor Granholm,

The Deputy Sheriff's Association of Michigan (DSAM) congratulates you on your re-election to another term to govern our great State of Michigan.

I am writing today to convey DSAM's support for a tribal-state gaming compact for the Gun Lake Tribe's proposed casino in Allegan County. Upon receiving an endorsement request from Gun Lake Tribal Chairman D.K. Sprague, DSAM conducted an in-house investigation into the impacts of Michigan tribal casinos on law enforcement. This was accomplished through personal contacts with Michigan Sheriffs with tribal gaming operations within their jurisdictions, on-site casino evaluations, and a review of crime statistics published by the Michigan State Police. In addition, I personally attended the public meetings held by casino opponents in Allegan County to gain first hand knowledge of their concerns.

Our investigation concluded that there is no measurable increase in the rate of violent crime, prostitution, or narcotics violations attributable to Michigan tribal casinos. We found that these operations make significant contributions to law enforcement and public safety; in fact, they help to prevent criminal activities associated with increased visitors to these communities. In addition, we found that tribes are stepping up to the plate to help fund infrastructure improvements associated with increased vehicle traffic and people.

Tribal casinos have created regional employment opportunities for both Native and non-Native Americans. There is a strong correlation between employment levels and crime rates.

Without exception, the sheriffs surveyed in our investigation reported excellent working relationships with very capable and trusted tribal police departments. Most tribal police officers and county deputies have been cross-deputized by each respective department to provide seamless and professional law enforcement services on and off the reservations. We further discovered that, at times, tribal police officers take calls for the local law enforcement agency if that agency cannot readily respond; further demonstrating great cooperation and coordination of law enforcement efforts.

West Michigan had a first hand experience in December 2006 in the cooperation between tribal and county police. Two of the Pokagon Band's police officers received a radio alert to look for suspected bank robbers in the Berrien County area. Tribal officers saw the suspect vehicle and initiated the pursuit; they played a key role in the eventual apprehension of the suspects.





EXHIBIT

A

05-CV-01181 JGP

Governor Granholm
January 22, 2007 — Page Two

DSAM's research on tribal casinos is supported by the findings of Mr. Donald Holecek, Director of the Tourism Resource Center at Michigan State University. Mr. Holecek was quoted in The Grand Rapids Business Journal on August 21, 2006: "There are several issues that are frequently brought up, that casinos bring with them more bankruptcies, more crime, more family-related problems, and the list kind of goes on and on. But when people have really taken a look at this, it just doesn't exist." Upon reading the Business Journal, I personally contacted Mr. Holecek, discussed the article with him and read to him the above quote. He stated the Business Journal quoted him correctly.

It is important to note that all of the tribal facilities DSAM examined operate under gaming compacts with the State of Michigan that require them to pay a percentage of revenue to local government. These payments generate a tremendous amount of direct funding for local law enforcement. Sheriffs and police chiefs report that funding from 2% revenue sharing has improved their departments. One sheriff reported that the tribe completely funds a six-officer multi-jurisdictional traffic unit. The revenue he receives fully funds and equips a twenty-two officer SWAT team. Our investigation found that local revenue sharing has allowed sheriffs to purchase equipment they would not have been able to afford such as: in-car computers; camcorders; global positioning systems for patrol cars; new scuba diving equipment; laser finger print systems; and bullet proof vests for officers.

On January 19, 2007, New Buffalo Township Clerk Rolland Oselka (Berrien County) announced that the township and Berrien County have entered into an agreement with the Sheriff to provide five new full time deputies to begin patrol duties solely within the township. The township currently has no paid police officers. New Buffalo Township is home of the soon-to-be-open Four Winds Casino. Mr. Oselka stated the funds to pay for the deputies' salaries and equipment will come from revenues the casino is required to pay local units of governments according to the compact the Pokagon Band of Potawatomi Indians signed with the state. In addition, Berrien County Administrator, Bill Wolf, announced today that 45% of the 2% casino revenues would be spent on public safety.

Revenue sharing payments like those of the tribal operations are unique among economic development projects. From a law enforcement perspective, a comparison to corporate big box stores or large-scale amusement parks is appropriate. These projects are similar in size and attract a comparable amount of visitors. To our knowledge, a private or commercial project funding local law enforcement services is unheard of in Michigan. Many traditional economic development projects have received, or are receiving, abatements or other economic incentives to encourage investment from both State and local governments. These incentives often reduce the amount of available revenue that could be specifically dedicated for law enforcement services needed for these projects as calls for service increase.

DSAM endorses the Gun Lake Tribe's effort to secure a Class III gaming compact with the State of Michigan. In order to maximize the benefits to State and local government, law enforcement, and public safety, a gaming compact should be signed by the State of Michigan. DSAM respectfully requests that the State of Michigan enter into a compact with the Gun Lake Tribe.

Sincerely,

**Deputy Sheriff's Association of Michigan**

Larry Orlowski
Executive Director

# SOUTHWEST MICHIGAN BUILDING & CONSTRUCTION TRADES COUNCIL

**President**
**Hugh Coward**
510 E. Columbia Avenue
Battle Creek, MI 49015
Phone (269) 962-8511
Fax (269) 962-1485



**AFL-CIO**

**Secretary/Treasurer**
**Gary L. Gunberg**
11847 Shaver Road
Schoolcraft, MI 49087
Phone (269) 679-2570
Fax (269) 679-2571

December 11, 2006

The Honorable Jennifer M. Granholm
Office of the Governor
P.O. Box 30013
Lansing, Michigan 48909

Re: Sign a Class III Compact w/ Gun Lake Tribe

Dear Governor Granholm,

Congratulations on winning another term! Labor couldn't be more excited about the next four years and the great things we can accomplish together for the great State of Michigan. To that end, I am writing today to urge you to sign a Class III compact with the Gun Lake Tribe to get your next term off to a great start.

As you know, the Gun Lake Tribe has tried to secure a signed compact from both you and your predecessor for a very long time. The Tribe should be treated fairly, like the other eleven Michigan tribes who have gaming compacts signed by Governor Engler. We hope you and the leaders in the Legislature will bring equity to this process by granting the Gun Lake Tribe its much-deserved Class III gaming compact.

As you are aware, we support the Gun Lake Tribe's casino and a state gaming compact because we feel both will greatly benefit West Michigan economically and socially. We have long supported this project because our members could use the 1,000 new construction jobs it will create. Many of our families have suffered tremendously during our current economic downturn and a Gun Lake compact will help put us back to work!

We need only look to other regions of the state that have benefited for decades to know this tribal casino will provide increased government revenues, stable jobs with benefits, and much-needed funding for tribal programs.

The federal government's recent announcement that it will end the frivolous legal tactics employed by MichGO to delay this casino is the strongest case yet for your administration to sign a compact with the Gun Lake Tribe. Without a compact, the Tribe will be able to open their casino anyway while many of the state's residents will miss out on increased government revenues and additional job opportunities because the economic benefits from the project will be seriously diminished.

We hope there are no more barriers in the way of a state agreement with the Tribe. South West Michigan's Building Trades needs this infusion of jobs and economic growth.

Sincerely,

Hugh T. Coward, President
SW MI Building Trades



**EXHIBIT**

B

05-CV-01181 JGP




Kalamazoo Regional Chamber of Commerce

January 31, 2007

The Honorable Jennifer M. Granholm
Governor, State of Michigan
P.O. Box 30013
Lansing, Michigan 48909

Re:  Gun Lake Casino Class III Compact

Dear Governor Granholm,

The Kalamazoo Regional Chamber of Commerce has closely monitored the recent announcement
by federal officials to authorize casino gaming for the Gun Lake Tribe of Pottawatomi Indians.
We at the Chamber are encouraged by the prospect of new business opportunities for our
membership and new economic growth potential in the region.  However, we are concerned that
the absence of a Class III gaming compact between the State and the Tribe will severely limit the
number of jobs that could be created and eliminate shared revenues from which the state and local
governments could benefit.

The Chamber feels that a tribal-state gaming compact will allow the Tribe's business to flourish
while protecting the interests of local governments and the business community.  We believe that
Class III gaming under a state compact must be attained in order for the full economic impact of
the casino to be realized here in Kalamazoo.  That impact includes:
- 1,800 good paying jobs in the region (an average of $40,000 per year)
- 3,100 additional jobs generated in the region through the trickle down effect.
- Tens of millions in revenue that would go to the state
- Several million in revenue that would go to local governments.

Our Gun Lake Tribe Task Force has studied this issue extensively over the last several years.  We
understand that the authorization to operate gaming, Class II at the very least, must be granted
from the federal government.  It seems clear to us that a compact simply protects the State's
interests as well as that of local governments.

Southwest Michigan has suffered the loss of thousands of jobs in the manufacturing sector.  As
you have pointed out on many occasions, our economy has struggled to transition from
manufacturing into service, tourism, and high technological industries.  This region needs the
infusion of jobs and economic growth that the Gun Lake Casino would provide.  The most
sensible way for this facility to operate is under an executed and duly approved tribal-state
gaming compact.  Please sign a Class III compact with the Gun Lake Tribe.  Thank you for your
thoughtful consideration.

Sincerely,

Gun Lake Tribe Task Force Chair
Kevin M. McCarthy

EXHIBIT

C

05-CV-01181 JGP

ALL-STATE LEGAL®

# IRONWORKERS LOCAL 340

### Structural • Reinforcing • Rigging • Finish work

510 E. Columbia Avenue
Battle Creek, Michigan 49015
•(269) 962-8511 •fax (269) 962-1485

918 Benjamin NE
Grand Rapids, MI 49503
•(616) 451-8301 •fax (616) 451-8980

October 31, 2006

Tribal Chairman D.K. Sprague
Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians
Gun Lake Tribe
1743 142nd Avenue
P.O. Box 218
Dorr, MI 49323

RE:    Endorsement of Gun Lake Casino & Class III Compact

Dear Chairman Sprague:

On behalf of West Michigan Building Trades, I am writing this letter to inform you that we have officially endorsed the Gun Lake Casino and the effort to obtain a Class III tribal-state gaming compact between the Gun Lake Tribe and the State of Michigan.

We believe the casino will be a great social and economic benefit to the people of West Michigan and the entire state. It's our hope that construction of your casino will begin as soon as possible.

Let us know if we can do anything that will help to facilitate the implementation of a Class III compact. Best Wishes,

Sincerely,

Bruce Hawley
Business Manager/Fin. Sec.Treas.

BH/vk



EXHIBIT

D

05-CV-01181 JGP



**Kirk Stevenson**
*Business Manager*
*Financial Secretary Treasurer*

# West Michigan Plumbers, Fitters and Service Trades
## Local Union No. 174

*of the United Association of Journeymen and Apprentices of the Plumbing
and Pipe Fitting Industry of the United States and Canada*

October 31, 2006

Tribal Chairman D.K. Sprague
Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians
Gun Lake Tribe
1743 142nd Avenue
P.O. Box 218
Dorr, MI 49323

Re: Endorsement of Gun Lake Casino & Class III Compact

Dear Chairman Sprague:

On behalf of West Michigan Plumbers, Fitters & Services Trades Local Union No.174 , I
am writing this letter to inform you that we have officially endorsed the Gun Lake Casino
and the effort to obtain a Class III tribal-state gaming compact between the Gun Lake
Tribe and the State of Michigan.

We believe the casino will be a great social and economic benefit to the people of West
Michigan and the entire state. It's our hope that construction of your casino will begin as
soon as possible.

Let us know if we can do anything that will help to facilitate the implementation of a
Class III compact. Best wishes.

Sincerely,

Kirk W. Stevenson
Business Manager

1008 O'Malley Drive, Coopersville, MI 49404
phone: 616.837.0822 / fax: 616.837.1222

ALL-STATE LEGAL®
EXHIBIT
E
05-CV-01181 JGP

# WEST MICHIGAN BUILDING
# TRADES COUNCIL

October 31, 2006

Tribal Chairman D.K. Sprague
Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians
Gun Lake Tribe
1743 142nd Avenue
P.O. Box 218
Dorr, MI  49323

RE:   Endorsement of Gun Lake Casino & Class III Compact

Dear Chairman Sprague:

On behalf of West Michigan Building Trades, I am writing this letter to inform you
that we have officially endorsed the Gun Lake Casino and the effort to obtain a
Class III tribal-state gaming compact between the Gun Lake Tribe and the State
of Michigan.

We believe the casino will be a great social and economic benefit to the people
of West Michigan and the entire state. It's our hope that construction of your
casino will begin as soon as possible.

Let us know if we can do anything that will help to facilitate the implementation of
a Class III compact. Best Wishes.

Sincerely,

Bruce Hawley
President

BH/vk

EXHIBIT
F
05-CV-01181 JGP

# WAYLAND AREA CHAMBER OF COMMERCE

The Honorable Jennifer M. Granholm
Governor, State of Michigan
P.O. Box 30013
Lansing, Michigan  48909

February  2007

Re:  Gun Lake Casino Class III Compact

Dear Governor Granholm:

The Wayland Area Chamber of Commerce supports the proposed casino project by
the Gun Lake Tribe of Pottawatomi Indians.  I am encouraged by the prospect of
new business opportunities for our membership and the potential for new economic
growth in our community.  I am very concerned by the absence of a Class III
gaming compact between the State and the Tribe.

As an interested party, I followed the lawsuit against the Pokagon Band very closely.
It is my belief that the lawsuit holding up the Gun Lake Tribe has already been
decided on its merits.  My understanding is that Judge Penn, presiding over the
lawsuit against Gun Lake, will issue a decision by March 5, 2007.  With an
impending decision that will very likely favor the Tribe and result in trust status,
why would the State wait any longer to sign a compact?

I applaud your State of the State speech, Tuesday-February 6, 2007 when you
stated that, unlike your predecessor, you would not be leaving budget problem
issues for the next Governor.  The compact with the Gun Lake Tribe is another one
of those issues.

Wayland is a small, Allegan County community of over 4,000 residents. As proud
recipients of one of the Cool Cities Blueprint Grants for downtown revitalization the
City, DDA, DDA Task Force and Chamber have partnered together to ensure
our goals become reality and our hometown area will once again experience
economic growth and success.



EXHIBIT

G

05-CV-0118 1 JGP

861 S. Main Street • P.O. Box 24  Wayland, MI 49348  Phone and Fax (269)792-9246
Web: www.waylandchamber.org   Email: info@waylandchamber.org

# WAYLAND AREA CHAMBER OF COMMERCE

We believe the casino has the potential to be a tremendous economic engine for our surrounding community and all of West Michigan. We know the Tribe will be able to conduct Class II gaming without a compact. However, not as many people will benefit if it operates at the Class II level.

Finally, we are excited to welcome the Tribe's management partner, Station Casinos, Inc. to the region. It was recently announced, for the third straight year, that FORTUNE Magazine has recognized Station Casinos as one of the nation's "Top 100 Companies to Work For."

The Wayland Area Chamber of Commerce respectfully requests that you enter into a Class III tribal-state gaming compact with the Gun Lake Tribe. Thank-you for your consideration... and best wishes in your new term of office.

Sincerely,

Jackie Straub

Jackie Straub – Executive Director
117 South Main – Suite #6
Wayland, Michigan 49348